1  LOU RAMONDETTA, *in propria persona*
2  2335 Stewart Avenue
   Walnut Creek, CA 94596
3  Telephone: (925) 989-2525
   Facsimile: (925) 945-1655
4

**FILED**

5  Suzanne Martin
   Lewis and Roca LLP

APR 1 4 2008

6  3993 Howard Hughes Parkway, Ste. 600
7  Las Vegas, NV 89119
   (702) 949-8200

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8

9  April 10, 2008

10

11

12

13

14
                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
15

16  LOU RAMONDETTA,                         ) CASE NO.: C08-01002 JSW
                                            )
17          Plaintiff,                      ) **PLAINTIFF'S POINTS OF**
                                            ) **AUTHORITY OPPOSING**
18      v.                                  ) **DEFENDANTS MOTION TO DISMISS**
                                            ) **UNDER FRCP 12(b)(2), (b)(3), 28 USC**
19  KONAMI, *et al.*, Konami, Steve Sutherland,  ) **1391, 1404(a)**
20  Satoshi Sakamoto and Tom Jingoli        )
                                            ) Date: May 16, 2008
21                                          ) Time: 9 am
                                            Courtroom:    #2, 17th floor
22          Defendants.                     Before: Hon. Judge White

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT

CASE NO. C0801002 JSW

1

## TABLE OF AUTHORITIES

Dwyer v. General Motors Corporation, 853 F. Supp. *690, 694 (S.D. N.Y. 1994)..................7

HealthTrac Corporation v. Caterpillar Inc, Not Reported in F.Supp.2d, 2005 WL 2811765, F. Supp *3-5 (N.D.Cal., 2005)..........................................................................................7

Koster v. (American) Lumbermans Mut Casualty, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 F. Supp *831-832 (U.S., 1947).............................................................................................6

Lou v. Belzberg, 834 F.2d 730, 56 USLW 2316, RICO Bus.Disp.Guide 6797, F. Supp *730, (C.A.9 (Cal.), 1987).........................................................................................................6

Phillips v. Gemini Moving Specialists, F. Supp **34 and *571 (Cal.App. 2 Dist., 1998)...........5

Taylor-Rush v. MultiTech Corporation, 217 Cal.App.3d 103, F Supp. *676, 680-681, (Cal.App. 1 Dist., 1990).....................................................................................................................3, 5

## STATEMENT OF ISSUES

Plaintiff's Compliant is fairly simple.  In the offer letter, the parties negotiated and agreed in writing to a three month severance which Konami and the Defendants have steadfastly refused to pay.  Konami have also refused to pay Plaintiff's travel expenses.  Additionally, in the written offer letter, parties agreed to four weeks of paid vacation which Konami has not paid.  There are also additional penalties for, non payment of benefits, pain and suffering, harassment and discrimination.

## MEMORANDUM OF POINTS OF AUTHORITIES

### I.    INTRODUCTION:

This case should be heard against all the defendants in this Court and the proper jurisdiction and venue is the assigned Northern California Court which has legal jurisdiction over this case.  I respectfully request that this case be heard in your Court and not dismissed or transferred.

### II.    FACTS AND HISTORY

Ramondetta has been a California resident for many years and Konami employed Plaintiff from around April 10th to June 14th, 2006 while he resided in California.  Plaintiff was hired as the Vice President of Sales and Marketing.  As an employee and representative of Konami, Plaintiff was hired and worked for the Konami Gaming and Systems Division.  Plaintiff's role and responsibilities were approved by Konami Corporation in Japan.  In his role, Plaintiff was also measured and responsible for the support, marketing and sale of Konami Gaming products and indirectly Systems products and services.  Konami Corporation is headquartered at 9-7-2, Akasaka, Minato-ku, Tokyo, 107-8323 in Japan has three major divisions including Digital Entertainment, Health and Fitness and Gaming & Systems.  The CEO for Konami Gaming Inc. (KGI), Satoshi Sakamoto, reports directly to the President, Director and CEO for Konami Corporation based in Japan, Kagemasa Kozuki.  Konami Corporation in Japan has a U.S. based holding company for all three divisions headquartered at 2381 Rosecrans Ave., Ste 200, El Segundo, CA 90245.  Konami also has another office in California at 1400 Bridge Pkwy, Redwood City, CA.

