HOWARD E. COLE
California Bar No. 91707
hcole@lrlaw.com
SUZANNE L. MARTIN
California Bar No. 210613
smartin@lrlaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, Nevada 89169
(702) 949-8200
(702) 949-8398 (fax)

Attorneys for the Defendant

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOU RAMONDETTA,<br><br>                          Plaintiff,<br><br>        vs.<br><br>KONAMI, et al., Konami,<br><br>                          Defendant. | Case No. C08-01002 JSW<br><br>**MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW**<br><br>[Filed concurrently with Notice of Motion; Declaration of Steve Sutherland; Declaration of Suzanne L. Martin; Proposed Order; and Master Certificate of Service]<br><br>Hearing Date: August 15, 2008<br>Hearing Time: 9:00 a.m. |

Pursuant to Federal Rule of Civil Procedure 12(b), the Court's May 30, 2008 Civil Minute Order (Doc. #35), and the Federal Arbitration Act, Defendant Konami Gaming, Inc. files this Motion to Compel Arbitration and Dismiss, and Motion to Determine Applicable Law.

This Motion is based on the following points and authorities filed in support thereof, the Declaration of Steve Sutherland and any exhibits attached thereto, the pleadings and papers before this Court, and any oral argument the Court allows.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW
C08-01002 JSW
420825

# TABLE OF CONTENTS

**SECTION**                                                                    **PAGE #**

I.      **INTRODUCTION**.................................................................1

II.     **STATEMENT OF FACTS**.....................................................2

III.    **LEGAL ARGUMENT**...........................................................6

    A.    **Precedent and the Strong Public Policy in Favor of Arbitration Compel Dismissal** ......................................................6

        1.   **Dismissal in favor of arbitration is a proper exercise of this Court's discretion** ......................................................6

        2.   **Due deference to the Supreme Court and the strong public policy in favor of arbitration require the enforcement of the broadly worded arbitration provision in Ramondetta's offer letter** ..............6

    B.    **California's Choice of Law Rules Require the Application of Nevada Law to the Resolution of Ramondetta's Claims** ......................................9

IV.     **CONCLUSION** ..................................................................13

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

1
2

## TABLE OF AUTHORITIES

3

**Cases**

4
*Akar v. Prescott Hotel*, 2008 U.S. Dist. LEXIS 43066, *4 (N. D. Cal. June 2, 2008) .................6, 7

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 130 L.Ed. 2d 753, 115 S.Ct. 834 (1995)......7

5
*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed. 2d 234 (2001) .......7, 8

6
*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed. 2d 158 (1985).......6, 7

7
*Dena' Nena' Henash v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 39611 (N. D. Cal. May 16, 2007) 10

*Howard Elec. & Mech. Briscoe Co.*, 754 F.2d 874 (9th Cir. 1985). ....................................................8

8
*Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075 (9th Cir. 2002)....................6

9
*Martin Marietta Aluminum, Inc. v. General Electric Co.*, 568 F.2d 143 (9th Cir. 1978)..................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 74 L. Ed. 2d 765, 103 S.Ct.
10
  927 (1983) ..............................................................................................................................................7

11
*389 Orange Street Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999) ...............................................9

*Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469 (9th Cir. 1991)...................................7
12
*Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988) .............6

13
*Sagent Technology v. Micro Systems, Inc.*, 2002 U.S. Dist. LEXIS 26647 (N.D. Cal. May 29,
  2002) ................................................................................................................................................9, 10
14
*Semcken v. Genesis Medical Interventional, Inc.*, 2004 U.S. Dist. LEXIS 20380  (N.D. Cal. Sept.
15
  24, 2004) ................................................................................................................................................8

16
*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999)............................................................7, 8

*Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988) .......................................................6
17
*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal.App.4th 637, 645, 17
18
  Cal.Rptr.2d 713 (1993) ....................................................................................................................9, 10

**Statutes**
19
9 U.S.C. § 3 ......................................................................................................................................6, 7

20
**Other Authorities**

21
Cal. Civ. Code § 1646 ..................................................................................................................10, 12

**Rules**
22
Federal Rule of Civil Procedure 12(b).................................................................................................6

23
**Restatement Conflict Laws**

24
Restatement (Second) of Conflicts of Law, § 188 .........................................................1, 9-11

25
26

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

1

2

# **STATEMENT OF ISSUES**

3

4

1.  Plaintiff Lou Ramondetta's claims are covered by the broadly worded arbitration clause in the offer letter he seeks to enforce, and must be dismissed in favor of binding arbitration.

