HOWARD E. COLE
California Bar No. 91707
SUZANNE L. MARTIN
California Bar No. 210613
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
(702) 949-8398 (fax)

Attorneys for the Defendant

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOU RAMONDETTA,<br><br>                                        Plaintiff,<br><br>        vs.<br><br>KONAMI, et al.,<br><br>                                        Defendant. | Case No. C08-01002 BZ<br><br>**Declaration of Suzanne L. Martin *in support of* Konami's Motion to Compel Arbitration and Dismiss; Motion to Determine Applicable Law**<br><br>Hearing Date: September 3, 2008<br>Hearing Time: 10:00 a.m. |

I, Suzanne L. Martin, declare as follows:

1.      The following facts are within my personal knowledge and, if called to testify, I could testify competently to them.

2.      I am counsel for Defendant Konami Gaming, Inc. ("Konami"), in this matter and am filing this declaration in support of a Motion to Compel Arbitration and Dismiss; and Motion to Determine Applicable Law ("Motion"). Some of the cases cited in Konami's Motion are not officially published.

3.      Therefore, in compliance with Cir. Rule 36-3(b)(c)(iii), and Fed. R. C. App. P. 32.1, true and correct copies of the unpublished decisions cited in Konami's Motion are attached hereto. The cases, as they appear in order in the motion are:

DECLARATION OF SUZANNE L. MARTIN
1

C08-01002 BZ
423965

1         a.  *Akar v. Prescott Hotel*, 2008 U.S. Dist. LEXIS 43066 (N. D. Cal. June 2,

2             2008), Exhibit 1;

3         b.  *Semcken v. Genesis Medical Interventional, Inc.*, 2004 U.S. Dist. LEXIS

4             20380 (N.D. Cal. 2004), *aff'd, Semcken v. Genesis Med. Interventional, Inc.*,

5             2005 U.S. App. LEXIS 9252 (9th Cir. Cal., May 19, 2005), Exhibit 2;

6         c.  *Sagent Technology v. Micro Systems, Inc.*, 2002 U.S. Dist. LEXIS 26647

7             (N.D. Cal. May 29, 2002), Exhibit 3;

8         d.  *Dena' Nena' Henash v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 39611 (N. D.

9             Cal. May 16, 2007), Exhibit 4.

10       I declare under penalty of perjury under the laws of the United States of America,

11  including 28 U.S.C. § 1746, that the foregoing is true and correct based upon my personal

12  knowledge.

13       Executed on this 25th day of June, 2008.

14

15                             Suzanne L. Martin

16

17

18

19

20

21

22

23

24

25

26

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

27

28

C08-01002 BZ
423965

# Exhibit 1

LEXSEE 2008 U.S. DIST. LEXIS 43066

HELENE AKAR, Plaintiff, v. PRESCOTT HOTEL, Defendant.

No. C 07-4531 SI

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2008 U.S. Dist. LEXIS 43066*

June 2, 2008, Decided
June 2, 2008, Filed

COUNSEL: [*1] Helen Akar, Plaintiff, Pro se, San Francisco, CA.

For Prescott Hotel, Defendant: Margaret Elizabeth Murray, LEAD ATTORNEY, Folger Levin & Kahn LLP, San Francisco, CA.

JUDGES: SUSAN ILLSTON, United States District Judge.

OPINION BY: SUSAN ILLSTON

OPINION

ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION TO DISMISS AND TO COMPEL ARBITRATION

Defendant's motion to dismiss and petition to compel arbitration is scheduled for a hearing on June 6, 2008. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court finds that plaintiff agreed to arbitrate her claims against defendant, and thus the Court GRANTS defendant's petition to compel arbitration and to dismiss this case.

BACKGROUND

On March 28, 2008, plaintiff filed an amended complaint alleging claims under Title VII for employment discrimination. Plaintiff alleges that while she was employed at the Prescott Hotel, she experienced discrimination on account of her race or color, age, [1] sex, and national origin. Amended Complaint P 5. Plaintiff alleges that managers and co-workers harassed her, that she was unfairly disciplined, not promoted, and [*2] ultimately terminated. *Id.* (attached letter).

1  Plaintiff filed a form "employment discrimination complaint" which states that the action is brought pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff attached to the complaint a letter describing her claims in which she alleges that she was also discriminated against on the basis of her age. Although irrelevant for purposes of deciding the instant motion, the Court informs plaintiff that Title VII does not protect against age-based discrimination in employment; such claims are brought pursuant to the Age Discrimination in Employment Act.

Defendant has moved to compel arbitration and to dismiss the complaint. Defendant states that plaintiff worked as a Guest Service Agent at the Prescott Hotel in 2005. Defendant has submitted a copy of an arbitration agreement signed by plaintiff. That agreement provides, in relevant part:

In consideration for and as a material condition of your employment and the continuation of your employment with the Company, you and the Company agree to submit for resolution pursuant to the American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes . . . any employment-related [*3] disputes which are not resolved through the Company's employee appeal procedure. Employment-related disputes are any actual or alleged events, claims or disputes in connection with or concerning or arising out of your employment, or the administration or termination of your employment, including those based on alleged violations of federal and/or state laws, including but not

2008 U.S. Dist. LEXIS 43066, *



limited to Title VII of the Civil Rights Act
of 1964, as amended, the Americans with
Disabilities Act, the Age Discrimination
in Employment Act and with the excep-
tion of . . . [any] claims prohibited by law
from being resolved by arbitration.

Murray Decl. Ex. A at 1. The agreement also provides
that the "dispute shall be resolved by exclusive, final and
binding arbitration before a single neutral arbitrator
knowledgeable in employment law," that the parties have
a right to be represented by an attorney during any phase
of the arbitration proceedings, and that "the Company
will pay all of the expenses and fees of the arbitrator
[and] will also pay seventy-five (75) percent of the
AAA's administrative fees; the employee will pay twenty
five (25) percent." *Id.* at 2. [*4] Plaintiff did not file an
opposition to the motion.

**LEGAL STANDARD**

Where an "arbitration clause [is] broad enough to
bar all of the plaintiff's claims since it required [the
plaintiff] to submit all claims to arbitration," those claims
may be dismissed pursuant to *Federal Rule of Civil Pro-
cedure 12(b)(6). Sparling v. Hoffman Constr. Co., 864
F.2d 635, 638 (9th Cir. 1988).* The Federal Arbitration
Act, and case law interpreting it, provide guidance as to
when an arbitration agreement covers a plaintiff's claims.

*Section 4* of the Federal Arbitration Act permits "a
party aggrieved by the alleged failure, neglect, or refusal
of another to arbitrate under a written agreement for arbi-
tration [to] petition any United States District Court . . .
for an order directing that . . . arbitration proceed in the
manner provided for in [the arbitration] agreement." *9
U.S.C. § 4.* Upon a showing that a party has failed to
comply with a valid arbitration agreement, the district
court must issue an order compelling arbitration. *See
Cohen v. Wedbush, Noble Cooke, Inc., 841 F.2d 282,
285 (9th Cir. 1988).*

The Supreme Court has stated that the FAA es-
pouses a general policy favoring arbitration agreements.
*See Moses H. Cone Memorial Hosp. v. Mercury Constr.
Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d
765 (1983).* [*5] Federal courts are required to rigor-
ously enforce an agreement to arbitrate. *See id.* In deter-
mining whether to issue an order compelling arbitration,
the court may not review the merits of the dispute, but
must limit its inquiry to (1) whether the contract contain-
ing the arbitration agreement evidences a transaction
involving interstate commerce, (2) whether there exists a
valid agreement to arbitrate, and (3) whether the dis-
pute(s) fall within the scope of the agreement to arbitrate.
*See Republic of Nicaragua v. Standard Fruit Co., 937*

*F.2d 469, 475, 477-78 (9th Cir. 1991), cert denied, 503
U.S. 919, 112 S. Ct. 1294, 117 L. Ed. 2d 516 (1992).* If
the answer to each of these queries is affirmative, then
the Court must order the parties to arbitration in accor-
dance with the terms of their agreement. *9 U.S.C. § 4.*

"The standard for demonstrating arbitrability is not a
high one; in fact, a district court has little discretion to
deny an arbitration motion, since the [FAA] is phrased in
mandatory terms." *Standard Fruit, 937 F.2d at 475; cf.
Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218,
105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)* (holding that
the FAA "leaves no place for the exercise of discretion
by a district court"). Moreover, the scope of an arbitra-
tion [*6] clause must be interpreted liberally and "as a
matter of federal law, any doubts concerning the scope of
arbitrable disputes should be resolved in favor of arbitra-
tion." *Moses H. Cone, 460 U.S. at 24.* Hence, "[a]n order
to arbitrate . . . should not be denied unless it may be said
with positive assurance that the arbitration clause is not
susceptible of an interpretation that covers the asserted
dispute. Doubts should be resolved in favor of coverage."
*United Steelworkers of America v. Warrior & Gulf Navi-
gation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L.
Ed. 2d 1409 (1960).*

**DISCUSSION**

Defendant moves to compel arbitration of plaintiff's
claims pursuant to the terms of the arbitration agreement.
Plaintiff has not filed an opposition to the motion, al-
though the proof of service indicates that she was served
with the motion.

