HOWARD E. COLE
California Bar No. 91707
SUZANNE L. MARTIN
California Bar No. 210613
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
(702) 949-8398 (fax)

Attorneys for the Defendant

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOU RAMONDETTA,<br><br>                    Plaintiff,<br><br>vs.<br><br>KONAMI, et al., Konami,<br><br>                    Defendant. | Case No. C08-01002 BZ<br><br>**Declaration of Steve Sutherland *in support of* Konami's Motion to Compel Arbitration and Dismiss; Motion to Determine Applicable Law**<br><br>Hearing Date: September 3, 2008<br>Hearing Time: 10:00 a.m. |

The Declaration of Steve Sutherland was previously submitted and filed on June 9, 2008 and is incorporated hereto.

DATED this 25th day of June, 2008.

                                        Respectfully submitted,

                                        LEWIS AND ROCA LLP

                                        By: /s/ Suzanne L. Martin
                                        HOWARD E. COLE
                                        California Bar No. 91707
                                        SUZANNE L. MARTIN
                                        California Bar No. 210613
                                        LEWIS AND ROCA LLP
                                        3993 Howard Hughes Parkway, Suite 600
                                        Las Vegas, Nevada 89169
                                        (702) 949-8200
                                        (702) 949-8398 (fax)
                                        Attorneys for Defendant

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suit 600
Las Vegas, Nevada 89109

DECLARATION OF STEVE SUTHERLAND

C08-01002 BZ
420832.1

HOWARD E. COLE
California Bar No. 91707
hcole@lrlaw.com
SUZANNE L. MARTIN
California Bar No. 210613
smartin@lrlaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, Nevada 89169
(702) 949-8200
(702) 949-8398 (fax)

Attorneys for the Defendant

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOU RAMONDETTA,<br><br>                        Plaintiff,<br><br>vs.<br><br>KONAMI, et al., Konami,<br><br>                        Defendant. | Case No. C08-01002 JSW<br><br>**Declaration of Steve Sutherland** *in support of* **Konami's Motion to Compel Arbitration and Dismiss; Motion to Determine Applicable Law**<br><br>Hearing Date: August 15, 2008<br>Hearing Time: 9:00 a.m. |

I, Steve Sutherland, declare as follows:

1. The following facts are within my personal knowledge and, if called to testify, I could testify competently to them.

2. I currently reside, and have resided at all relevant times associated with this lawsuit, in Las Vegas, Nevada.

3. I am currently, and have been at all relevant times associated with this lawsuit, the Executive Vice President and Chief Operating Officer for Konami Gaming, Inc. ("KGI"). KGI

DECLARATION OF STEVE SUTHERLAND
1

C08-01002 JSW
420832.1

1  is incorporated under the laws of the State of Nevada. KGI's principal place of business is Las
2  Vegas, Nevada.
3      4.    On or about October 14, 2005, KGI hired international executive search firm
4  Korn Ferry International ("Korn Ferry") to conduct a national search for the position of Vice
5  President of Sales and Marketing at KGI. The position of Vice President of Sales and Marketing
6  at KGI was to be serviced in Nevada, at KGI's offices, and KGI expected the Vice President of
7  Sales and Marketing to be, or become a Nevada resident.
8      5.    KGI instructed Korn Ferry to inform candidates for the Vice President of Sales
9  and Marketing position that KGI expected the person eventually hired into the position to move
10  to Nevada, and become a Nevada resident. A true and correct copy of Korn Ferry's confidential
11  Position Specification for KGI's Vice President of Sales and Marketing position is attached
12  hereto as Exhibit A.
13      6.    KGI's Vice President of Sales and Marketing was, at that time, one of six
14  executive level employees. The Vice President of Sales and Marketing would be responsible for
15  the Game Sales and Marketing Department, which was comprised of approximately 18
16  employees. Including the Sales and Marketing division, KGI employed approximately 150
17  employees in Nevada at that time.
18      7.    Korn Ferry presented two pools of candidates to KGI. We selected a candidate
19  from the first pool, but for family reasons, he could not relocate to Nevada as required. As a
20  result, KGI rejected this applicant. Korn Ferry identified Lou Ramondetta ("Ramondetta") as a
21  candidate in the second pool of applicants. I received Ramondetta's candidate profile from Korn
22  Ferry in or about February of 2006.
23      8.    After reviewing Ramondetta's qualifications, KGI invited him to Las Vegas,
24  Nevada to interview for the position. In early February 2006, Ramondetta interviewed with
25  Satoshi Sakamoto (Chairman, President and Chief Executive Officer) and me at KGI's offices.
26  Executive level employees participate in two rounds of interviews. After interviewing with me
27  and Sakamoto, we invited him back to Las Vegas for a second round of interviews with Thomas
28

DECLARATION OF STEVE SUTHERLAND
2

C08-01002 JSW
420832.1

Jingoli, the then Director of Compliance and Legal Administration, and Bobbi Youngblood, Director, Human Resources. Today, Jingoli is the Senior Director of Compliance and Legal Administration.