For various reasons the severance and benefits package was purposefully negotiated into Ramondetta's Offer Letter and agreed to by the individual Defendants and Konami.  Upon Plaintiff's employment departure and in good faith, Ramondetta had tried repeatedly to resolve this civilly and amiably.  Ramondetta asked Konami and their Council to pay the outstanding benefits as agreed to in writing in the Offer Letter and to reimburse his expenses.  On or about August 10, 2007, Plaintiff sent Defendants' a final Demand Letter.  Since they did not respond, Plaintiff began proceedings through the Department of Labor, Arbitration and finally when those options were exhausted, legal proceedings in this Court.

Konami's office location may be Las Vegas but their principal place of business and where they get the majority of their revenues generated, is from California.  California is a major strategic revenue and growth market for Konami and a substantial portion, upwards of 50%, of their overall revenues.  Revenues decline in percentage from California to Canada, followed by Michigan and lastly, Las Vegas which was one of the smallest revenue base areas.  As stated above, Konami also has minimally two offices in California.

The individual Defendants made business and personal decisions that directly damaged the Plaintiff.  Defendants regularly traveled to California and communicated with Plaintiff while he was in California or they were.  Defendants did business directly related to California including personal actions tied to their decision to hire, interact with and eventually terminate the Plaintiff.

Per the Offer Letter, Plaintiff initially tried to resolve his claims via arbitration.  Unfortunately the parties could not even agree on who would arbitrate or where the arbitration should occur which was why Ramondetta did not finalize the documents or payment.  On August 8th, Plaintiff received a call from Ms. Michele Jackson from the American Arbitration Association explaining that she had no choice but to drop Ramondetta's request for arbitration with Konami since the parties could not agree on who or where arbitration would occur.  There is not a requirement in the Offer Letter's, Arbitration Clause, regarding stipulation of arbitrator, location or state law.  Per Konami Council's initial e-mail to me on June 16th, 2006, Mr. Cole stated that if the parties arbitrated in California, it would be Konami's intention to request a "panel of arbitrators from Nevada and/or California".  Cole also included the names of potential California Arbitrators which indicates Konami's initial willingness to arbitrate in California.

It should also be noted, Konami's council, has been uncompromising, confrontational, accusatory and derogatory in many of their correspondences and interaction to settle this dispute.  Konami and their Council are playing a big company Samson vs. Goliath game and strong arm tactics in an effort to scare Plaintiff into dropping this issue or doing it on their terms.

## III.    LEGAL ARGUMENT

## 1. THIS COURT HAS PERSONAL AND GENERAL JURISDICTION OVER INDIVIDUAL DEFENDANTS.

The individual Defendants made personal tort decisions to withhold pay, expenses and terminate Ramondetta's employment inappropriate with their capacity as corporate agents.  Defendants knowingly interacted with the Plaintiff routinely while Plaintiff was in California, while he did

PLAINTIFF'S COMPLAINT                    -2-

CASE NO. C08-01002 JSW

1  their direction in California and North America. In some cases the Defendants were in California
   communicating with the Plaintiff. In so doing, this court has jurisdiction over the Defendants.
2  One particular example was when the Plaintiff was forced to communicate with Defendant
3  Sutherland while Sutherland and Plaintiff were separately in California. Sutherland said he "had
   to vacate" Las Vegas and went to Southern California to escape a pending summons and or service
4  that someone was trying to serve on him.

5  The individual Defendants sought Plaintiff by entering California and hired a California based
   recruiting company, Korn-Ferry, based at 2600 Michelson Drive in Irvine, CA, to recruit Plaintiff.
6  Defendant Sutherland had a personal relationship with the Korn-Ferry manager, Elliot Gordon in
7  California and he interacted with that individual to retain their services and recruit Ramondetta.

8  Plaintiff's agreement and Offer Letter was also negotiated, accepted and signed in California by
   Plaintiff, knowingly by the Defendants. The Offer Letter was sent to Ramondetta pre-signed by
9  Defendant Sakamoto. Ramondetta signed the Offer Letter in California making the agreement
   executed and consummated in Northern California.
10

11  The California Department of Labor Standards Enforcement accepted jurisdiction over my
    expense case filed against Konami that Plaintiff addressed separately with them setting precedence
12  for California having jurisdiction and being the right venue. On April 19th, 2007 in a letter from
    Ms. Ellen Shaffer, Sr. Deputy of Labor Commissioner, she stated that "California does have
13  Jurisdiction over the matter". That case was removed without prejudice since my travels would
    not allow me to attend the hearing date.
14