5

6

2.  California's relevant contacts choice of law test requires the application of Nevada law to Plaintiff Lou Ramondetta's claims.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW
CV-C-08-01002 JSW
419872.1

## SUMMARY OF ARGUMENT

*Compel Arbitration and Dismiss the Case*

Plaintiff Lou Ramondetta is attempting to enforce the provisions of his individualized offer letter. The offer letter contains a broadly worded arbitration provision that covers all of his claims and requires him to submit all of his claims to binding arbitration.

The court may treat a motion to dismiss and compel arbitration as a nonenumerated Rule 12(b) motion. Where, as here, binding arbitration will resolve all of Plaintiff Lou Ramondetta's claims, leaving nothing for this court to adjudicate, dismissal is proper. *See Akar v. Prescott Hotel*, 2008 U.S. Dist. LEXIS 43066, *4 (N. D. Cal. June 2, 2008) quoting *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1078 (9th Cir. 2002).

The Supreme Court and Ninth Circuit have clearly stated that, as a matter of policy, arbitration is favored in lieu of a judicial forum. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220-21, 105 S.Ct. 1238, 84 L.Ed. 2d 158 (1985); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

*Determine that Nevada law Applies*

When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies to those claims. *See 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999). In the absence of a choice of law agreement by the parties, as is the case here, California courts apply the relevant contacts test set forth in RESTATEMENT (SECOND) OF CONFLICTS OF LAW Section 188, to determine which state's substantive law would apply. *Dena' Nena' Henash, Inc. v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 39611, *22-4 (N.D. Cal. 2007). In this breach of contract action, the Court may also turn to CAL. CIVIL CODE Section 1646, which requires a contract to be interpreted according to the law and usage of the place it is to be performed. The relevant contacts test and CAL. CIVIL CODE Section 1646 require the application of Nevada law to the resolution of Plaintiff Lou Ramondetta's claims.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW
CV-C-08-01002 JSW

419872.1

## I.    **INTRODUCTION**

Plaintiff Lou Ramondetta ("Ramondetta") and Defendant Konami Gaming, Inc. ("KGI") negotiated the finer points of Ramondetta's compensation, job duties and relocation, for several weeks in February and March 2006 before coming to an agreement. On or about March 16, 2006, KGI sent Ramondetta a personalized offer letter that detailed the agreed upon terms. The offer letter also contained an arbitration provision that required Ramondetta and KGI to resolve any and all disputes arising out of his employment at KGI in binding arbitration. Although Ramondetta made several changes to the offer letter, including increasing his sign-on bonus and pushing back his start date, he did not even attempt to negotiate the binding arbitration provision.

Two years after his termination, and admittedly, after several failed attempts to resolve this matter, Ramondetta filed a complaint in this Court for breach of contract. In sum, he alleges that upon termination, KGI breached the terms of the offer letter by failing to pay him severance, vacation, and reimburse his business expenses. *All* of Ramondetta's claims arise out of and relate to his employment with KGI and must, pursuant to the binding arbitration provision in the offer letter, and as a matter of law, be compelled to arbitration. Because binding arbitration will dispose of each and every one of Ramondetta's claims, leaving nothing for this court to decide, Ramondetta's complaint should be dismissed.