The Court finds that the *Standard Fruit* factors are
met here, and that plaintiff should be compelled to arbi-
trate her claims. The contract containing the arbitration
clause evidences a transaction involving interstate com-
merce in that plaintiff worked at a hotel in San Francisco.
*Cf. Heart of Atlanta Motel, Inc. v. United States,379 U.S.
241, 243, 85 S. Ct. 348, 13 L. Ed. 2d 258 (1964).* Plain-
tiff has not disputed the validity of [*7] the arbitration
agreement, and the copy of the agreement filed with the
Court is signed and dated. [2] Finally, the instant dispute
clearly falls within the scope of the agreement, which
covers all employment-related claims. Accordingly, the
Court GRANTS defendant's motion to compel arbitra-
tion, and DISMISSES the complaint. *See Sparling, 864
F.2d at 638.*

2    Although plaintiff does not challenge the
agreement as unenforceable, the Court finds that
the arbitration agreement meets the requirements
set forth in *Armendariz v. Foundation Health
Psyhcare Services, Inc., 24 Cal. 4th 83, 102, 99
Cal. Rptr. 2d 745, 6 P.3d 669 (2000):* the agree-
ment here "(1) provides for neutral arbitrators, (2)

2008 U.S. Dist. LEXIS 43066, *



provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Id.*

## CONCLUSION

For the foregoing reasons the Court GRANTS defendant's petition to compel arbitration and GRANTS the motion to dismiss. (Docket No. 20). The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 2, 2008

/s/ Susan  [*8] Illston

SUSAN ILLSTON

United States District Judge

# Exhibit 2



LEXSEE 2004 US DIST LEXIS 20380

**KEVIN SEMCKEN, Plaintiff, v. GENESIS MEDICAL INTERVENTIONAL, INC., WILLIAM R., DUBRUL AND ANDREI MANOLIU, Defendants.**

**No. C 04-02654 FMS**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2004 U.S. Dist. LEXIS 20380*

**September 29, 2004, Decided**

**SUBSEQUENT HISTORY:** Affirmed by *Semcken v. Genesis Med. Interventional, Inc.,* 2005 U.S. App. LEXIS 9252 (9th Cir. Cal., May 19, 2005)

**DISPOSITION:**    Defendant's motion to dismiss granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer moved to stay the action filed by plaintiff employee after he was terminated as chief executive officer pending arbitration, or alternately to dismiss.

**OVERVIEW:** The offer letter contained an arbitration provision, which was the subject of the dispute. The employee was terminated by the employer, but he refused to sign the required release to receive his severance package because of disputes about his compensation. The employer filed a demand for arbitration, and after making an appearance in the proceedings in the person of his attorney, the employee filed his complaint. The court found that the arbitration clause contained in the contract executed by the employee and the employer was fully enforceable and that all of the employee's claims were covered under the arbitration agreement. Because nothing would remain for the court to resolve after arbitration, the court saw no advantage to either party in retaining jurisdiction. In the interests of judicial economy and efficiency, the court granted the employer's motion and dismissed the employee's action without prejudice.

**OUTCOME:** The court granted the employer's motion and dismissed the employee's action without prejudice, and the hearing set for a later date was vacated.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Stays Pending Arbitration*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
[HN1] Under the Federal Arbitration Act (FAA), a party to a lawsuit pending in federal court may seek a stay of the action pending arbitration of one or more issues raised by the litigation. The FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. When all claims made in the litigation are subject to arbitration, courts may also choose to dismiss the action in its entirety for the failure to state a claim under *Fed. R. Civ. P. 12(b)(6).* Dismissal for failure to state a claim is appropriate when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > General Overview*
[HN2] The Federal Arbitration Act (FAA) provides that arbitration agreements generally shall be valid, irrevocable, and enforceable except when grounds exist at law or in equity for the revocation of any contract. *9 U.S.C.S. § 2.* The FAA applies to individual employment contracts.



*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
[HN3] To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts.

*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Contracts Law > Defenses > Unconscionability > Arbitration Agreements*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Enforcement*
[HN4] In California, courts may refuse to enforce an arbitration agreement if it is unconscionable. *Cal. Civ. Code § 1670.5* (1999). Under California law, an agreement to arbitrate is unconscionable only if it is both procedurally and substantively unconscionable. Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power. Substantive unconscionability centers on the terms of the agreement and whether those terms are so one-sided as to shock the conscience.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Contracts Law > Defenses > Unconscionability > Arbitration Agreements*
[HN5] To determine whether the arbitration agreement is procedurally unconscionable the court must examine the manner in which the contract was negotiated and the circumstances of the parties at that time. A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms. A threshold question in an analysis of procedural unconscionability is whether the arbitration clause is part of a contract of adhesion.

*Contracts Law > Defenses > Unconscionability > Adhesion Contracts*
*Contracts Law > Types of Contracts > Adhesion Contracts*

[HN6] A contract of adhesion is a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of either adhering to its terms without modification or rejecting the contract entirely.

*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
*Contracts Law > Defenses > Unconscionability > General Overview*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Arbitration Provisions > General Overview*
[HN7] Courts have defined oppression as involving an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.

COUNSEL: [*1] For Kevin Semcken, Plaintiff: Peter S. Rukin, The Law Office of Peter Rukin, Oakland, CA; Lannis W. Temple, Austin, TX.

For Genesis Medical International, Inc., Defendant: John G. Hursh, Ritchey Fisher Whitman & Klein, Palo Alto, CA.

For William R. Dubrul, Defendant: John G. Hursh, Ritchey Fisher Whitman & Klein, Palo Alto, CA.

For Andrei M. Manoliu, Defendant: John G. Hursh, Ritchey Fisher Whitman & Klein, Palo Alto, CA.

JUDGES: FERN M. SMITH, UNITED STATES DISTRICT JUDGE.

OPINION BY: FERN M. SMITH

OPINION

**ORDER ON MOTION TO STAY ACTION PENDING ARBITRATION OR ALTERNATIVELY TO DISMISS**

**INTRODUCTION**

This action arises from plaintiff Kevin Semcken's termination as Chief Executive Officer (CEO) of defendant Genesis Medical Interventional, Inc. Genesis submitted Mr. Semcken's post-employment dispute regarding the compensation due to him to arbitration per a mandatory arbitration clause contained in Mr. Semcken's employment contract. Mr. Semcken filed this action soon thereafter. Genesis then moved to stay the action pending arbitration or alternatively to dismiss. Mr. Semcken argued in opposition that the arbitration agreement was unconscionable and should not be enforced. [*2] With



this order, the Court decides that the arbitration agreement between Mr. Semcken and Genesis is fully enforceable and grants Genesis's motion to dismiss.

## FACTUAL BACKGROUND

Genesis Medical Interventional, Inc., ("Genesis") is a start-up company founded in California by, *inter alia*, defendants William Dubrul and Andrew Manoliu. Pursuant to an offer letter dated November 11th, 2002, Genesis hired plaintiff Kevin Semcken ("Semcken") as CEO. This offer letter, which was never executed, governed the employment relationship until a second offer letter, dated June 16, 2003, was signed by Dubrul and countersigned by Semcken on July 31, 2003. This second offer letter contains the arbitration provision which is the subject of the present dispute. This arbitration provision states:

> In the event any dispute arises between you and the Company or any employee of the Company, then, to the extent permitted by law, it will be settled exclusively by binding arbitration before a single arbitrator in accordance with the Employment ADR Rules of the American Arbitration Association. The arbitrator's decision shall be final and binding upon the parties, and may be entered and enforced [*3] in any court of competent jurisdiction by either of the parties. The arbitrator shall have the power to grant temporary, preliminary and permanent relief, including, without limitation, injunctive relief and specific performance. The Company will pay the direct costs and expenses of arbitration. You and the Company are responsible for your respective attorney's fees incurred in connection with enforcing this letter, provided that, except as may be prohibited by law, the arbitrator may, in his or her discretion, award reasonable attorney's fees to the prevailing party.

In April 2004, Semcken was terminated by Genesis. Semcken refused to sign the required release to receive his severance package because of disputes about his compensation. On May 21, 2004, Genesis filed a Demand for Arbitration with the American Arbitration Association. After making an appearance in the arbitration proceedings in the person of his attorney, Semcken filed his complaint on July 1, 2004. The complaint alleges breach of contract, breach of fiduciary duty, breach of covenant of good faith and fair dealing, fraudulent inducement, negligent representation, tortious wrongful

termination, intentional infliction [*4] of emotional distress, negligent infliction of emotional distress, civil conspiracy, claims under labor statutes pertaining to wages, and tortious interference with contract.

Genesis moved this Court on August 5, 2004 to stay or alternatively dismiss Semcken's action, arguing that the employment contract's arbitration provision requires Semcken to submit his claims to arbitration. The Court has jurisdiction to decide this matter pursuant to *28 U.S.C. § 1332(a)(1)* because the parties are citizens of different states and the amount in controversy exceeds $ 75,000.