9. During my interview with Ramondetta, we discussed the fact that as Vice President of Sales and Marketing, he would be responsible for the day-to-day supervision and leadership of the employees in the Sales and Marketing Department. I anticipated that, over time, his duties may evolve and expand to include the Systems Sales Department, which is also in Las Vegas, provided he proved himself on the game side of our business. I explained to Ramondetta that his responsibilities would necessitate his full-time presence in Las Vegas, with the exception of business related travel. Indeed, KGI expected the Vice President of Sales and Marketing to live in Las Vegas, Nevada, permanently, and become a Nevada resident. Ramondetta understood and agreed to relocate to Las Vegas, Nevada, if he was offered the position. KGI would not have given further consideration to Ramondetta if he had been unwilling or unable to relocate to Nevada. To that end, in addition to discussing compensation, we also discussed his relocation from California to Nevada.

10. Also during my interview with Ramondetta, it was explained that, due to the highly regulated nature of the gaming industry, if hired, he would be required to become licensed and/or registered by the gaming control authorities of the various jurisdictions in which KGI did business. I told Ramondetta that he would be required to provide detailed personal and financial information and documents, including information related to any prior criminal arrests or convictions. I shared with Ramondetta that he needed to be one-hundred percent forthright on his applications, that honesty and complete disclosure was key to successful licensing in the industry.

11. I never met with Ramondetta in California.

12. Based in part on Ramondetta's qualifications, his representations and assurances that he would relocate to Nevada, KGI decided to offer him employment. I sought Sakamoto's approval of the terms I wanted to include in an offer letter to Ramondetta, and then called

DECLARATION OF STEVE SUTHERLAND
3

C08-01002 JSW
420832.1

Ramondetta to discuss the proposed terms with him. We spoke at least twice on the phone about the offer and negotiated the terms. For example, initially, KGI was not going to offer Ramondetta a sign-on bonus; but during our telephone conversations, he insisted upon a sign-on bonus.

13. After Ramondetta and I agreed to the terms of the offer, I provided the terms to Youngblood so that she could include them in a personalized offer letter to Ramondetta. The offer letter was finalized on March 16, 2006. A true and correct copy of the offer letter is attached hereto as Exhibit B.

14. Among other things, the offer letter provided for a sign-on bonus of $30,000, payable within 30-days, a $220,000 annual base salary, bonuses, a start date of April 3, 2006, a brief description of what his job duties would be, and a relocation package. The offer letter also included an arbitration provision, pursuant to which, KGI and Ramondetta agreed to arbitrate any disputes or controversies arising out of or relating to Ramondetta's application or candidacy for employment, the termination of his employment, or the offer letter.

15. When Ramondetta received the offer letter, he called KGI to discuss the terms. I was traveling on business, but as I recall, he spoke with Youngblood and renegotiated several terms. Ramondetta wanted a higher sign-on bonus of $50,000, payable immediately. The increase in his sign-on bonus was balanced by reducing his annual salary by the same amount, resulting in his annual salary dropping slightly from $220,000 to $200,000. Ramondetta also moved his start date back from April 3 to April 10, 2006. As noted by Youngblood's handwriting on the offer letter, Sakamoto approved the changes Ramondetta communicated to Youngblood by phone.

16. On or about March 24, 2006 Ramondetta executed the offer letter with the handwritten changes.

17. All of my negotiations with Ramondetta took place in and from KGI's office in Las Vegas, Nevada.

DECLARATION OF STEVE SUTHERLAND
4

C08-01002 JSW
420832.1

18. The terms of the offer letter and Ramondetta's employment were contingent upon Ramondetta passing a background investigation and compliance approval. Ramondetta completed an employment disclosure form, which provided information for KGI to conduct criminal, civil, and general background checks on applicants and prospective employees. The gaming control authorities traditionally request either the disclosure form, copies of the background checks, or both.