15  There is nothing specific to this case that would limit this Court from having jurisdiction over this
    case. Pursuant to Plaintiff's agreement, Offer Letter, Demand Letter and additional facts,
16  Defendant's were knowingly involved with the recruitment, hiring and routine communication
    with the Plaintiff both business and non business related in California throughout his employment
17  period. Plaintiff maintained and worked from a home office in California for a substantial part of
    his employment. Plaintiff was supported by and interacted with the said Defendants routinely
18  from California. In so doing, the Defendant's had "minimum contacts" in California to justify
19  jurisdiction. This is the right venue for this lawsuit since Northern California is the district that
    the Defendants did a substantial portion of the events and interactions that gave rise to this lawsuit.
20

21  Taylor-Rush v. MultiTech Corporation. A state may constitutionally exercise personal jurisdiction
    over a nonresident as long as he or she has "minimum contacts" with that forum such that
22  "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'
    [Citations.]" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90
23  L.Ed. 95.) "The 'substantial connection' [citations] between the defendant and the forum State
    necessary for a finding of minimum contacts must come about by *an action of the defendant*
24  *purposefully directed toward the forum State.* [Citations.]" Asahi Metal Ind. Co. v. Superior Court
    (1987) 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92. A defendant's physical presence
25  in the state is not required, as long as his o r her efforts were " 'purposely directed' " toward
    residents of that state. (*B urger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 476, 105 S.Ct.
26  2174, 2184, 8 5 L.Ed.2d 528; *St. Joe Paper Co. v. Superior Court* (1981) 120 Cal.App.3d 991,
27  997, 175 Cal.Rptr. 94.) Thus, personal jurisdiction may be exercised over a defendant who has
    caused an effect in the forum state by an act or omission occur ring elsewhere. (*McGee v.*
28  *International Life Ins. Co.* (1957) 355 U.S. 220, 223-224, 78 S.Ct. 199, 201-202, 2 L.Ed.2d 223;

PLAINTIFF'S COMPLAINT                    -3-

CASE NO. C08-01002 JSW

1  *Sibley v. Superior Court, supra,* 1 6 Cal.3d at pp. 445-446, 128 Cal.Rptr. 34, 546 P.2d 322;
2  *Buckeye Boiler Co. v. Superior Court* (69) 71 Cal.2d 893, 898-899, 80 Cal.Rptr. 113, 458 P.2d 57)

3  **i. INDVIDUAL DEFENDANT'S HAVE THE REQUISITE "MINIMUM CONTACTS"**
4  **WITH CALIFORNIA FOR THE COURT TO EXERCISE SPECIFIC JURISDICTION**
   **OVER THEM.**
5

6  The State of California can exercise personal jurisdiction over the nonresident Defendants.
   Defendant's had minimum contacts and substantial connections between the Plaintiff and State of
7  California. For example, Defendant's made the decision to withhold and failed to pay Plaintiff's
   wages and expenses in an action purposely directed towards a resident of the State of California.
8

   California has jurisdiction over the individual defendants since a substantial portion of the events
9  and interactions that gave rise to this dispute occurred in California. Much of Plaintiffs
   discussions, interviews and negotiations happened from California. Plaintiff's responsibilities
10 included communication, business, discussion and interactions via direct visits, phone calls and e-
11 mail communication with these individuals Defendants from California. During Ramondetta's
   time with Konami, he resided and worked from California to support the role and maintained a
12 home office. Plaintiff also flew from California to various destinations to support the role.
   Plaintiff traveled with at least three Konami salespeople who supported and sold to large
13 customers and had relationships in California. That can be supported by my various
   communications and expenses.
14

15 Failure to pay wages to a California resident and employee is an action purposely directed towards
   a resident and the people of the State of California. Konami and the Defendants decided to
16 withhold Plaintiff's payroll and expense payments in an effort to force Ramondetta to sign Nevada
   documents so that he could be paid.
17

18 Regarding payroll payments, Ramondetta was not paid anything for weeks until forcible having to
   sign Nevada payroll documents and establish an address in Nevada which in Plaintiff's case was a
19 P.O. Box. Ramondetta was fully active in his role during that time, traveling and performing all
   his duties and responsibilities. Konami's Human Resources manager, Bobby Youngblood sent
20 Ramondetta an e-mail on May 1, 2006 requiring Plaintiff to sign forms that would have him paid
   out of Nevada. This request was performed under substantial duress. It can be shown that
21 Konami had withheld all payments of salary and expenses up to that point unless these forms were
   signed. In fact, there is no history of salary or expense payments to Plaintiff prior to the time he
22 was forced to sign those forms. .
23

   Under California law, it is illegal to withhold payroll and expense payments. It was an unethical
24 and inappropriate tort for Konami and the Defendants to try to strong arm the Plaintiff using non
   payment of wages or legitimate expenses owed for work performed as leverage to force signing
25 Nevada payroll papers.