Regardless of whether this matter is, or is not, compelled to arbitration, Nevada law will apply to the resolution of Ramondetta's claims. The offer letter did not have a choice of law clause. In the absence of a choice of law clause, California defaults to the five factor test articulated in Section 188 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS to decide which state's law applies. Applying the factors to the facts of this case compels the application of Nevada law to the resolution of Ramondetta's claims.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

## II.    STATEMENT OF FACTS

KGI is incorporated under the laws of the State of Nevada. *See* Sutherland Declaration ¶ 3 ("Sutherland Decl."). KGI's principal place of business is Las Vegas, Nevada. *Id.*

On or about October 14, 2005, KGI hired international executive search firm Korn Ferry International ("Korn Ferry") to conduct a national search for the position of Vice President of Sales and Marketing at KGI. *Id.* at ¶ 4. The position of Vice President of Sales and Marketing at KGI was to be serviced in Nevada at KGI's offices. *Id.* KGI instructed Korn Ferry to inform non-Nevada residents who applied for the position that they would be required to relocate to Las Vegas, Nevada and become a Nevada resident. *Id.* at ¶ 5. Korn Ferry's confidential Position Specification stated that the position would be located in Las Vegas, Nevada. *Id.,* Exhibit A.

The Vice President of Sales and Marketing would be one of six executive level employees. *Id.* at ¶ 6. He or she would be responsible for the Game Sales and Marketing Division, which is comprised of approximately 18 employees. *Id.* Including the Game Sales and Marketing Division, KGI employed approximately 150 employees in Nevada at that time. *Id.*

KGI could not hire the first candidate it selected from the pool of applicants vetted by Korn Ferry because, for family reasons, he could not relocate to Nevada to accept the position. *Id.* at ¶ 7.

In early February 2006, Korn Ferry presented a second pool of applicants to KGI; Ramondetta was among them. *Id.* KGI invited Ramondetta to Las Vegas, Nevada to interview for the position – twice. During the first round of interviews, Ramondetta met with Satoshi Sakamoto (Chairman, President and Chief Executive Officer) and Steve Sutherland (Executive Vice President and Chief Operating Officer). *Id.* at ¶ 8. During the second round of interviews,

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW
420825.1

2

Ramondetta met with Thomas Jingoli (Director Legal Compliance), and Bobbi Youngblood (Director, Human Resources). *Id.*

KGI explained that, as Vice President of Sales and Marketing, Ramondetta would be responsible for the day-to-day supervision and leadership of the employees in the Game and Marketing Division. *Id.* at ¶ 9. The responsibilities of the position necessitated Ramondetta's full-time presence in Las Vegas, Nevada, with the exception of related business travel. *Id.* If KGI offered Ramondetta the position, he would be expected to permanently relocate to Las Vegas, Nevada, and become a Nevada resident. *Id.* Ramondetta expressed his understanding of the job requirements and agreed to relocate to Las Vegas, Nevada. *Id.* To that end, Ramondetta's interview discussions included what would be involved for a successful relocation from California to Nevada. *Id.*

Due to the highly regulated nature of the gaming industry (of which KGI is a member), if hired, Ramondetta would need to become licensed and/or registered by the gaming control authorities of various jurisdictions in which KGI did business. *Id.* at ¶ 10. Like all key employees Ramondetta would be required to provide detailed personal and financial information and documents, including information related to any prior criminal arrests or convictions. *Id.* Ramondetta agreed to comply with these information and document requests and expressed his understanding of the seriousness of the background check requirements. *Id.*

Based on Ramondetta's qualifications, representations and assurances that he would relocate from California to Nevada, KGI decided to offer Ramondetta the position. In late February – early March 2006, Sutherland outlined the basic terms of the position, including compensation, bonuses, start date, reporting structure and relocation, for Sakamoto's approval. *Id.* ¶ 12. Before preparing the offer letter, Sutherland discussed the terms of the proposed offer with

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW
420825.1

1    Ramondetta over the phone. *Id.* Ramondetta and Sutherland negotiated the terms of the proposed

2    offer during at least two telephone conversations. *Id.*

3           Then, on March 16, 2006, Sutherland sent a personalized offer letter detailing the

4    negotiated terms of the position to Ramondetta. *Id.* at ¶ 13, Exhibit B. The offer letter provided

5    for a sign-on bonus of $30,000, payable within 30-days, an annual base salary of $220,000,

6

7    bonuses, Ramondetta's start date, a brief description of what his job duties would be, and

8    relocation expenses. *Id.* at ¶ 14, Exhibit B. The offer letter also included an arbitration provision,

9    pursuant to which, KGI and Ramondetta agreed to arbitrate any and all disputes or controversies

10   arising out of or relating to his employment. *Id.*, Exhibit B.