## DISCUSSION

Genesis moved the Court to either stay Semcken's action or dismiss it for a failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*. [HN1] Under the FAA, a party to a lawsuit pending in federal court may seek a stay of the action pending arbitration of one or more issues raised by the litigation. *Wagner v. Stratton Oakmont, Inc. 83 F.3d 1046 (9th Cir. 1996)*. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration [*5] agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985)*.

When all claims made in the litigation are subject to arbitration, courts may also choose to dismiss the action in its entirety for the failure to state a claim under *Rule 12(b)(6)*; *Sparling v. Hoffman Constr. Co., 864 F2d 635, 638 (9th Cir. 1988)*: see also *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F2d 143 (9th Cir. 1978)* (holding that the judge had discretion to grant summary judgment when all the plaintiffs claims were barred by an arbitration clause). Cf. *Underwriters Reinsurance Co. v. Ace Am. Ins. Co., 2003 U.S. Dist. LEXIS 24814 (D. Cal., 2003)* (dismissing plaintiffs action where all claims were arbitrable). Dismissal for failure to state a claim is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Homedics, Inc. v. Valley Forge Ins. Co., 315 F.3d 1135, 1138 (9th Cir. 2003)*.

To decide whether to stay or alternatively to dismiss Semcken's action in this case, the Court must determine (A) whether [*6] there is an arbitration agreement that covers the dispute in the pending action; (B) whether the arbitration agreement is enforceable under the unconscionability doctrine of California law.

*A. Existence of an Arbitration Agreement*

[HN2] The *Federal Arbitration Act* (FAA) provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable" except when grounds "exist at law or in equity for the revocation of any contract." *9 U.S.C. § 2 (2002); Ingle v. Circuit City Stores,. Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).* The FAA applies to individual employment contracts such as the one at issue in this dispute. *Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109, 149 L. Ed. 2d 234, 121 S. Ct. 1302 (2001).* The arbitration clause contained in the June 16, 2003 offer letter executed by Genesis and Semcken is broadly worded to cover "any dispute [that arises] between you and the Company or any employee of the company." Plaintiff does not dispute that the FAA applies to the arbitration clause in his employment contract or that the arbitration clause covers all the claims raised in his complaint. The Court concludes that there is indeed an arbitration [*7] provision subject to the FAA that covers all of Semcken's causes of actions.

*B. Unconscionability Analysis*

Semcken contends that Genesis's arbitration agreement is unconscionable under California contract law and therefore should not be enforced by the Court. [HN3] To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *Ingle, supra, at 1170,* quoting *First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 at 944, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995).* Semcken was employed by a California company, so we evaluate his claims under the contract law of that state. Cf. *Circuit City Stores, Inc. v. Adams, 279 F.3d 889 at 892 (9th Cir. 2002)* [hereinafter, Adams III].

[HN4] In California, courts may refuse to enforce an arbitration agreement if it is unconscionable. *Cal. Civ. Code § 1670.5 (1999).* Under California law, an agreement to arbitrate is unconscionable only if it is both procedurally and substantively unconscionable. *Circuit City Stores v. Ahmed, 283 F.3d 1198 (9th Cir. 2002); Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (Cal. 2000).* [*8] Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071, 130 Cal. Rptr. 2d 892, 63 P.3d 979 (2003)* quoting *Armendariz, supra, at 114.* Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Ingle, supra, at 1172,* quoting *Kinney v. United Healthcare Servs., Inc., 70 Cal. App. 4th 1322, 1330, 83 Cal. Rptr. 2d 348 (1999)* (internal quotation marks omitted).

The Court first addresses the question of whether the arbitration agreement in this case is procedurally uncon-

scionable. In *Ingle, supra,* the Ninth Circuit laid out the legal standard under California law for procedural unconscionability:

[HN5] To determine whether the arbitration agreement is procedurally unconscionable the court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Servs., Inc., 70 Cal. App. 4th 1322 at 1329 (1999).* . . . . A contract is oppressive if an inequality of bargaining power between the parties precludes [*9] the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. *Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519 at 1532, 60 Cal. Rptr. 2d 138 (1997)* (citation omitted). "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Id. (internal quotation marks omitted). *Ingle, supra, at 1171.*

A threshold question in an analysis of procedural unconscionability is whether the arbitration clause is part of a contract of adhesion. *Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1533, 60 Cal. Rptr. 2d 138,* accord *Armendariz supra, 24 Cal. 4th at 113.* [HN6] A contract of adhesion is "a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of either adhering to its terms without modification or rejecting the contract entirely" *Adams III, supra, at 893.*

The factual record in this case does not support Semcken's claim that the arbitration provision is procedurally unconscionable. First, the arbitration provision was [*10] not part of a contract of adhesion. The employment contract which contained the arbitration clause was a personalized "offer letter," drafted specifically for Semcken and personally addressed to him. The contract was not standardized or "cast in generic and gender-neutral language". Cf. *Stirlen, supra, at 1534.* Nor was the contract containing the arbitration provision presented with only the option of either adhering or rejecting it. Rather, the contract presented to Semcken was, as both parties agree, subject to negotiation and actually negotiated. (Semcken Decl. P 24; Manoliu Decl. P 7.)

Second, Semcken had a meaningful opportunity to "negotiate and choose the terms of the contract." *Stirlen,*

*supra, at 1532.* It is undisputed that Semcken had an opportunity to negotiate the employment agreement as a whole. (Semcken Decl. P 24; Manoliu Decl. P 7.) Semcken, however, argues that he was told that the arbitration clause was not negotiable. He states that soon after receiving the second offer letter, he told defendant Manoliu by telephone that he "did not want this arbitration clause" and that Manoliu told him "it was not negotiable." (Semcken [*11] Decl. P 24.) Manoliu, in contrast, alleges that Semcken "never raised any concerns about the arbitration clause." (Manoliu Decl. P 8.) The parties agree that Semcken did not raise it again in the course of the negotiations on the employment contract that ensued. Even if the Court accepts Semcken's claim that Manoliu told him initially that the term was not negotiable, the Court finds that Semcken still had a realistic ability to modify the terms of the employment contract, including the arbitration agreement. In Stirlen and Abramson, upon which Semcken relies to support his argument that the Court must consider his ability to negotiate the arbitration provision as opposed to other aspects of the employment agreement, employees were presented with contracts containing arbitration agreements on a "take it or leave it basis." *Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638, 663, 9 Cal. Rptr. 3d 422: Stirlen, supra, at 1533.* In contrast, the contract in this case was fully negotiable on its face. Semcken had a choice regarding which terms to bring up for negotiation and which to leave outside his negotiations, giving him a meaningful opportunity to negotiate [*12] the terms of his contract.

Third, the Court does not find the requisite degree of inequality in the bargaining power of the parties. Semcken argues there was a "vast difference" in the bargaining parties of the two parties which constituted "oppression" (Pl.'s Opp'n P 73), but the weight of the facts are not on his side. [HN7] Courts have defined oppression as involving "an inequality of bargaining power [that] results in no real negotiation and an absence of meaningful choice." *Circuit City v. Mantor 335 F.3d 1101, 1106 (9th Cir. 2003),* quoting *Stirlen, supra, at 1532.* Semcken, as discussed above, had a meaningful opportunity to negotiate his contract. In contrast to the situation of potential employees that are asked to sign mandatory arbitration agreements as a prerequisite to employment, cf. *Adams III, supra, at 893* (employer required employee to sign arbitration agreement as a "prerequisite to employment"), Semcken was already employed by Genesis at the time that this provision was proposed and agreed upon. Moreover, Semcken's continued employment was not conditioned on his agreement to the arbitration clause. Cf. *Armarendiz, supra, at 90 and 113* [*13] (employer imposed arbitration as a condition of employment). The factual record in this case does not conform with the degree of inequality in bargaining power required for a finding of procedural unconscionability.

Finally, the element of "surprise" is not in evidence as the arbitration provision was not "hidden in the prolix printed form," *Stirlen, supra, at 1532,* but rather included prominently as the concluding paragraph to the two-page offer letter. Semcken undermines his argument that the arbitration provision is procedurally unconscionable when he declares to the Court, "At that time, during these discussions [negotiations on his employment contract], I was knowledgeable enough to realize that arbitrations truly only benefit both sides when the amount in controversy is low." (Semcken Decl. P 25.) Semcken cannot, based on these facts, persuade the Court that the agreed-upon arbitration provision "surprised" him.

There is a factual dispute between the parties regarding whether Semcken had the option of executing and abiding by the first offer letter, which did not include an arbitration provision. (Manoliu Supplemental Decl. P 3; Semcken Decl. P [*14] 28.) It is uncontroverted that on May 28th, 2003, during the course of negotiations on the second offer letter, Manoliu offered Semcken the option of signing the first offer letter, which had never been executed. (Def.'s Reply, Ex. A.) Semcken argues, however, that he tried to exercise that option after negotiating the second offer letter but was told he had to sign the second offer letter. (Semcken's Decl. P 28.) Defendant argues that Semcken ultimately chose to sign the second offer letter because it had "better terms." (Def.'s Mot. at 8). This factual dispute is unnecessary to resolve. Even if Semcken's final proposal to sign the first offer letter instead of the second offer letter was ultimately refused, the meaningful opportunity that Semcken had to negotiate the second offer letter allows the conclusion that the arbitration provision that it contained was not procedurally unconscionable.