19. Ramondetta started working at KGI as the Vice President of Sales and Marketing on or about April 10, 2006. Ramondetta did not relocate right away, but instead, flew to Las Vegas, Nevada to work, or to various other locations on behalf of KGI to attend sales related meetings. I soon noticed that Ramondetta was not arriving to work at KGI until mid-morning or early afternoon on Monday, and that he would leave on Thursday night, or mid-morning/early afternoon on Friday. I still believed that he was in the process of looking for a home in Nevada, and, in fact, he had asked KGI to provide him with the names of some real estate agents to assist him in his search.

20. Then, during a business trip to Niagara Falls, Canada, I observed Ramondetta on the phone with his wife on multiple occasions. I could hear his side of the conversation. The two discussed the re-landscaping of their yard, and the fact that Ramondetta was missing key family events.

21. New executive level, or key employees, of KGI normally interview with the Ontario Gaming Commission regulators first. In early June, Ramondetta participated in an interview, with a regulator from the Ontario Gaming Commission. As is our practice, Jingoli and I met with the regulator after the interview and learned that Ramondetta was not as cooperative and forthcoming as we had instructed him to be. Ramondetta failed to disclose a criminal "incident" on his personal disclosure form, and failed to disclose all of the requested financial information and documents, including a bank account from which he earned a dividend, and his credit card statements.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

DECLARATION OF STEVE SUTHERLAND
5

C08-01002 JSW
420832.1

22.     At about the same time as the interview, Ramondetta approached me and wanted to renegotiate the terms of his employment, specifically, where he worked. He wanted to telecommute and work from his home in California. He explained that his wife would not move, that his home in California was a large investment for him, and that he wanted to be home with his young children. Ramondetta also wanted KGI to pay for his travel and accommodations to and from Nevada for work, and all other costs associated with his telecommuting. I explained to Ramondetta that, in no uncertain terms, as KGI's Vice President of Sales and Marketing, he was responsible for supervising and providing leadership to the sales and marketing employees, and he needed to be in Nevada.

23.     Partially in light of Ramondetta's decision to renege on his relocation agreement, and his failure to disclose all the required information for him to obtain the proper licenses and authorization from various gaming authorities, KGI terminated Ramondetta's employment.

I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, that the foregoing is true and correct based upon my personal knowledge.

Executed on this ___ day of June, 2008.

_____
Steve Sutherland

DECLARATION OF STEVE SUTHERLAND
6

C08-01002
420832.1

# Exhibit A

KORN/FERRY INTERNATIONAL



# Confidential Position Specification

Vice President or
Senior Director of Sales

KORN/FERRY INTERNATIONAL

| | |
|---|---|
| **COMPANY** | CONFIDENTIAL |
| **POSITION** | Vice President or Senior Director of Sales |
| **LOCATION** | Las Vegas, Nevada |
| **REPORTING RELATIONSHIP** | This position reports to the Executive Vice President and Chief Operating Officer of the company and directs an organization of approximately 20 employees |

## COMPANY BACKGROUND

The company is a provider of technology (hardware and software) products and systems serving companies in a highly specialized market. This growing company is generating approximately $50 million in revenue and expects to continue growing aggressively through a combination of organic growth and acquisition.

The industry this company serves is undergoing a major technological transformation. The current industry architecture is very product-centric but is evolving into a more systems-centric orientation. Our client is committed to being a key player in this large and growing industry.

## RESPONSIBILITIES

The individual in this position will be responsible for achieving the revenue goals of the organization through the development, implementation and execution of an approved sales and marketing strategy. The position will be responsible for the development and oversight of the sales team, the fulfillment of the necessary forecasting and reporting to executive management, as well as the establishing of professional and effective communications throughout the organization.

Specific duties and responsibilities will include, but not be limited to, the following:

- Ensuring revenue goals of the company are achieved by strong leadership of the sales team.

**KORN/FERRY INTERNATIONAL**

- Developing and communicating comprehensive sales plans and the setting of performance goals for the organization.
- Monitoring performance versus plan on an ongoing basis and ensuring accountability by sales team members.
- Providing necessary mentoring and development activities to the sales team.
- Establishing, overseeing, and ensuring the cost controls of the department are followed.
- Developing and implementing strategies consistently across all N. American jurisdictions.
- Managing and overseeing the proposal development process to ensure all responses meet the company standards.
- Managing and overseeing the order administrative functions to ensure the needs of the company are fulfilled and ensures accurate order placement to minimize manufacturing and customer issues.
- Effectively working with the candidate's peers on a professional basis.
- Coordinating and acting as a liaison with departmental heads within the business to ensure that customer satisfaction is achieved and the needs of the sales function are supported.
- Participating and being a key member of the company's executive committee.
- Providing strategic market and sales input into the business planning processes of the company
- Developing, implementing, and monitoring the sales strategy for the market, and taking necessary actions to ensure company plan is achieved.
- Maintaining close working relationships with key customers and directing the management of key corporate accounts.
- Maintaining and communicating customer and competitor intelligence and developing proactive strategies to maintain the company's competitive advantage.
- Effectively communicating customer and competitive intelligence to appropriate departments for appropriate product development.
- Developing appropriate business models and pricing strategies