26 Relocation seems to be a primary reason for Konami and the Defendant's termination but that is
27 not a reason to threaten and withhold payment of legitimate salary, severance or expenses owed an
   employee for work performed. That should not be tolerated in California as ethical business
28 practices by any company.

PLAINTIFF'S COMPLAINT                    -4-

CASE NO. C08-01002 JSW

1

2  Phillips v. Gemini Moving Specialists (California public policy interest) - "One need only
   examine provisions in the Labor Code to realize that the prompt payment of wages due an
3  employee is a fundamental public policy of this state. For example, Labor Code sections 201 and
   202 set very short time limits for payment of wages to employees who have been discharged or
4  who have voluntarily left their jobs." **34 or 571**

5

6  ## ii. THE FIDUCIARY SHEILD DOCTRINE PRECLUDES ESTABLISHING JURISDICTION OVER INDIVIDUAL DEFENDANTS

7
   The Defendants knowingly committed a tort by withholding pay and tried to force the Plaintiff to
8  relocate to Nevada. Under the direction of the Defendants, Konami's Human Resources Manager,
   Bobby Youngblood sent Ramondetta an e-mail on May 1, 2006 requiring him to sign forms that
9  would have him paid out of Nevada. This request was performed under substantial duress since
   all salary and expenses payments were being withheld at the direction of the defendants until this
10 was done. It can be shown that Konami had withheld all payments of salary and expenses up to
   that point unless Plaintiff signed those forms. Under California law and likely Nevada, Konami
11 can't withhold salary or expense payments to employees for work performed.

12
   After the termination, Plaintiff was offered a $10,000 Settlement Agreement and Release of
13 Claims from Konami dated August 22, 2006. In part of the Release, paragraph two, sentence two,
   of that offer, Konami specifically acknowledges that "The total for the un-reimbursed business
14 expenses is approximately Four Thousand Dollars ($4,000.00)". By Konami's own admission,
   they acknowledge there is a $4,000 unpaid business expense tort and that they were willing to
15 reimburse Plaintiff only if he signed the Release of Claims. In paragraph one, sentence three, they
   also say "This will include reimbursement for parking fees at the various airports at which you
16 parked". Much of the expenses Plaintiff submitted and Konami disallowed were non California or
   Nevada expenses. Additionally in paragraph one, sentence seven, an interesting comment that
17 says "Once the contemplated relocation of your residence was accomplished, at a substantial
   expense to KGI, you would not have become liable for any hotel or meal expenses in Las Vegas".
18 An interpretation could be that Konami was trying to use this non payment of normally
   reimbursable expenses as leverage to force the relocation.
19

20
   Taylor-Rush v. MultiTech Corporation **680-81** (addresses fiduciary shield doctrine) - Intentional
21 tortfeasors should be prepared to defend themselves in any jurisdiction where they direct their
   alleged tortuous activity. The individual defendants are primary participants in an alleged
22 wrongdoing intentionally directed at a California resident. "[A]n unreasonable and anomalous
   result would occur if a nonresident individual, acting in his capacity as corporate officer or
23 director, committed a tort for which he may be personally liable and could shield himself from
   jurisdiction when he could not interpose the same shield as a defense to substantive liability."
24

25

26 ## B. THE COURT SHOULD NOT DISMISS FOR FORUM NON-CONVENIENS

27 The factors are in favor for keeping this case in this California Court including that Plaintiff as an
   individual, would incur substantial expense in having to litigate in Nevada; the Plaintiff was
28 recruited in and worked for Konami in California; the Plaintiff signed the employment agreement

PLAINTIFF'S COMPLAINT                    -5-

CASE NO. C08-01002 JSW

1  in California; the key witnesses are officers of Konami (or the recruiting company based in CA)
   and can be easily compelled to California and lastly that Konami and the Defendants do a majority
2  of their business and revenues in California. They are in California on a regular basis.