11

12           By accepting this offer of employment, you agree to settle ***any and
             all claims***, disputes or controversies ***arising out of or relating to
13           your application or candidacy for employment, employment
             and/or cessation of employment with KGI, exclusively by final
14           and binding arbitration before a neutral arbitrator***. By way of
             example only, such claims include claims under federal, state, and
15           local statutory or common law, such as the Age Discrimination in
             Employment Act, Title VII of the Civil Rights Act, as amended,
16           including the amendments of the Civil Rights Act of 1991, the
             American With Disabilities Act, ***the law of contract*** and the law of
17           tort.

18   *Id.*, Exhibit B (emphasis added.)

19           As it turns out, Ramondetta was not done negotiating. Sutherland was out-of-town when

20   Ramondetta received the offer letter. *Id.* at ¶ 15. Youngblood spoke with Ramondetta about his

21   additional demands, which included: increasing the sign-on bonus from $30,000, payable within

22   30 days, to $50,000, payable immediately; pushing back his start date from April 3 to April 10,

23   2006; and performance and cost of living adjustments. *Id.* Significantly, Ramondetta did not

24   make, or even attempt to make any changes to the arbitration provision in the offer letter.

25           Sakamoto approved Ramondetta's changes to the offer letter. *Id.* Rather than drafting a

26   second offer letter, Ramondetta's changes were simply noted by Youngblood on a copy of the

offer letter that Ramondetta signed as "Lou – by phone Steve-SS approved". *Id.* On or about

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW
420825.1

4

1  March 24, 2006, Ramondetta executed the offer letter with the hand-written changes. *Id.* at ¶ 16.

2  *All* of Sutherland's and Youngblood's negotiations with Ramondetta took place via telephone

3  while they were in Nevada. *Id.* at ¶¶ 16, 17.

4      Ramondetta started working at KGI as the Vice President of Sales and Marketing on or

5  about April 10, 2006. *Id.* at ¶ 19.  When Ramondetta did not have to travel outside of Nevada for

6  business, he flew to Las Vegas, Nevada for work. *Id.*  It was KGI's impression and understanding

7  that during this time Ramondetta was also in the process of looking for housing in Nevada. *Id.*

8      The first gaming control authority Ramondetta applied to be registered with was the

9  Ontario Gaming Commission. *Id.* at ¶ 21.  Ramondetta submitted his application, and in early

10  June 2006, participated in an interview. *Id.*  After the interview, the investigator who conducted

11  the interview met with Sutherland and Jingoli.  They learned that Ramondetta had failed to

12  disclose a criminal "incident" on his personal disclosure form, and failed to disclose all of the

13  requested financial information and documents, including a bank account from which he earned a

14  dividend, and his credit card statements. *Id.*

15      Also in June 2006, Ramondetta approached Sutherland, and reneged on his agreement to

16  relocate to Nevada. *Id.* at ¶ 22.  According to Ramondetta, his wife refused to leave California.

17  Ramondetta then attempted to re-negotiate his position. *Id.*  Specifically, Ramondetta wanted to

18  telecommute from his home in California when he was not on sales or business trips for KGI. *Id.*

19  Ramondetta wanted KGI to pay for his travel and accommodations to and from Nevada for work,

20  and all other costs associated with his telecommuting. *Id.* Ramondetta told Sutherland that

21  telecommuting would allow him to spend more time with his young children at home. *Id.*

22      Sutherland explained to Ramondetta that as KGI's Vice President of Sales and Marketing,

23  Ramondetta was responsible for supervising and providing leadership to the Game Sales and

24  Marketing Division in Nevada. *Id.*  Further, from the beginning, Ramondetta knew that he would

25  be required to relocate permanently to Nevada. *Id.* at ¶ 5, Exhibit A.