Because the arbitration provision at issue in this case was not part of a contract of adhesion and because Semcken enjoyed sufficient bargaining power and a meaningful opportunity to negotiate his contract, the arbitration agreement is not procedurally unconscionable. Semcken fails to satisfy even [*15] the procedural unconscionability prong; therefore, we need not reach his arguments that the agreement is substantively unconscionable. Cf. *Ahmed, supra, at 1200.*

## CONCLUSION

For the reasons stated herein, the Court decides that the arbitration clause contained in the contract executed by Genesis and Semcken is fully enforceable and that all of Semcken's claims are covered under this arbitration agreement. Because nothing will remain for the Court to resolve after arbitration, the Court sees no advantage to

2004 U.S. Dist. LEXIS 20380, *



either party in retaining jurisdiction. In the interests of judicial economy and efficiency, the Court GRANTS Genesis's motion and dismisses Semcken's action without prejudice. The hearing set for September 30, 2004 is VACATED.

**IT IS SO ORDERED.**

Dated: September 29, 2004

FERN M. SMITH

UNITED STATES DISTRICT JUDGE



LEXSEE 2005 U.S. APP. LEXIS 9252

KEVIN SEMCKEN, Plaintiff - Appellant v. GENESIS MEDICAL
INTERVENTIONAL, INC.; WILLIAM R. DUBRUL; ANDREI MANOLIU, Defen-
dants - Appellees

No. 04-17202

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

132 Fed. Appx. 155; 2005 U.S. App. LEXIS 9252

May 10, 2005, Argued and Submitted, San Francisco, California
May 19, 2005, Filed

**NOTICE:**    [**1] RULES OF THE NINTH CIRCUIT
COURT OF APPEALS MAY LIMIT CITATION TO
UNPUBLISHED OPINIONS. PLEASE REFER TO
THE RULES OF THE UNITED STATES COURT OF
APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:**    Appeal from the United States
District Court for the Northern District of California.
D.C. No. CV-04-02654-FMS. Fern M. Smith, District
Judge, Presiding.
*Semcken v. Genesis Med. Interventional, Inc., 2004 U.S.
Dist. LEXIS 20380 (N.D. Cal., Sept. 29, 2004)*

**DISPOSITION:**    AFFIRMED.

**COUNSEL:** For KEVIN SEMCKEN, Plaintiff - Appel-
lant: Peter Rukin, ESq., San Francisco, CA; Lannis
Temple, Esq., THE LAW OFFICE OF LANNIS
TEMPLE, Austin, TX

For WILLIAM R. DUBRUL, Defendant - Appellee:
Karen E. Wentzel, Esq., BLASE, VALENTINE &
KLEIN, Palo Alto, CA; John G. Hursh, Esq., RITCHEY
FISHER WHITMAN & KLEIN, Palo Alto, CA

For ANDREI M. MANOLIU, Defendant - Appellee:
Karen E. Wentzel, Esq., RITCHEY FISHER
WHITMAN & KLEIN, Palo Alto, CA; John G. Hursh,
Esq., RITCHEY FISHER WHITMAN & KLEIN, Palo
Alto, CA

For GENESIS MEDICAL INTERNATIONAL INC.,
Defendant - Appellee: Karen E. Wentzel, Esq.,
RITCHEY FISHER WHITMAN & KLEIN, Palo Alto,
CA; Lannis Temple, Esq., THE LAW OFFICE OF
LANNIS TEMPLE, Austin, TX; John G. Hursh, Esq.,
THE LAW OFFICE OF LANNIS TEMPLE, Austin, TX

**JUDGES:**  Before:  KLEINFELD,  HAWKINS,  and
GRABER, Circuit Judges.

**OPINION**

[*155] MEMORANDUM [**2] *

    * This disposition is not appropriate for publica-
    tion and may not be cited to or by the courts of
    this circuit except as provided by *Ninth Circuit
    Rule 36-3*.

Kevin Semcken sued his former employer, Genesis
Medical Interventional, Inc., and individual defendants
William Dubrul and Andrei Manoliu, for claims arising
out of the termination of his employment. Genesis filed a
motion to stay the action pending arbitration or, alterna-
tively, to [*156] dismiss, pursuant to an arbitration
clause in Semcken's employment contract. The district
court granted Genesis's motion, and Semcken appealed.

We find the arbitration clause enforceable and affirm
the district court's dismissal. Semcken failed to show the
lack of a meaningful opportunity to negotiate the inclu-
sion of the arbitration clause in his employment contract,
and therefore cannot demonstrate procedural uncon-
scionability through oppression. *See Abramson v. Juni-
per Networks, Inc., 115 Cal. App. 4th 638, 9 Cal. Rptr.
3d 422, 435-36 (Ct. App. 2004)*. Because both procedural
[**3] and substantive unconscionability must be present
for a court to invalidate an agreement as unconscionable,
*see Armendariz v. Foundation Health Psychcare Servs.,
Inc., 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669,
690 (Cal. 2000)*, we need not reach the issue of substan-
tive unconscionability, *see Nagrampa v. Mailcoups Inc.,
401 F.3d 1024, 1030 (9th Cir. 2005)*.

In addition, the district court did not abuse its discre-
tion in denying Semcken's request for discovery, as the
court could reasonably have concluded that Semcken had

132 Fed. Appx. 155, *; 2005 U.S. App. LEXIS 9252, **

already enjoyed a "reasonable opportunity to present evidence" under *California Civil Code § 1670.5(b).* [1]

1  There was also no error in not accepting Semcken's argument that Genesis had no right to initiate the arbitration process.

AFFIRMED.

# Exhibit 3



LEXSEE 2002 US DIST LEXIS 26647

**SAGENT TECHNOLOGY, Plaintiff, v. MICROS SYSTEMS, INC., and DOES 1-50, inclusive, Defendants.**

**Case No.: C 02-01746 PVT**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

*2002 U.S. Dist. LEXIS 26647*

**May 29, 2002, Decided**

**DISPOSITION:**    [*1] Defendant's motion to dismiss denied. Defendant's motion to transfer granted.

**CASE SUMMARY:**



**PROCEDURAL POSTURE:** In a breach of contract action, plaintiff company A sued defendants, company B and 50 unknown individuals. Company B moved to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*, or, in the alternative, to transfer. Company A was incorporated in Delaware with its principal place of business in California. Company B was incorporated in Maryland, with its place of business in Maryland.

**OVERVIEW:** The action could have been brought in the United States District Court for the District of Maryland where: (1) company B maintains its principal office, (2) the contract was to be performed, and (3) the breach of contract was alleged to have occurred. Thus, the only issue was whether company B made a showing of inconvenience strong enough to overcome company A's choice of forum. The main private interest factor in the case--the availability of witnesses and the cost of obtaining those witnesses--weighed in favor of transfer. The other private interest factor--the location of and access to evidentiary sources--was likely to be similar regardless of location, and thus did not impact the analysis in the case. The public interest factors also weighed in favor of transfer. Using California's law on conflicts, the law of Maryland applied in the case. The contract was negotiated and formed in Maryland and Virginia, and was to be performed in Maryland. The software was delivered to Maryland, and the service agreement was for services to be provided to company B in Maryland.

**OUTCOME:** Company B's motion to dismiss was denied. The alternative motion to transfer was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN1] *28 U.S.C.S. § 1404(a)* requires two findings to support transfer; 1) that the transferee court is one in which the action could have been brought, and (2) that the convenience of the parties and witnesses, and the interests of justice, favor transfer.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Forum Non Conveniens*
[HN2] The purpose of *28 U.S.C.S. § 1404(a)* is to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. Congress intends to permit transfer on a lesser showing of inconvenience than was originally required for dismissal under the doctrine of forum non conveniens. However, the United States Court of Appeals for the Ninth Circuit indicates that forum non conveniens considerations are still helpful in deciding a *§ 1404(a)* transfer motion. A court must balance the preference accorded to plaintiff's choice of forum with defendant's burden of litigating in an inconvenient forum. A defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
[HN3] Some of the private interest factors a court should consider in deciding a motion to transfer include: (1) the relative ease of access to sources of proof; (2) the avail-

2002 U.S. Dist. LEXIS 26647, *

ability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and (3) any other practical problems that make trial of a case easy, expeditious and inexpensive.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
[HN4] In addition to the private interest factors, a court should consider a number of public interest factors in deciding a motion to transfer, including: (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized controversies decided at home, (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, (4) the avoidance of unnecessary problems in conflict of laws, and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
*Contracts Law > Contract Interpretation > General Overview*
[HN5] Under California's law on conflicts of law, in a contract dispute where the parties have made no effective choice of law, California courts analyze relevant contacts to appraise the governmental interests implicated in the action. Relevant contacts include: (1) the place of contract formation, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and 5) the residence or place of incorporation and place of business of the parties. *Cal. Civ. Code § 1646.*

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
[HN6] For purposes of determining which state's law applies to a transferred case, courts generally apply the laws on conflicts of law of the state in which the transferor court is located.