KORN/FERRY INTERNATIONAL

- Developing, maintaining and simplifying relevant systems, processes and procedures to support business growth.
- Directing the implementation of a cohesive marketing strategy that improves both brand awareness and brand equity.
- Overseeing Product Management, the product release strategy, and the release of new products to the market.
- Providing to the company all required forecast and reporting activities.
- Providing input into the company's business planning and budgeting process.
- Providing monthly reports and forecasts of sales activity and projected revenues.

## PROFESSIONAL QUALIFICATIONS

The company is seeking a highly skilled sales executive that can develop, implement, and execute a sales and marketing strategy meeting the objectives of the aggressive growth goals of the company. The selected candidate must be willing to operate in a highly regulated environment which will require significant personal financial and family background disclosure to governmental agencies, as well as the requirement to ensure the sales team adheres to the company compliance program of selling only approved products to licensed entities. In conjunction with the highly regulated environment of the industry, the selected candidate must also operate within the requirements of Sarbanes Oxley.

The company is a multi-cultural organization and the selected candidate must be able to work with the various departments in a professional and diplomatic manner. The candidate must also be able to effectively work with his/her counterparts of a sister organization serving other assigned international markets. As part of this industry, the sale of product to the industry requires the establishment of strong personal relationships with key industry executives; however, the selected candidate must be able to separate established personal relationships when making business decisions.

Additionally, prospective candidates will have:

KORN/FERRY INTERNATIONAL

- 8+ years of experience in senior level sales management in the computer or IT industry.
- Demonstrated track record of strong performance in a sales leadership role.
- Experience in scaling an organization for rapid growth.
- Solid understanding of technology products and/or services.
- History of building successful relationships based on superior customer service.
- Experience in an environment that requires strong customer orientation/relationships, however, maintains ability to make strong business decisions to benefit of the company.
- Experience in working with both short and extended sales cycles.
- Strategic, process oriented approach to sales management.
- Excellent verbal, written, and interpersonal skills.

**PERSONAL CHARACTERISTICS**

The ideal candidate will command respect through self-initiative, technical competence and leadership. The individual will work effectively as a team player with all departments in the company. He/she will demonstrate commitment to the company's values of customer focus, innovation, high standards, integrity and ethics, and respect for all constituents. In addition, he/she will demonstrate the intellect and leadership required to further the success of this business.

**EDUCATION**

An undergraduate degree is required.

Appropriately qualified and motivated candidates will be highly attracted to this opportunity to handle full sales and marketing responsibilities for a rapidly growing company committed to being a key player in a large and growing industry, and to

KORN/FERRY INTERNATIONAL

have an attractive compensation package which provides the opportunity for rewards commensurate with performance.

## CONTACT INFORMATION

For further information, please contact the following:

**Elliot Gordon**
Senior Client Partner
Korn/Ferry International
2600 Michelson Drive
Irvine, CA 92612
Phone:  (949) 260-9500
Fax:    (949)833-7608
Email:  gordone@kornferry.com


**Eve Nam**
Senior Associate
Korn/Ferry International
2600 Michelson Drive
Irvine, CA 92612
Phone:  (949) 260-9503
Fax:    (949)833-7608
Email:  eve.nam@kornferry.com


*All submissions will be handled in the strictest confidence.*

# Exhibit B

# KONAMI

585 Trade Center Drive
Las Vegas, Nevada 89119
702.616.1400

March 16, 2006

*by phone*
*Stwe - SS approved*

Lou Ramondetta
2335 Stewart Avenue
Walnut Creek, CA 94596

Dear Lou:

Konami Gaming, Inc. is pleased to offer you the position of Vice President, Sales and Marketing at an annual rate of ▓▓▓▓, payable in biweekly installments; a sign on bonus of ▓▓▓▓ (minus applicable taxes) payable within 30 days after your date of hire; *immediately* and an additional bonus based on game unit sales in the North American market to include game units and participation units, as specified below:

| Quantity | Bonus Amount | Accumulated Amount |
|---|---|---|
| 4,500 units | $25,000 | $25,000 |
| 5,000 units | $50,000 | $75,000 |
| 5,500 units | $75,000 | $150,000 |
| 6,000 units | $100,000 | $250,000 |
| 6,001 – 10,000 units | $37.50/unit | per calculation |
| 10,001 & units | $50.00/unit | per calculation |