3  The Northern California venue not being "convenient," is not justification to transfer the location
4  to Las Vegas or anywhere else. This is a tactic by the Defendants to have the Plaintiff manage his
   case with substantially higher costs, in a less labor friendly state and in a state where the
5  Defendant's and their Council have substantial relationships making a fair trial virtually
   impossible. As a percentage, the "financially oppressive costs" would have a far higher impact on
6  the Plaintiff if the case was to be transferred. Plaintiff should not be deprived of the "home
7  forum" choice. This case and the actions taken by the defendants directly affects a residents of
   California and the residents of California must be protected under California law. Konami and its
8  individual employees who are named as defendants in this case would be indemnified and
   defended in this action by Konami since their actions took place in part as employees of Konami.
9
   Koster v. (American) Lumbermans Mut Casualty (forum non-conveniens) – Where there are only
10 two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if
   that has been his choice. A plaintiff should not be deprived of the presumed advantages of his
11 home jurisdiction except upon a clear showing of facts which either (1) establish such
12 oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's
   convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen
13 forum inappropriate because of considerations affecting the court's own administrative and legal
   problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has
14 sued in his home forum will normally outweigh the inconvenience the defendant may have
15 shown. **831-32**

16
## C. THIS COURT SHOULD NOT DISMISS OR TRANSFER THIS CASE TO ANOTHER
17 ## VENUE.

18 This Northern California forum is the Plaintiff's choice based on his residence and where Plaintiff
19 negotiated and signed the agreement which executed and consummated this agreement. Konami
   agreed to a severance package if Ramondetta was terminated. Plaintiff never relocated to Nevada
20 and was terminated prior to any relocation taking place or potentially taking place.

21 Lou v. Belzberg (choice of forum) - There is a strong presumption in favor of plaintiff's choice of
   forum, in particular when the chosen forum is plaintiff's place of residence. **739**
22
23 Konami is a multi-million dollar company that has substantial resources to defend their position.
   This is likely one of numerous legal claims that Konami is regularly involved with. Konami has
24 substantial access to internal and external legal resources on a regular basis as part of their
   ongoing routine business. The cost, travel and time hardship will be far more oppressive on the
25 Plaintiff. Ramondetta was a lone unemployed individual trying to plead his case against a
   multinational, multimillion dollar company to get justice. Konami expects Ramondetta, a long
26 time California resident and employee, to plead his case in Nevada which is a less labor balanced
27 state. Ramondetta had no residence nor would he have any resources to support his case there.

28

PLAINTIFF'S COMPLAINT                    -6-

CASE No. C08-01002 JSW

1    It would also be virtually impossible for Ramondetta to get a fair review in Nevada. Konami is
     one of the world's biggest global gaming companies with ties to regulators, government officials
2    and police services. Opposing Council's, prior firm, Lionel, Sawyer and Collins lists minimally
3    70+ attorneys on their letterhead, many would have similar contacts, making it impossible to have
     a fair review of the case outside of this Northern California Court.

4
     HealthTrac Corporation v. Caterpillar Inc (transfer of venue) - "The court finds that plaintiff's
5    choice of forum should be given no less deference due to the fact that events giving rise to the
     claims took place in the Central District of Illinois as well as in the Northern District of
6    California." The court should consider the parties' relative ability to afford the expenses of
7    litigating in alternate forum. Witnesses are employees and can be compelled to testify. **3-5**

8    Dwyer v. General Motors Corporation (transfer of venue) - denying transfer because defendant
     was better able to absorb added expense than plaintiff. **694**
9

10   **IV. CONCLUSION:**

11
     The United States District Court, Northern District of California does have personal jurisdiction
12   over all the defendants. This venue not being convenient is not a justification to transfer the
     location. As a percentage, the financially oppressive costs would have a far higher impact on the
13   Plaintiff if the case was to be transferred. The Defendants knowingly committed torts
14   unacceptable with their responsibilities and roles. Konami and its individual employees who are
     named as defendants in this case would be indemnified and defended in this action by Konami
15   since their actions took place largely as employees of Konami. There would be minimal cost to
     the individual Defendants. Konami agreed to a benefit package if Plaintiff was terminated and
16   they must pay it.

17

18   Dated: April 11, 2008                    Respectfully Submitted,

19

20

21   _____

22      LOU RAMONDETTA
        *in propria persona*

23

24   Cc Served to:

25   Suzanne Martin
     Lewis and Roca LLP
26   3993 Howard Hughes Parkway, Ste. 600
27   Las Vegas, NV 89119
     (702) 949-8200

28

     PLAINTIFF'S COMPLAINT                    -7-

     CASE NO. C08-01002 JSW