26      Partially in light of Ramondetta's decision to renege on his relocation agreement, and his

failure to disclose all the required information for him to obtain the proper licenses and

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW
420825.1

5

1    authorization from various gaming authorities, KGI terminated Ramondetta's employment. *Id.* at

2    ¶ 23.

3    **III.    LEGAL ARGUMENT**[1]

4          A.    **Precedent and the Strong Public Policy in Favor of Arbitration Compel**
5                **Dismissal**

6                1.    **Dismissal in favor of arbitration is a proper exercise of this Court's**
7                      **discretion**

8          When an arbitration clause is broad enough to cover all of the plaintiff's claims and

9    requires that those claims be submitted to binding arbitration, those claims may be dismissed

10   pursuant to Federal Rule of Civil Procedure 12(b). *See Akar v. Prescott Hotel*, 2008 U.S. Dist.

11   LEXIS 43066, *4 (N. D. Cal. June 2, 2008) quoting *Sparling v. Hoffman Constr. Co.*, 864 F.2d

12   635, 638 (9th Cir. 1988) (district court exercised its discretion to dismiss *pro se* plaintiff's Title

13   VII claims because they were subject to binding arbitration and were therefore barred), relying on

14   *Martin Marietta Aluminum, Inc. v. General Electric Co.*, 568 F.2d 143 (9th Cir. 1978). *See also*

15   *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1078 (9th Cir. 2002)

16   (upholding a motion to dismiss under Rule 12(b) for failure to exhaust non-judical arbitration

17   proceedings required under a collective bargaining agreement noting that such a motion is

18   "properly considered a nonenumerated" Rule 12(b) motion."), quoting *Ritza v. Int'l*

19   *Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988).

20               2.    **Due deference to the Supreme Court and the strong public policy in**
21                     **favor of arbitration require the enforcement of the broadly worded**
                       **arbitration provision in Ramondetta's offer letter**

22         In the words of the Supreme Court in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,

23   220-21, 105 S.Ct. 1238, 84 L.Ed. 2d 158 (1985) (emphasis added),

24         The [Federal] Arbitration Act provides that written agreements to arbitrate
25         controversies arising out of an existing contract 'shall be valid, irrevocable, and
           enforceable, save upon such grounds exist at law or in equity for the revocation of

26   _____

[1]    Konami has filed counterclaims against Ramondetta that it does not dispute fall within the scope of the arbitration clause and, along with Ramondetta's claims, should be compelled to arbitration.

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

CV-C-08-01002 JSW
420825.1

1  any contract.' 9 U.S.C.§ 3.  **By its terms, the Act leaves no place for the
2  exercise of discretion by a district court, but instead mandates that district
3  courts shall direct the parties to proceed to arbitration on issues as to which
   an arbitration agreement has been signed.**

4       The Federal Arbitration Act embodies Congress' intent to enforce arbitration agreements
5  and a "clear federal policy" in favor of arbitration.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719
6  (9th Cir. 1999).  The courts have embraced this public policy, interpret arbitration clauses
7  liberally, and resolve all doubts concerning the scope of arbitral issues in favor of arbitration.  *See
8  id.* quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 74 L.Ed. 2d
9  765, 103 S.Ct. 927 (1983).

10      Arbitration agreements are rigorously enforced, even in the employment context.  *Id.* 470
11 U.S. at 220.  In *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.
12 2d 234 (2001), the Supreme Court unequivocally concluded that the Federal Arbitration Act
13 applies equally to claims as between an employee and an employer.  To rule otherwise "would call
14 into doubt the efficacy of alternative dispute resolution procedures adopted by many employers, in
15 the process undermining the FAA's proarbitration purposes and 'breeding litigation from a statute
16 that seeks to avoid it.'"  *Id.* quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 275, 130
17 L.Ed. 2d 753, 115 S.Ct. 834 (1995).  *See also Akar*, U.S. Dist. LEXIS 43066, *5-6, quoting
18 *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) ("the ***standard for
19 demonstrating arbitrability is not a high one***; in fact ***a district court has little discretion to deny
20 an arbitration motion***, since the [FAA] is phrased in mandatory terms.") (emphasis added), and
21 *Dean Witter*, 470 U.S. at 218 ("the FAA 'leaves no place for the exercise of discretion by a district
22 court'."), and *Moses H. Cone*, 460 U.S. at 24 ("as a matter of federal law, any doubts concerning
23 the scope of arbitrable disputes should be resolved in favor of arbitration.").  When, as here, the
24 making of the agreement is not in issue,[2] the only question to be resolved by the court is: does an