COUNSEL: For Sagent Technology Inc., Plaintiff: Adron Beene, San Jose, CA.

For Micro Systems Inc, Defendant: H. Ann Liroff, Hanning Law Firm, Redwood City, CA.

For Micro Systems Inc, Defendant: Michael Tow, Micros Systems Inc, Columbia, MD.

JUDGES: PATRICIA V. TRUMBULL, United States Magistrate Judge.

OPINION BY: PATRICIA V. TRUMBULL

OPINION

### ORDER DENYING MOTION TO DISMISS, AND GRANTING MOTION TO TRANSFER CASE TO DISTRICT OF MARYLAND

On May 28, 2002, the parties appeared before Magistrate Judge Patricia V. Trumbull for hearing on Defendant's Motion to Dismiss, Or, in the Alternative, to Transfer Venue. [1] Both parties have consented to Magistrate Judge jurisdiction. Based on the briefs and arguments presented,

> 1 The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

IT IS HEREBY ORDERED that Defendant's motion to dismiss is DENIED. The two grounds for dismissal argued in the moving [*2] papers are based on facts outside of the complaint. In order to grant the relief requested, the court would have to treat the motion as one for summary judgment under *Rule 56 of the Federal Rules of Civil Procedure. See FED.R.CIV.P. 12(b).* However, the court is not inclined to transform the motion to dismiss into a motion for summary judgment at this stage of the proceedings, since the parties have not yet conducted any discovery.

IT IS FURTHER ORDERED that Defendant's motion to transfer is GRANTED.

*Title 28 section 1404(a)* [HN1] requires two findings to support transfer. 1) that the transferee court is one in which the action could have been brought; and 2) that the convenience of the parties and witnesses, and the interests of justice, favor transfer. *Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir.), cert denied, 474 U.S. 1021, 88 L. Ed. 2d 555, 106 S. Ct. 571 (1985).*

[HN2] The purpose of *Section 1404(a)* is to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964).* [*3] Congress intended to permit transfer on a "lesser showing of inconvenience" than was originally required for dismissal under the doctrine of *forum non conveniens. See Norwood v. Kirkpatrick, 349 U.S. 29, 32, 99 L. Ed. 789, 75 S. Ct. 544 (1955).* However, the Ninth Circuit has indicated that *forum non conveniens* considerations are still helpful in deciding a *Section 1404(a)* transfer motion. *Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).* The court must balance the preference accorded to Plaintiff's choice of forum with the Defendant's burden of litigating in an

inconvenient forum. *Ibid.* The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice. *Ibid.*

[HN3] Some of the private interest factors a court should consider include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and any other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)*; [*4] *Decker Coal, 805 F.2d at 843.*

[HN4] In addition to the private interest factors, a court should consider a number of public interest factors, including: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Gulf Oil, 330 U.S. at 509; Decker Coal, 805 F.2d at 843.*

This action could have been brought in the District of Maryland where Defendant maintains its principal office, the contract was to be performed, and the breach of contract is alleged to have occurred. Thus, the only issue is whether defendant has made a showing of inconvenience strong enough to overcome Plaintiff's choice of forum. This court concludes that Defendant has carried its burden of showing that this case should be transferred to the District of Maryland.

The main private interest factor in this case--the availability of witnesses and [*5] the cost of obtaining those witnesses--weigh in favor of Maryland. Only six of the 18 witnesses identified by the parties are in California. Of the remainder, one lives in Texas, one lives in North Carolina, one lives in Virginia and nine live in Maryland. The expense and inconvenience to Defendant to try the case in California exceeds the expense and inconvenience to Plaintiff if the case is tried in Maryland. If tried in California, 12 of the 18 witnesses (three of Defendant's witnesses and all nine of Plaintiff's witnesses) will have to travel a substantial distance. If tried in Maryland, only eight of the 18 witnesses will have to travel a substantial distance. Because two of the witnesses must travel a substantial distance regardless of where the trial is, the tradeoff achieved by transferring the case to Maryland is that only six witnesses must travel from one coast to the other instead of ten witnesses doing so.

The other private interest factor--the location of and access to evidentiary sources--is likely to be similar re-

gardless of location, and thus does not impact the analysis in this case.

The public interest factors also weigh in favor of transfer to Maryland. [HN5] Under [*6] California's law on conflicts of law, [2] the law of Maryland applies to this case. In a contract dispute where the parties have made no effective choice of law, [3] California courts analyze "relevant contacts" to appraise the governmental interests implicated in the action. *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc., 14 Cal.App.4th 637, 645, 17 Cal. Rptr. 2d 713 (1993).* Relevant contacts include: 1) the place of contract formation; 2) the place of negotiation; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the residence or place of incorporation and place of business of the parties. *Id.* (quoting *RESTATEMENT SECOND OF CONFLICT OF LAWS, § 188(2)*); *see also CAL. CIV.CODE § 1646* (specifically requiring a contract to be interpreted according to the law and usage of the place it is to be performed).

    2    [HN6] For purposes of determining which state's law applies to a transferred case, courts generally apply the laws on conflicts of law of the state in which the transferor court is located. *See, e.g., Acme Circus Operating Co. v. Kuperstock, 711 F.2d 1538, 1540 (11th Cir. 1983)*; *see also, Industrial Indemnity Co. v. Chapman and Cutler, 22 F.3d 1346, 1351 (5th Cir. 1994).*

[*7]

    3    At the hearing of this matter, Plaintiff for the first time asserted that there is a choice of law provision that may apply to this case. However, Plaintiff failed to address this issue in its opposition brief, despite the fact Defendant raised the issue in its moving papers. See, Memorandum of Points and Authorities in Support of Motion to Dismiss, Or, in the Alternative, to Transfer Venue, filed herein on April 22, 2002, at 7:9-11. Moreover, even if Defendant had not raised the issue, it was incumbent on Plaintiff to include in its opposition papers any evidence and/or authorities in support of its claim that California law applies to this action. Finally, it was not at all clear from Plaintiff's oral argument that the claimed provision--which is counsel stated is contained in prior agreements between the parties--would apply to the present dispute.

In the present case it appears that the contract was negotiated and formed in Maryland and Virginia, and was to be performed in Maryland. The software was delivered to Maryland, and the service agreement was for services to be provided to Defendant [*8] in Maryland. Defendant is incorporated in Maryland; Plaintiff is in-

2002 U.S. Dist. LEXIS 26647, *



corporated in Delaware. Defendant's place of business is in Maryland; Plaintiff's principal place of business is in California, and it apparently has an office in Virginia. Based on these facts, California's law regarding conflicts of law mandates that Maryland law applies to the contract dispute. Thus, transferring the case to Maryland will further the public interest factor of having the trial in a forum that is at home with the law that must govern the action.

In addition, the public interest factors of having localized controversies decided locally, and of not burdening citizens in an unrelated forum with jury duty, both favor adjudicating this case in Maryland.

Dated: *May 29, 2002*

/s/ Patricia V. Trumbull

United States Magistrate Judge

**Exhibit 4**

LEXSEE 2007 U.S. DIST. LEXIS 39611

**DENA' NENA' HENASH, INC. dba TANANA CHIEFS CONFERENCE, an Alaska non-profit corporation, Plaintiff, v. ORACLE CORPORATION, a Delaware corporation, Defendant.**

**No. C 07-633 CW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 39611*

**May 16, 2007, Decided
May 16, 2007, Filed**

**COUNSEL:** [*1] For Dena' Nena' Henash Inc, an Alaska Corp., doing business as Tanana Chiefs Conference, Plaintiff: Jahna M. Lindemuth, LEAD ATTORNEY, Dorsey & Whitney, LLC, Anchorage, AK US; Patricia A. Welch, LEAD ATTORNEY, Dorsey & Whitney LLP, Palo Alto, CA; Brian Vander Pol, Paul R. Dieseth, Peter W. Sipkins, Dorsey & Whitney LLP, Minneapolis, MN.

For Oracle Corporation, a Delaware Corporation, Defendant: Jeffrey M. Feldman, LEAD ATTORNEY, Feldman Orlansky & Sanders, Anchorage, AK US; Abigail Leah Ramsden, Geoffrey M. Howard, Sivan Gai, Bingham McCutchen LLP, San Francisco, CA; David Earl Garrett, Oracle Corporation, Redwood City, CA.

**JUDGES:** CLAUDIA WILKEN, United States District Judge.

**OPINION BY:** CLAUDIA WILKEN

**OPINION**

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

Defendant Oracle Corporation moves pursuant to *Federal Rule of Civil Procedure 12(b) (6)* to dismiss the third, fourth, fifth and sixth causes of action in this case and pursuant to *Federal Rule of Civil Procedure 12(f)* to strike portions of the complaint. Plaintiff Dena' Nena' Henash, Inc., d.b.a. Tanana Chiefs Conference [*2] (TCC) opposes the motion. The matter was taken under submission on the papers. Having considered all of the papers filed by the parties, the Court grants in part and denies in part Defendant's motion to dismiss and grants in part and denies in part Defendant's motion to strike.