*plus applicable annual performance and Cost of Living adjs*

Second year annual salary will be no less than ▓▓▓▓ or as agreed to by CEO Satoshi Sakamoto. This is a full-time exempt position reporting to Steve Sutherland, Executive Vice President and COO of Konami Gaming, Inc. Your start date will be on or about April 2, 2006. *10th LR*

Relocation costs will be based on mutually agreed upon standards to include:
* current home closing costs, such as sales commission, legal and recording fees (excluding outstanding taxes, liens, etc)
* closing costs on the purchase of new residence in Las Vegas, Nevada such as title fees, application, etc (excluding 'points')
* cost of packing and moving household goods from California to Nevada and the transportation of two vehicles (excluding car collections; RV, etc)
* cost associated with moving one family, including mileage, airfare, hotel, meals

- general fund of $10,000 to include painting, carpet cleaning, miscellaneous preparatory expenses associated with new residence
- total amount (based on submission of verified receipts) to be grossed up and agreed upon by your start date at Konami Gaming, Inc.
- should employee voluntarily terminate employment within the first 12-months of the start date with Konami Gaming, Inc., the employee is responsible for the repayment of all relocation costs to Konami.

The scope of this letter is to outline our offer of employment and is not to be perceived as an employment contract. Konami Gaming, Inc. (KGI) is an "At Will" employer meaning that either you or KGI can terminate the employment relationship at any time, with or without notice, and with or without reason. Immediate roles and responsibilities will include Konami Game Sales, Product Management, and Sales Administration. Upon successful demonstration to executive management that the game sales group is performing per plan, your role will expand to taking on responsibility of the Konami Systems Sales group. In the interim period, you will be working with Steve Sutherland on the strategic positioning and organization of the systems division, ensuring cohesive and tactical sales efforts in the marketplace between both departments are achieved. It should be noted KGI considers an essential job function of your position to include travel. By signing the acceptance below, you are warranting that you will be able to conform to the reasonable expectations of KGI and fulfill the job functions. As a condition of employment, you may be required to sign Confidentiality and Intellectual Property Agreement(s) covering, without limitation, use, disclosure and/or ownership of confidential, proprietary, and/or trade secret information of KGI and its affiliates during and following the tenure of employment.

**BENEFITS**
- You are eligible to participate in the KGI Health, Dental, Vision, and other benefit plans on the first of the month following the date of hire
- Term Life insurance equal to two (2) times your annual salary
- Four weeks paid vacation
- Our current 401K benefit includes a company match of 50% up to 15% contributed for this calendar year
- Three months severance including a three-month non-compete agreement.

Other:   The Company maintains memberships at Southern Highlands Golf Course and the Foundation Room specifically for the purposes of customer entertainment. In your role at KGI, you will have access to these facilities per the guidelines established for employees provided such access.

Because we operate in a heavily regulated industry, the position offered to you is subject to a criminal background check. This offer is contingent upon Compliance approval, a pre-employment drug test, and final approval from our Japanese parent company. Should you fail to receive Compliance approval, or test positive for the presence of an illegal or controlled substance, or not be approved by our parent company, this offer will be withdrawn. All necessary paperwork and drug test forms need to be completed at your

Ramondetta Offer                       Page 2 of 3

earliest convenience. Additionally, as a key employee of Konami Gaming, Inc. you will be subject to further criminal background checks by multiple gaming jurisdictions throughout your tenure of employment.

By accepting this offer of employment, you agree to settle any and all claims, disputes or controversies arising out of or relating to your application or candidacy for employment, employment and/or cessation of employment with KGI, *exclusively* by final and binding *arbitration* before a neutral arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, as amended, including the amendments of the Civil Rights Act of 1991, the American With Disabilities Act, the law of contract and the law of tort.

Please indicate your acceptance of the terms of this offer by signing on the line provided. Your signature confirms that you do not have any restrictive covenant with your employer that would prevent you from accepting employment with KGI. Additionally, as professionals operating within this competitive industry, you have our commitment that we will not ask for, nor should you divulge, any proprietary information, including customer lists. All confidential material relative to your previous employer must and shall remain confidential.

Sincerely,

S. Sakamoto

Satoshi Sakamoto, Chief Executive Officer
Konami Gaming, Inc.

Accepted by:

_____ 3/24/06
Lou Ramondetta            (Date)