25

26

---

[2]      Ramondetta cannot argue that the arbitration agreement contained in the offer letter is
unenforceable since he is trying to enforce the terms of the offer letter.  All of the claims raised in
his complaint are covered by the arbitration agreement.

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

CV-C-08-01002 JSW
420825.1

1   agreement to arbitrate exist, and if it does, **the court must order arbitration**. *Simula*, 175 F.3d at

2   719-20, citing *Howard Elec. & Mech. Briscoe Co.*, 754 F.2d 874, 849 (9th Cir. 1985).

3       *Semcken v. Genesis Medical Interventional, Inc.*, 2004 U.S. Dist. LEXIS 20380 *6 (N.D.

4   Cal. Sept. 24, 2004) is practically on all fours with this case and compels the same result –

5   dismissal of the complaint in favor of arbitration.  Genesis hired Semcken as its Chief Executive

6   Officer pursuant to the terms of an offer letter.[3]  *Id.* at *2.  Semcken's offer letter contained an

7   arbitration provision, which stated in relevant part, "In the event any dispute arises between you

8   and the Company [], then, to the extent permitted by law, it will be settled exclusively by binding

9   arbitration." *Id.* at *2, 3.   The employment relationship was short-lived; Genesis terminated

10  Semcken within ten months.  *Id.* at *3.  Semcken refused to sign a severance agreement because of

11  disputes about his compensation.   *Id.*   Genesis attempted to resolve those disputes through

12  arbitration, but Semcken abandoned the arbitration proceedings and instead filed a lawsuit in

13  federal court alleging, among other things, breach of contract.  *Id.* at *3, 4.  Genesis filed a motion

14  to dismiss and to compel arbitration.  *Id.* at *4.

15      Invoking the Federal Arbitration Act, and relying on the Supreme Court's decisions in

16  *Dean Witter*, and *Circuit City*, the Honorable Judge Fern Smith of this Court held that the broadly

17  worded arbitration language in the offer letter covered "any dispute" between Semcken and the

18  Company or its employees, and that all of Semcken's claims were subject to arbitration.  *Semcken*,

19  U.S. Dist. LEXIS 20380, *6.[4]  Because the arbitration.  covered all of Semcken's claims and there

20  would be nothing left to resolve after arbitration, this Court dismissed the complaint.  *Id.* at *15.

21      Just like *Semcken*, KGI hired Ramondetta pursuant to a personalized, three-page offer

22  letter that contained an arbitration provision.  *See* Sutherland Decl., ¶¶ 13, 14.   Ramondetta

23  _____

24  [3]     The first offer letter dated June 16, 2003, was not signed by the parties.  The parties
    executed a second offer letter approximately 6 weeks later, on July 31, 2003.  The second offer
    letter contained the arbitration clause.  *Id.* at 2.

25  [4]     Semcken argued that the arbitration agreement was unconscionable.  *Id.* at *7.  The court

26  rejected Semcken's unconscionability argument finding that there was nothing procedurally or
    substantively unconscionable about an arbitration agreement in a personalized three-page offer
    letter the terms of which, Semcken, then the putative CEO, successfully negotiated with Genesis.
    *Id.* at *7-13.

    MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

1    successfully negotiated certain terms of the offer letter, but never attempted to negotiate the

2    arbitration provision. *Id.* ¶¶ 12-15. The arbitration provision in the offer letter is broadly worded

3    and covers all of Ramondetta's claims against KGI:

> By accepting this offer of employment, you agree to settle *any and all claims*, disputes or controversies *arising out of or relating to your application or candidacy for employment, employment and/or cessation of employment with KGI, exclusively by final and binding arbitration before a neutral arbitrator.* By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, as amended, including the amendments of the Civil Rights Act of 1991, the American With Disabilities Act, *the law of contract* and the law of tort.