BACKGROUND

Plaintiff TCC is a non-profit corporation made up of thirty-seven federally-recognized Alaska Native Tribes and five non-recognized villages and Native groups. The organization has an annual operating budget of $ 82 million. In October, 2003, TCC issued a request for proposal (RFP) for a new software system. Oracle responded to the RFP in November, 2003. After several months of negotiation, including several presentations by Oracle sales representatives in Anchorage, Alaska, the parties executed a License and Services Agreement (License Agreement) on February 24, 2004. On March 17, 2004 the parties signed a separate Services Agreement, in which TCC contracted for Oracle to help it implement the software previously licensed. Both of the contracts contained integration clauses and limitations on remedies.

Plaintiff alleges that, while the parties were negotiating the terms of the contracts, Defendant [*3] represented that "the implementation could be quickly completed and that Oracle's standard software provided the functionality that TCC required." First Amended Complaint (FAC) P 10(a). Plaintiff alleges that it agreed to pay Oracle $ 391,192.20 for the software and $ 966,302.00 for services, totaling $ 1,357,494.20. FAC P 14. Under the parties' agreement, the software system was supposed to "go live" in November, 2004. Plaintiff further alleges that, to date, it has paid over $ 7 million to Oracle in licensing and services but that the system has limited functionality and is not fully implemented. FAC P 15.

In February, 2006, Plaintiff filed this action in the District of Alaska, alleging six causes of action: (1) breach of contract and express warranty, (2) negligence, (3) fraudulent misrepresentation, (4) negligent misrepresentation, (5) constructive fraud, (6) violation of the Alaska Unfair Trade Practices Act (AUTPA), and (7) breach of the implied covenant of good faith and fair dealing. Defendant filed a motion to dismiss the action for improper venue, pursuant to *Federal Rule of Civil Procedure 12(b)(3)*, and, in the alternative, to dismiss [*4] the third through sixth claims for failure to state a claim, pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. The Alaska court found that the proper venue for the case was the Northern District of California and exercised its discretion to transfer the case rather than dismiss it. The case was transferred to this Court on December 15, 2006.

Defendant now renews its motion to dismiss the third through sixth claims pursuant to *Federal Rule of Civil Procedure 12(b)(6)* and to strike portions of the FAC.

DISCUSSION

I. Motion to Dismiss

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002)*, citing *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*. All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986)*. Although the court [*5] is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a *Rule 12(b)(6)* motion. *Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987)*.

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990)*. In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990)*. Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. *Id. at 296-97.*

Defendant moves to dismiss Plaintiff's third through sixth causes of action for failure [*6] to state a claim. Defendant argues first that Plaintiff fails to allege fraud with sufficient particularity as required by *Federal Rule of Civil Procedure 9(b)*. Therefore, Defendant contends that Plaintiff's third cause of action for fraudulent misrepresentation and fourth cause of action for negligent misrepresentation, which both sound in fraud, must be dismissed. Further, Defendant argues that Plaintiff's fifth cause of action for constructive fraud fails because such a claim requires a fiduciary or confidential relationship, which Plaintiff fails to allege. Next, Defendant argues that California law rather than Alaska law applies to the case. Therefore, Defendant argues that Plaintiff's sixth cause of action, brought pursuant to the Alaska Unfair Trade Practices Act, must be dismissed.

A. Failure to Allege Fraud with Particularity

*Federal Rule of Civil Procedure 9(b)* provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. If a plaintiff alleges "a unified course of fraudulent conduct and relies entirely on that course of conduct [*7] as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of *Rule 9(b)*." *Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003)*. Here, Plaintiff's fraudulent misrepresentation and negligent misrepresentation claims sound in fraud and so must be plead with particularity.

The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)*. Statements of the time, place and nature of the alleged fraudulent activities are sufficient, *Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987)*, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994)*. Scienter may be averred generally, simply by saying that it existed. *See id. at 1547;* [*8] *see Fed. R. Civ. P. 9(b)* ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally"). As to matters peculiarly within the opposing party's knowledge, pleadings based on information and belief may satisfy *Rule 9(b)* if they also state the facts on which the belief is founded. *Wool, 818 F.2d at 1439*. "As with *12(b)(6)* dismissals, dismissals



for failure to comply with *Rule 9(b)* should ordinarily be without prejudice." *Vess, 317 F.3d at 1107-08.*

Plaintiff alleges eight [1] misrepresentations "designed to induce TCC to enter into a contract with Oracle." FAC P 10. Plaintiff also alleges that "Oracle made additional misrepresentations to TCC following the execution of the agreements between the parties." FAC P 22. Defendant argues that each of Plaintiff's allegations fails to establish a claim of fraud with the requisite particularity because they fail to establish "'the who, what, where, and how' of the misconduct charged," *Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997),* and whether the statements were actually [*9] false.

> 1   One of the alleged misrepresentations relates to a proposed second phase of implementation. FAC P 10(h). However, Plaintiff does not raise any claims regarding Phase Two of the implementation. Therefore, as discussed below, the Court grants Defendant's motion to strike this paragraph from the complaint.

Further, Defendant claims that the statements cannot be proved false or are opinions upon which fraud claims may not be based. "[A]n expression of opinion or belief, if nothing more, and if so understood and intended, is not a representation of fact, and although false, does not amount to actual fraud." *Carlson v. Brickman, 110 Cal. App. 2d 237, 247, 242 P.2d 94 (1952)* (quoting *Stockton v. Hind, 51 Cal. App. 131, 136, 196 P. 122 (1921).* Thus, it cannot be grounds for fraud damages or rescission. *Id.* A "representation is one of opinion if it expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his judgment as to the quality, value, authenticity, [*10] or other matters of judgment." *Gentry v. eBay, 99 Cal. App. 4th 816, 835, 121 Cal. Rptr. 2d 703 (2002)* (quoting *Rest. 2d Torts § 538A*) (internal paragraph marks omitted). "[P]redictions of future facts are ordinarily considered nonactionable expressions of opinion." *Richard P. v. Vista Del Mar Child Care Serv., 106 Cal. App. 3d 860, 865, 165 Cal. Rptr. 370 (1980)* (finding prediction that premature infant would be healthy child to be expression of opinion). A seller's mere "puff talk" is also an expression of opinion that is not actionable as fraud. *Corbett v. Otts, 205 Cal. App. 2d 78, 83, 22 Cal. Rptr. 849 (1962).* Further, a statement must be false when made in order to support a claim for fraud. *Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995)* (citing *In re GlenFed, 42 F.3d at 1548*).

The FAC states that the alleged misrepresentations "were made by members of Oracle's sales team and others who attempted to persuade TCC to use Oracle's software and services" and names eight Oracle employees who formed the sales team assigned to TCC's account. FAC P 11. Some of the allegedly fraudulent statements were made in correspondence [*11] between the parties, which Plaintiff cites in the FAC and attaches as exhibits. The individuals who made these statements and when they made them is clear from the documents presented. In its opposition to the motion to dismiss, Plaintiff clarifies that the other statements were made at presentations that took place during the bidding and negotiation process in Fairbanks. The Court finds that this information, if added to the complaint, would be sufficient to give Defendant notice of who made the statements and when they made them.

However, the Court finds that all of the statements that Plaintiff alleges are fraudulent are representations of opinion, are too vague, or are incapable of being proven false when made, and therefore cannot support a claim of fraud. The Court will address each of the allegations in turn.

1. Paragraph 10(a)

Plaintiff alleges that "Oracle promised that the implementation could be quickly completed and that Oracle's standard software provided the functionality that TCC required. The November 20, 2003, cover letter to Oracle's written proposal, for example, stated that '[c]ompressed time frames are achievable because Tanana Chiefs Conference's requirements [*12] are addressed by Oracle's standard functionality . . .'" FAC P 10(a). In this context, the concepts of "quickly completed," "compressed time frames" and "standard functionality" are vague statements incapable of being proven false. Moreover, the example that Plaintiff provides is in the initial cover letter to Defendant's response to the RFP. As Defendant points out, the parties negotiated for three months thereafter before entering into the Licensing Agreement and four months before entering into the Services Agreement. Not only did Defendant provide many more details about its products during the course of the negotiations, but the final agreement was memorialized in two fully integrated contracts.

2. Paragraph 10(b)

Plaintiff next alleges that "Oracle stated in the management summary accompanying its proposal that it felt 'confident that Tanana Chiefs Conference will realize significant financial savings as well as higher quality of services through the implementation of this solution.'" FAC P 10(b). This statement, prefaced by Defendant's statement that it "feel[s] confident" is a clear statement of opinion and therefore is not actionable.