11   *Id.*, Exhibit B.  Just like *Semcken*, pursuant to the strong public policy in favor of arbitration

12   repeatedly reinforced by our nation's highest court and this Court, this case must be compelled to

13   arbitration.  Further, because all of Ramondetta's breach of contract claims against KGI can and

14   will be resolved in arbitration, leaving nothing for this court to decide, this case must be

15   dismissed.

16   **B.    California's Choice of Law Rules Require the Application of Nevada Law to
17          the Resolution of Ramondetta's Claims**

18         Regardless of whether Ramondetta's claims are compelled to arbitration, Nevada law

19   applies to the resolution of those claims.  When a federal court sitting in diversity hears state law

20   claims, the conflicts laws of the forum state are used to determine which state's substantive law to

21   apply. *See 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999).  In a contract

22   action where there is no choice of law agreement, California courts follow the relevant contacts

23   test from the RESTATEMENT (SECOND) OF CONFLICTS OF LAW, Section 188, to determine which

24   state's substantive law would apply.  *See Sagent Technology v. Micro Systems, Inc.*, 2002 U.S.

25   Dist. LEXIS 26647, *6 (N.D. Cal. May 29, 2002), citing *Stonewall Surplus Lines Ins. Co. v.*

26   *Johnson Controls, Inc.*, 14 Cal.App.4th 637, 645, 17 Cal.Rptr.2d 713 (1993).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW
420825.1

9

The relevant contacts are: (a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* at *6, *citing Stonewall*, 14 Cal.App.4th at 645, 17 Cal.Rptr.2d 713, quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAW, § 188(2) and referring to CAL. CIV. CODE § 1646 (requiring contracts to be interpreted in accordance with the law and usage of the place the contract is to be performed.)

In *Sagent*, the Honorable Magistrate Judge Patricia V. Trumbull of this Court granted defendant's motion to transfer a breach of contract case from California to Maryland. The court used Section 188 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAW to guide its analysis of the public interest factors, of which, choice of law is one. *Id.* at *5, 6. The contract at issue was negotiated and formed in Maryland and Virginia, but was to be performed in Maryland. *Id.* at *7 . Defendant was a Maryland corporation and maintained its principal office in Maryland. *Id.* at *5, 7. Plaintiff was a Delaware corporation with its principal place of business in California. The relevant contacts, specifically, that defendant negotiated the contract in Maryland, where it was incorporated and had its principal place of business, and where the contract was to be performed, all weighed in favor of the application of Maryland law, and ultimately, in favor of transfer of venue to Maryland. *See Id.* at *8.

A more recent application of the relevant contacts test by this Court is illustrated in *Dena' Nena' Henash v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 39611 (N. D. Cal. May 16, 2007), where the court analyzed which law, California or Alaska, applied to plaintiff's unfair practice claims related to a Service Agreement, which was one of two agreements it signed with Oracle. *Id.* at *26-27. The Service Agreement contained a choice of law provision that required the application of Montana law, but, for their own reasons, both parties disputed the application of the choice of law provision. *Id.* at *26. The court agreed, and instead, treated the Service Agreement as one that did not have a choice of law provision applying California's relevant contacts test from the RESTATEMENT to determine what law applied to the unfair practice claims. *Id.* at *27.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW

10

1    The court acknowledged the RESTATEMENT'S instruction that, notwithstanding the factors,

2    "[i]f the place of negotiating the contract and the place of performance are in the same state, the

3    local law of this state will usually be applied." *Id.* at *24, quoting RESTATEMENT (SECOND) OF

4    CONFLICTS OF LAW, § 188(3). Finding that the contract was negotiated by the plaintiff in Alaska,

5    and was to be performed in Alaska, this Court concluded that Alaska law applied to the unfair

6    practices claim arising out of the Service Agreement. *Id.* at *28.