3. Paragraph 10(c)

This paragraph [*13] alleges that "in its proposal, and through its representatives, Oracle repeatedly assured TCC that its software could provide all of the functionality needed by TCC. They stated that Oracle's 'out of



the box' software had the required functionality. . . . They said that no customizations would be necessary." FAC P 10(c). In its opposition to the motion to dismiss, Plaintiff identifies Defendant's response to its response to the RFP as the source of this allegedly fraudulent statement. However, that document provides only that Defendant's proposal was for an "integrated solution for human resources, finance and materials management." FAC, Exhibit A. Other documents suggest that using Defendant's products can maximize the number of applications that can be used "out of the box" by using Defendant's products together. However, this term appears to refer to the ability of each application to communicate with the others without "complex integration points between disparate software applications" rather than an absence of a need for customization of the overall system to the customer's needs. *See* FAC, Exhibit B. Plaintiff may maintain this allegation if it can identify with particularity [*14] a specific statement made by a representative of Defendant and can demonstrate how the statement was known to be false when made.

### 4. Paragraph 10(d)

Plaintiff alleges that "Oracle's representatives falsely stated that Oracle's HR, Payroll Benefits and Grants modules were fully integrated." FAC P 10(d). As discussed above, it is not clearly alleged that this statement was false if "fully integrated" means only that the programs are able to communicate with one another.

### 5. Paragraph 10(e)

Plaintiff alleges that "Oracle's representatives repeatedly assured TCC that the implementation could be fully completed within 90 days, and otherwise provided projected go-live dates that were not, and could not have been met." FAC P 10(e). Plaintiff alleges that this is false because TCC is still without a fully implemented system years after the original "go live" date of July 1, 2004. Opposition at 10. Again, it appears that Plaintiff misunderstood Defendant's statements, not that Defendant misinformed Plaintiff. The exhibits filed in support of the FAC clearly establish that the work Defendant was doing for Plaintiff was to be completed in stages and that the initial contracts were for "[i]mplementing [*15] the foundation applications." FAC, Exhibit A. Further, the complaint alleges no representation that the system would be "fully implemented" on the system's "go live" date.

### 6. Paragraph 10(f)

Here, Plaintiff alleges that "Oracle's representatives falsely stated that it would be able to accomplish the implementation within a specified budget." FAC P 10(f). In its opposition to the motion to dismiss, Plaintiff states that it has paid "approximately $ 5.5 million more than

the original budgeted price of $ 1,357,494.20." Opposition at 10. However, the amount Plaintiff quotes is based on the fee estimates included in the contracts for the scope of work included in those contracts. As stated above, it does not appear that the two agreements signed by the parties were intended to cover the "full implementation" of the system. Further, as Defendant points out, the contracts themselves state that the estimates provided "are intended only to be for your budgeting and Oracle's resource scheduling purposes" and Plaintiff later agreed to additional amendments to the contract. FAC, Exhibit F.

### 7. Paragraph 10(g)

Finally, Plaintiff argues that "Oracle's representatives made false representations [*16] to TCC to induce TCC to agree to a time and materials contract rather than a fixed price contract, including representations that there would be a 'substantial cost savings to TCC' from a time and materials contract and that since the project was a 'fairly predictable, basic flows implementation,' a time and materials contract was in 'TCC's best interest.'" FAC P 10(g). It is not clear that this statement represents more than Defendant's opinion at the time that the contracts were signed. Although it might have proved false, Plaintiff does not allege any facts indicating that Defendant knew it was false at the time it was made. *See Fecht, 70 F.3d at 1082 (citing In re GlenFed, 42 F.3d at 1548)*.

### 8. Paragraph 22

Plaintiff also alleges that "Oracle made additional misrepresentations to TCC following the execution of the agreements between the parties. Vicki Parrott and Jessica Black repeatedly represented that the implementation was almost complete, when in fact substantial work remained before the software was ready for use. TCC relied on these representations, which were false, in continuing to work with and purchase services from Oracle." FAC P 22. [*17] The concept of "almost complete" is too vague to support a claim of fraud, and it is not clear that the statement was knowingly false when made. Plaintiff's allegation that there remained "substantial work" is itself a subjective statement.

Because each of Plaintiff's allegations of misrepresentation fails to state with particularity an actionable statement of fact, the Court dismisses without prejudice the third cause of action for fraudulent misrepresentation and the fourth cause of action for negligent misrepresentation. In order to restate these claims against Defendant, Plaintiff must identify who made specific false statements of fact, when they made them, what they said, why Plaintiffs believe the statements were knowingly false when made, how Plaintiffs will prove that they were knowingly false when made, and how the misrepresentations harmed Plaintiffs.

### B. Constructive Fraud Claim

Plaintiff's fifth cause of action alleges, "Due to the trust imposed in Oracle by TCC, a fiduciary relationship arose between TCC and Oracle." FAC P 45. Therefore, Plaintiff argues, "to the extent that Oracle's representations were made without fraudulent intent, such representations constitute [*18] constructive fraud." *Id.* Defendant argues that this cause of actions fails as a matter of law, because there is no fiduciary relationship between the parties. Plaintiff now concedes that it does not have a fiduciary relationship with Oracle, but argues that it has plead sufficient facts to establish a confidential relationship, which can support a claim of constructive fraud.

Under California law, "a relationship need not be a fiduciary one in order to give rise to constructive fraud." *Tyler v. Children's Home Soc'y of Cal., 29 Cal. App. 4th 511, 549, 35 Cal. Rptr. 2d 291 (1995).* Rather, California courts have held, "Constructive fraud also applies to non-fiduciary confidential relationships" where "a person with justification places trust and confidence in the integrity and fidelity of another." *Id.* (internal quotation omitted). Plaintiff argues that its allegations—that its staff did not have "technical expertise in computer software design" and that it relied on Defendant's expertise together with Defendant's "representations that it was acting 'in TCC's best interest'"—are sufficient to establish a confidential relationship. FAC PP 12; 10(g).

However, the cases Plaintiff [*19] cites in its argument that a confidential relationship is sufficient to support a constructive fraud claim are distinguishable. For example, in *Tyler*, the California Court of Appeal assumed for the sake of argument that an eighteen-year-old had a confidential relationship with the adoption agency that she used to place her baby with an adoptive family. Plaintiff does not cite any case where the California courts have found a confidential relationship between two business negotiating at arm's length, and the Court is aware of none. Indeed, the California Court of Appeal has held, "The vulnerability that is the necessary predicate of a confidential relation, and which the law treats as absolutely essential, usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity." *Richelle L. v. Roman Catholic Archbishop, 106 Cal. App. 4th 257, 273, 130 Cal. Rptr. 2d 601 (2003).* No such vulnerability exists in this business relationship.

The case Plaintiff cites for the proposition that a party to an arm's length business contract can recover on a claim of constructive fraud under Alaska law is also distinguishable. In *Adams v. Adams, 89 P.3d 743 (Alaska 2004)*, [*20] the lessee changed a material term of the lease without notifying the lessor. There, the court found

that the lessor "had the obligation" to notify the lessee of the change. *Id. at 750.* Plaintiff does not allege that Defendant changed any term of the contract without notifying it. Instead, Plaintiff alleges that Defendant's communications with it were misleading.

Plaintiff has not demonstrated that it has stated a claim for constructive fraud under either California or Alaska law. Therefore, the Court dismisses with prejudice Plaintiff's fifth cause of action based on constructive fraud.

### C. Applicable Law

Both of the contracts at issue in this case contain forum selection and choice of law provisions. The License Agreement provides:

> This agreement is governed by the substantive and procedural laws of California and you and Oracle agree to submit to the exclusive jurisdiction of, and venue in, the courts of San Francisco, San Mateo, or Santa Clara Counties in California in any dispute arising out of or relating to this agreement.

FAC, Exhibit C. The Services Agreement provides:

> This agreement is governed by the substantive and procedural laws [*21] of the State of Montana and we agree to submit to the exclusive jurisdiction of, and venue in the courts in Alaska County in Fairbanks, Alaska, or San Francisco, San Mateo, or Santa Clara Counties in California in any dispute arising out of or relating to this agreement.

FAC, Exhibit E.

The Alaska court determined that venue in this case is controlled by the License Agreement because "TCC has incorporated into each successive cause of action several allegations that constitute breaches of the License Agreement or require resort to the License Agreement to determine if the software delivered under the License Agreement and associated ordering document functioned as represented." Defendant's Motion, Exhibit 1 at 10. The Alaska court gave Plaintiff a choice of removing allegations based on the License Agreement from the FAC to preserve the Alaska venue or having the case transferred to this Court. Plaintiff initially stated that it would file an amended complaint, but later decided not to amend its complaint and requested transfer to this Court.

Defendant argues that the License Agreement is still the controlling agreement and that it requires this Court to apply California [*22] law. Therefore, Defendant argues, Plaintiff's claim under the AUTPA must be dismissed. Plaintiff counters that the choice of law provision in the License Agreement is unenforceable and that Alaska law should govern the case. In the alternative, Plaintiff argues that Alaska law is applicable under the choice of law provision in the Services Agreement and therefore that those portions of the AUTPA claim that relate solely to the Services Agreement are valid.