7    Analyzing the facts of this case under California's relevant contacts test inevitably and

8    indisputably results in a finding that Nevada law is the relevant and applicable law that governs

9    Ramondetta's claims.

10    *The place of negotiating and contracting*

11    Although there is no one single place of negotiating or contracting, the majority of the

12    relevant negotiating and contracting contacts tip the scale in favor of Nevada.    KGI invited

13    Ramondetta to Nevada twice to interview for the position of Vice President of Sales and

14    Marketing. *See* Sutherland Decl., ¶ 7. After the interviews, Sutherland prepared the terms of the

15    offer letter at his office in Nevada and telephoned Ramondetta from his office in Nevada to

16    discuss the proposed terms. *Id.* at ¶ 12. Once final, the offer letter was sent to Ramondetta in

17    California, where he proceeded to further negotiate the terms of the offer letter by contacting

18    Youngblood in Nevada. *Id.* ¶¶ 13-15. Sakamoto approved Ramondetta's changes to the offer

19    letter in Nevada. *Id.* ¶ 15.

20    *The place of performance and location of the subject matter of the contract*

21    From the outset of the recruitment process, Ramondetta knew that the Vice President of

22    Sales and Marketing position at KGI would be in Nevada, that he would be required to relocate to

23    Nevada, and become a Nevada resident to fill the position. *Id.* ¶ 5, Exhibits A, B. KGI reiterated

24    the importance of relocating to Nevada during the interview process and the offer letter

25    specifically contemplated Ramondetta's relocation to Nevada. *Id.* ¶ 9. As the Vice President of

26    Sales and Marketing, Ramondetta was responsible for the Game Sales and Marketing Division in

Las Vegas, Nevada, supervising and providing leadership to 18 employees. *Id.* Unless he needed

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW
420825.1

1    to travel outside of Nevada to attend a business related meeting on behalf of KGI, beginning in

2    April 2006 through June 2006, Ramondetta spent the work week in Las Vegas, Nevada

3    performing the functions of his job as the Vice President of Sales and Marketing at Konami's

4    offices in Las Vegas, Nevada.  *Id.* ¶ 19.

5        *Residence, place of incorporation and principal place of business*

6        KGI is a Nevada corporation with its principal place of business in Nevada.  *Id.* ¶ 13.

7    Although Ramondetta was a California resident at the time he negotiated and accepted the position

8    at KGI, the Court cannot ignore the fact that, at least at one point, Ramondetta represented and

9    agreed to relocate to Las Vegas, Nevada, and become a resident of Nevada.  *Id.* ¶ 9.  Just as KGI

10   rejected an applicant from the first pool of candidates Korn Ferry presented because he could not

11   relocate to Nevada to accept the position, if Ramondetta had refused to move to Nevada, or

12   indicated that he was unable to do so, KGI never would have hired him.  *Id.* ¶¶ 7, 9.

13       On these facts, California's relevant contacts test and Civil Code Section 1646 mandate the

14   application of Nevada law to the resolution of Ramondetta's claims, which arise out of an offer

15   letter that was negotiated and formed in Nevada, was to be performed in Nevada at a Nevada

16   corporation with its principal place of business in Nevada, by a soon-to-be Nevada resident.

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW
420825.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IV.    CONCLUSION

All of Ramondetta's claims arise out of and are related to his employment and are subject to binding arbitration in accordance with the terms of the offer letter.    Arbitration must be compelled and this case dismissed.

Irrespective of the Court's determination on the Motion to Dismiss and Compel Arbitration, with respect to applicable law, California's relevant contacts test mandates the application of Nevada law to all of Ramondetta's claims.

For the reasons set forth herein, Konami respectfully requests that this Court GRANT its Motion to Dismiss and Compel Arbitration, and to Determine Applicable Law.

DATED this 9th day of June, 2008.

Respectfully submitted,

LEWIS AND ROCA LLP

By:  /s/ Suzanne L. Martin
SUZANNE L. MARTIN
California Bar No. 210613
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Ste. 600
Las Vegas, Nevada  89169
(702) 949-8200
(702) 949-8398 (fax)
Attorneys for Defendant

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 JSW
420825.1

13