"When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies." *Orange Street Partners v. Arnold, 179 F.3d 656, 661 (9th Cir. 1999)*. California law thus determines the effect of the contractual choice of law provision. Under California law, there is a "strong policy favoring enforcement of [choice of law] provisions." *Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 464-65, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992)*. To determine whether the choice of law provision is enforceable, California courts follow the *Restatement (Second) of Conflict of Laws § 187*, which provides that a choice [*23] of law provision will be enforced unless either,

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Restatement (Second) of Conflict of Laws § 187(2).*

A. License Agreement

The License Agreement states that it is governed by California law. The parties agree that the first requirement under *§ 187* is satisfied because Defendant has its principal place of business in California. However, Plaintiff argues that Alaska law should apply because it would apply in the absence of the agreement, because Alaska has a materially greater interest in the controversy, and because the application of California law would be contrary to the fundamental policy underlying Alaska's laws.

Under *§ 188* [*24] *of the Restatement,* the Court considers five factors to determine the law that would apply in the absence of an agreement: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Restatement (Second) of Conflict of Laws § 188(2)*. Further, "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Id.* at *§ 188(3)*. Plaintiff notes that all contract negotiations took place at its office in Alaska, and that the software was installed in its computers in Alaska. Therefore, Plaintiff argues that Alaska law would apply absent the parties' agreement.

Defendant argues that California law must apply nonetheless, because Alaska does not have a "materially greater interest" in the determination of the issues in the case. Plaintiff counters that under California law, California's interest in the "prevention of fraud by California residents and [*25] corporations against foreign residents and corporations or vindication of foreign claims" does not outweigh the Alaska "interest in controlling actions, rights and liabilities of its domestic corporations and in the uniform regulation of affairs of business corporations." *Riley v. Fitzgerald, 178 Cal. App. 3d 871, 877, 223 Cal. Rptr. 889 (1986)*. However, in *Riley*, the California court did not hold that the foreign State's interest was strong enough to overcome the presumptive reasonableness of a choice of law provision. This factor alone is not enough to warrant the application of Alaska law in violation of the parties' contractual agreement.

Finally, Defendant argues that California law is not "fundamentally contrary" to Alaska policy. Plaintiff points out that the AUTPA provides, "A waiver by a consumer of the provisions [of the AUTPA] is contrary to public policy and is unenforceable and void." *Alaska Stat. § 45.50.542*. Further, Plaintiff argues, California courts have found that a choice of law provision cannot override the clear policy enunciated in similar California statutes. *See, e.g., America Online, Inc. v. Superior Court, 90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001);* [*26] *Hall v. Superior Court, 150 Cal. App. 3d 411, 197 Cal. Rptr. 757 (1983)*. However, Plaintiff provides no Alaska authority establishing that a choice of law provision constitutes an impermissible waiver of the AUTPA. California's interpretation of its own statute does not establish Alaska's policy interest in such an interpretation of its statute.

Therefore, the Court grants Defendant's motion to dismiss Plaintiff's sixth cause of action for violation of the AUTPA to the extent that the claim is based on alle-

gations of misrepresentations related to the License Agreement.

B. Services Agreement

As stated above, the Services Agreement states that it is to be governed by Montana law. Plaintiff argues that because Montana has no substantial relationship to either party or the transaction in question, the choice of law provision is invalid. Therefore, Plaintiff argues that Alaska law controls those claims related to the Services Agreement. Defendant argues that Plaintiff acknowledged that the case is controlled by the License Agreement when it chose not to amend its complaint and acquiesced in the Alaska court's order transferring the case to this Court. Therefore, Defendant argues that there [*27] are no claims controlled by the choice of law provision in the Services Agreement.

However, the Alaska court found that venue in this Court was proper under both agreements. Further the Alaska court did not find that Plaintiff had not raised any claims under the Services Agreement. Rather, it clearly stated, "whether the forum selection clause of the Services Agreement applies is irrelevant to the motion at bar." Defendant's Motion, Exhibit 1 at 7. The Alaska court also found that Plaintiff's inclusion of allegations based on the Services Agreement "creates an additional right to recovery." *Id.* at 8.

Because Plaintiff raises claims based on the Services Agreement, the Court considers the appropriate law to apply to those claims. The Court agrees that Montana has no substantial relationship to the parties or the transaction and that the parties have demonstrated no other reasonable basis for their choice. As discussed above, under *§ 188 of the Restatement,* in the absence of a choice of law provision, Alaska law would apply to the conflict because the contract was negotiated and performed in Alaska. Therefore Plaintiff may bring an AUTPA claim based solely on unfair practices [*28] related to the Services Agreement.

Defendant also argues that Plaintiff's AUTPA claim fails because it relies upon the same claims of fraud as the third and fourth causes of action, which Plaintiff failed to plead with particularity as required by *Rule 9(b).* As stated above, Plaintiff has failed to plead actionable fraud. Therefore, the Court dismisses without prejudice Plaintiff's AUTPA claim. In order to replead this claim, Plaintiff must plead actionable fraud as described above or provide other bases for its AUTPA claim. Further, Plaintiff may plead as AUPTA claims only claims that are based solely on the Services Agreement.

II. Motion to Strike

*Federal Rule of Civil Procedure 12(f)* provides that a party may move to strike "any redundant, immaterial, impertinent or scandalous matter." The purpose of a *Rule 12(f)* motion is to avoid spending time and money litigating spurious issues. *Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), reversed on other grounds, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994).* Motions to strike are disfavored because they constitute a drastic remedy. 2 *Moore's Federal Practice, § 12.37* [*29] [1] (Matthew Bender 3d ed. 1997); *Resolution Trust Corp. v. Vanderweele, 833 F. Supp. 1383, 1387 (N.D. Ind. 1993); Clement v. Am. Greetings Corp., 636 F. Supp. 1326, 1332 (S.D. Cal. 1986).* Decisions to grant motions to strike lie within the discretion of the court. *Moore's Federal Practice, § 12.37[1]; von Bulow v. vonBulow, 657 F. Supp. 1134, 1146 (S.D.N.Y. 1987).*

Defendant moves to strike three types of allegations from Plaintiff's complaint on the grounds that they are immaterial and impertinent. Matter is immaterial if it has no essential or important relationship to the claim for relief plead. *Id.* Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case. *Id.* First, Defendant seeks to have stricken as immaterial any allegations regarding Phase Two of the implementation because Plaintiff has not raised any claims related to that phase. Next, Defendant seeks to have stricken as immaterial allegations regarding the performance of the software, which Plaintiff "has specifically disclaimed." Motion at 23. Finally, in the alternative to dismissal [*30] of the third and fourth claims for relief, Defendant seeks to have stricken the allegations of misrepresentations that fail to meet the *Rule 9(b)* pleading standard. Because the Court grants Defendant's motion to dismiss the third and fourth claims, this portion of the motion to strike is denied as moot.

A. Allegations regarding Phase Two

Defendant argues, and the Court agrees, that paragraph 10(h) should be stricken from the FAC. This paragraph, included in Plaintiff's list of alleged "misrepresentations designed to induce TCC to enter into a contract with TCC" states that "Oracle's representatives also made representations regarding a proposed second phase ('Phase Two') of the implementation in which software capabilities would be extended to TCC's tribal members. . . . Because of the problems experienced in the first phase of implementation, TCC has not completed this second phase, and thus reserves the right to assert claims relating to Phase Two." FAC P 10(h). Plaintiff argues that this allegation is relevant to its fraud claim because it provides a "concrete example of the manner in which Oracle has failed to deliver upon its promises to implement the software in 'compressed [*31] time frames' and to have the software implemented in 90 days. Had Oracle



fulfilled these promises, Phase II would have begun." Opposition at 25. However, Plaintiff's claims relate only to one set of agreements. The commencement of work on a second set of agreements, while possibly related to the execution of the first set of agreements, cannot provide the basis for a cause of action related to the first. The Court grants Defendant's motion to strike paragraph 10(h) from the FAC.

B. Allegations regarding software performance

Defendant next argues that Plaintiff has disclaimed any allegations regarding the actual performance of the software, citing Plaintiff's earlier arguments before the Alaska court that its claims were based on the Services Agreement rather than the License Agreement. However, even if those arguments could provide the basis for the motion to strike, they do not directly contradict Plaintiff's allegations. Plaintiff's admission that the software was not defective does not contradict its allegation that the software did not provide the functionality Plaintiff sought. The Court denies Defendant's motion to strike these allegations.

CONCLUSION

For the foregoing reasons, [*32] the Court GRANTS in part Defendant's motion to dismiss, and GRANTS in part Defendant's motion to strike (Docket No. 4). The case management conference scheduled for May 17, 2007 is vacated. Plaintiff may file an amended complaint consistent with this order by June 7, 2007. Any motion to dismiss shall be filed by June 28, 2007. The case management conference and a hearing on any motion to dismiss will be held on August 2, 2007 at 2:00 PM.

IT IS SO ORDERED.

Dated: *5/16/07*

CLAUDIA WILKEN

United States District Judge