HOWARD E. COLE
California Bar No. 91707
SUZANNE L. MARTIN
California Bar No. 210613
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
(702) 949-8200
(702) 949-8398 (fax)

Attorneys for the Defendant

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOU RAMONDETTA,<br><br>   Plaintiff,<br><br>vs.<br><br>KONAMI, et al., Konami,<br><br>   Defendant. | Case No. C08-01002 EDL<br><br>**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, MOTION TO DETERMINE APPLICABLE LAW**<br><br>[*filed concurrently with*: Declaration of Steve Sutherland; Declaration of Suzanne L. Martin; and Master Certificate of Service]<br><br>Hearing Date: August 19, 2008<br>Hearing Time: 9:30 a.m. |

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW
C08-01002 EDL
430483

# TABLE OF CONTENTS

**SECTION**                                                                                                                          **PAGE #**

I.   **INTRODUCTION**……………………………………………………………………..1

II.  **LEGAL DISCUSSION**……………………………………………………………...2

   A.  **Public Policy Weights In Favor Of Enforcing Arbitration**……….…2

   B.  **Nevada Law Applies To All Aspects of This Dispute, Including the Enforceability Of The Arbitration Clause In The Offer Letter**……….2

      1.  Most of the Negotiations and Contracting Were Done In Nevada…………………………………………………………………4

      2.  The Place of Performance Was Nevada………………………5

      3.  Ramondetta Agreed to Relocate to Nevada, KGI's State of Incorporation and Its Principle Place of Business……………………………………………………………….6

   C.  **Ramondetta's Public Policy Arguments Are Inapplicable**……………7

   D.  **The Arbitration Provision in the Offer Letter is Enforceable**………..7

      1.  Nevada Favors Arbitration and Enforces Arbitration Agreements Unless The Terms Are Unconscionable………….8

      2.  The Offer Letter Ramondetta Negotiated, and Re-Negotiated, Was Anything But An Unconscionable, Adhesion Contract………………………………………………….9

      3.  Silence Does Not Sound the Substantively Unconscionable Death Knell For The Arbitration Provision…………………..12

      4.  Neither Ambiguity, nor *Armendariz* Defeat the Arbitration Provision ….………………………………………..14

III. **CONCLUSION**……………………………………………………………………..15

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

i

# **TABLE OF AUTHORITIES**

**Cases**

*Akar v. Prescott Hotel,* 2008 U.S. Dist. LEXIS 43066, *4 (N.D. Cal. June 2, 2008) ...................... 2
*Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal. 4th 83,
  6 P.3d 669 ......................................................................................................................... 7, 8, 14
*Boghos v. Certain Underwriters at Lloyd's of London, et al.* (2005) 36 Cal. 4th 495,
  506-07, 115 P.3d 68, 74-76 ....................................................................................................... 14
*Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893-92 (9th Cir. 2002)..................................... 3
*D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554, 558, 96 P.3d 1159, 1162, 1665 (2004) ....... 8, 9, 12
*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220-21, 105 S.Ct. 1238,
  84 L.Ed. 2d 158 (1985) ................................................................................................................ 2
*Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal. App. 4th 1276, 1289-91,
  58 Cal. Rptr. 3d 5, 20-21, 26-27 ................................................................................................ 14
*Green Tree Financial Corp. – Ala v. Randolph*, 531 U.S. 79, 90, 121 S. Ct. 513 (2001)............... 12
*Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 104 Nev. 615,
  764 P.2d 478 (1988) .................................................................................................................... 8
*Little v. Auto Stiegler, Inc.* (2003) 29 Cal. 4th 1064, 130 Cal. Rptr. 2d 892................................ 14
*Lyman v. Mor Furniture for Less, Inc.*, 2007 U.S. Dist. LEXIS 58187,
  (D.Nev. Aug. 7, 2007)................................................................................ 8, 9, 11, 12, 13, 15
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24,
  74 L. Ed. 2d 765, 103 S.Ct. 927 (1983) ...................................................................................... 2
*Parker v. McCaw, et al.* (2005) 125 Cal. App. 4th 1494, 1507, 24 Cal. Rptr. 3d 55, 64 ............... 14
*Sagent Technology v. Micro Systems, Inc.*, 2002 U.S. Dist. LEXIS 26647 (N.D. Cal.
  May 29, 2002)............................................................................................................................... 3
*Semcken v. Genesis Medical Interventional, Inc.*, 2004 U.S. Dist. LEXIS 20380
  (N.D. Cal. Sept. 29, 2004) ........................................................................................................... 3
*Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir. 1999) ................................................... 2
*Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) .......................................... 2
*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal.App.4th 637, 645, 17
  Cal.Rptr.2d 713 (1993).................................................................................................................. 3
*Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001)................................... 2
*Ting v. AT&T*, 319 F. 3d 1126, 1149 (9th Cir. 2003) .................................................................. 12

**Other Authorities**

CAL. CIV. CODE § 1646 ..................................................................................................................... 3
Federal Rule of Civil Procedure 12(b) ............................................................................................. 2
N.R.S. § 38.219, § 38.221 ................................................................................................................ 8

**Treatises**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 188 ............................................................ 3, 7

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

ii

I.  **INTRODUCTION**

The untimely, stream-of-consciousness like Opposition[1] fails to refute the obvious and salient facts that merit the application of Nevada law and warrant the dismissal of this case in favor of arbitration.

Plaintiff Lou Ramondetta was employed in Nevada by a Nevada company, Konami Gaming, Inc. ("KGI"). All of his claims arise out of and relate to his employment with KGI and the alleged breach of an offer letter for employment he entered into with KGI. Under the RESTATEMENT'S relevant contacts test, and because Ramondetta was employed in Nevada by a Nevada company, the Court should apply Nevada law to determine the enforceability of the arbitration provision in the offer letter, and order that Ramondetta's claims be decided in arbitration under Nevada law.

No grounds exist upon which to invalidate the arbitration provision in the offer letter. Ramondetta shrouds the arbitration provision in a cloak of unconscionability and protests that the offer letter was an adhesion contract forced upon him by a superior bargaining power. Not so. KGI sought Ramondetta out, not the other way around. When it came time to negotiate the terms of employment, Ramondetta capitalized on the opportunity and made substantial revisions to the offer, at least where his compensation was concerned. For example, he negotiated a higher sign-on bonus payable immediately, not within 30 days of his hire date, additional relocation costs for his move from California to Nevada, and additional remodeling costs for the new home he contemplated buying in Nevada. Ramondetta never objected to, or attempted to negotiate the arbitration provision, nor can he credibly characterize the simplistic arbitration language, drafted by a layperson, contained on the last page of his 3-page offer letter just above his signature as

---

[1] Defendant Konami Gaming, Inc. has filed a Motion to Strike the Opposition on the grounds that the Opposition was untimely, did not comport with the Federal Rules of Civil Procedure or the applicable local rules, and sought to distract the Court from the issues before it with irrelevant and sensationalized facts that have no bearing on the enforcement of the arbitration clause in the offer letter or applicable law. Defendant incorporates the Motion to Strike within this Reply as if fully set forth herein.

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89169

hidden, vague or misleading. The arbitration provision cannot be rendered unconscionable because it was silent about the fees associated with arbitration, either.

For the reasons set forth in KGI's Motion and this Reply, the dispute between Ramondetta and his Nevada employer over the alleged breach of the offer letter must be compelled to arbitration under Nevada law.

## II. LEGAL DISCUSSION

### A. Public Policy Weighs in Favor of Enforcing Arbitration

Where an arbitration clause is broad enough to encompass all of the plaintiff's claims, the court may exercise its discretion and dismiss a case in favor of arbitration under Federal Rule of Civil Procedure 12(b). *See Akar v. Prescott Hotel*, 2008 U.S. Dist. LEXIS 43066, *4 (N. D. Cal. June 2, 2008) quoting *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). In fact, in the face of an enforceable arbitration agreement, a district court is obligated to order the parties to arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220-21, 105 S.Ct. 1238, 84 L.Ed. 2d 158 (1985) ("By its terms, the [Federal Arbitration Act] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") The "clear federal policy" in favor or arbitration compels courts to resolve all doubts about the arbitration agreement in favor of arbitration. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 74 L.Ed. 2d 765, 103 S.Ct. 927 (1983). Arbitration agreements are rigorously enforced, even in the employment context. *Dean Witter,* 470 U.S. at 220.

### B. Nevada Law Applies to All Aspects of This Dispute, Including the Enforceability of the Arbitration Clause in the Offer Letter

Federal courts sitting in diversity presented with state law claims must apply the conflicts laws of the forum state to determine which state's substantive law to apply. *See Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001) (diversity case filed in Montana required application of Montana's choice of law rules to determine applicable substantive law in

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

2

employment action). Generally, in a breach of contract action where there is no choice of law agreement, California courts use the relevant contacts test from the RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188 to determine which state's substantive law to apply. *See Sagent Technology v. Micro Systems, Inc.*, 2002 U.S. Dist. LEXIS 26647, *6 (N.D. Cal. May 29, 2002), citing *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal.App.4th 637, 645, 17 Cal.Rptr.2d 713 (1993). In a breach of contract action as between an employer and employee, the courts will apply the law of the state where the employer is situated, or where the employee was employed. *See e.g.*, *Semcken v. Genesis Medical Interventional, Inc.*, 2004 U.S. Dist. LEXIS 20380, * 7 (N.D. Cal. Sept. 29, 2004) (deciding which state's law to apply to evaluate the arbitration language in an offer letter between executive employee and employer, "Semcken was employed by a California company, so we evaluate his claims under the contract law of California."), citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893-92 (9th Cir. 2002) (analyzing enforceability of arbitration agreement between employer and employee, "[b]ecause Adams was employed in California, we look to California contract law to determine whether the agreement is valid.").

Ramondetta does not dispute that it is appropriate for the Court to analyze the applicable law question under the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188; however, he erroneously comes to the conclusion that California law applies. *All* of the relevant contacts weigh in favor of applying Nevada law, even those cited by Ramondetta. Once again, the relevant contacts are: (a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See Sagent,* at *6, citing Stonewall*, 14 Cal.App.4th at 645, 17 Cal.Rptr.2d 713, quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188(2) and referring to CAL. CIV. CODE § 1646 (requiring contracts to be interpreted in accordance with the law and usage of the place the contract is to be performed.)

///

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

3

CV-C-08-01002 EDL
430483.1

### 1. Most of the Negotiations and Contracting Were Done In Nevada

Ramondetta makes much ado about his interactions with Korn Ferry, asserting without any basis in law or fact, that "[a] recruiter like Korn-Ferry, acts as a direct representative for the employer," and that he "negotiated" the terms of his employment at KGI with the executive recruiters in the Irvine, California office of Korn Ferry. *See* Opp., pp. 5, 27. Korn Ferry did not have the authority to negotiate the terms and conditions of Ramondetta's employment at KGI, much less to negotiate offers of employment on behalf of KGI. *See* Declaration of Steve Sutherland, ¶ 6 , *filed concurrently herewith* ("Sutherland Decl."). KGI retained Korn Ferry to locate qualified applicants for the position of Vice President or Senior Director of Sales and present them to KGI for consideration, and its roles was limited accordingly. *See id*.

The facts related to the negotiation and contracting described in Ramondetta's Opposition establish that most of the negotiating and contracting was performed by Ramondetta and KGI <u>in Nevada</u>. Ramondetta concedes that he flew to Las Vegas, Nevada on at least 3 occasions to interview and discuss the terms of his employment with KGI's President, Satoshi Sakamoto ("Sakamoto"), Executive Vice President and Chief Operating Officer, Steve Sutherland ("Sutherland"), Director Legal Compliance, Thomas Jingoli ("Jingoli"), and Director, Human Resources, Bobbi Youngblood ("Youngblood"). *See* Opp., p. 27. The February 27 preliminary offer letter, March 3 offer letter, and the final, negotiated offer letter of March 16 were all prepared in Las Vegas, Nevada, by Sutherland, executed by either Sutherland or Sakamoto in Nevada and then faxed to Ramondetta in California. *See* Opp., p. 27, Exs. 1, 2, 12 to Opp. Thereafter, Ramondetta called Sutherland, and others at KGI in Nevada to discuss the terms of the offer letter and his employment. *See id*. Ultimately, Ramondetta returned the executed March 16 offer letter to KGI in Las Vegas, Nevada where he would soon begin working. *See id*.

/ / /

/ / /

/ / /

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

4

CV-C-08-01002 EDL
430483.1

### 2. The Place of Performance Was Nevada

Ramondetta argues that the "offer letter did not specifically mention a place of performance" or require relocation, and that the Korn Ferry Position Specification only mentioned Las Vegas, Nevada once. *See* Opp., pp. 27, 28. The Korn Ferry Position Specification does mention Las Vegas, Nevada only once; but, importantly, it mentions Las Vegas, Nevada by **identifying Las Vegas, Nevada as the location for the position.** *See* Ex. 3 to Opp. (Korn Ferry Position Specification, p. 2 "**LOCATION** Las Vegas Nevada") (emphasis in the original).

The offer letter did not need to require relocation because it had already been agreed upon. The terms of the relocation package remained subject to negotiation, and were in fact negotiated by Ramondetta. For example, the relocation package outlined in the March 3 offer letter provides for the "costs of packing and moving household goods from California to Nevada and the transportation of one vehicle", whereas the final offer letter dated March 16 provides for the transportation of two vehicles. *See* Exs. 2, 12 to Opp. Ramondetta also negotiated the amount of the general fund for the remodeling of the home he intended to purchase in Nevada up from $7,500 to $10,000. *See id*.

*If* KGI did not require relocation to Las Vegas, Nevada, as discussed in KGI's moving papers, KGI would have hired the first candidate Korn Ferry identified who could not relocate to Las Vegas, Nevada. *See* Doc. # 62, p. 2, lns. 17-20. *If* Ramondetta had not agreed to relocate from California to Nevada, there would have been no need to negotiate a relocation package, or, also as more fully discussed in the moving papers, for Ramondetta to investigate housing arrangements in Las Vegas, Nevada, and travel to Las Vegas, Nevada to work at KGI's offices. *See* Doc. #63, ¶ 9. There cannot be any serious dispute or question that the "place of performance" for the Vice President, Sales and Marketing of KGI – the position that Ramondetta accepted – was in Las Vegas, Nevada.

///

///

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

5

### 3. Ramondetta Agreed to Relocate to Nevada, KGI's State of Incorporation and Its Principle Place of Business

Notwithstanding Ramondetta's prior and current status as a California resident, neither he nor this Court can ignore the fact that, as discussed at length in the moving papers and above, when Ramondetta interviewed for, negotiated, and accepted the position of Vice President, Sales and Marketing at KGI, he agreed to and planned on moving to Nevada and becoming a Nevada resident. *See* Doc. # 62; Sutherland Decl., #9. Further, Ramondetta admits that KGI, *his former employer,* is a Nevada corporation. *See* Opp., p. 28. Ramondetta attempts to cloud the issue by discussing other "Konami" entities, namely Konami Corporation, which he describes as a Japanese corporation that has a U.S. based holding company in California. *See* Opp., p. 28.

KGI is one of two, *separate and distinct*, U.S. subsidiaries of the Japanese company, Konami Corporation. KGI is a Nevada corporation, headquartered in Las Vegas, Nevada, with its principle place of business in Nevada. KGI manufactures and sells gaming slot machines and casino management systems software. *See* Sutherland Decl., ¶¶ 2, 4. *See also*, www.konamigaming.com. KGI does not have offices outside of Las Vegas, Nevada, and does not maintain any offices in California. *See id*., ¶ 4. Ramondetta's representation that "upwards of 50%" of KGI's revenues are generated from California is misleading. Only 11% of KGI's revenues are actually generated by its gaming clients in California. *See id*.

KGI should not be confused with a separate Konami Corporation subsidiary in California, Konami Digital Entertainment, Inc., which is a California corporation with its principle place of business in California. *See id*., ¶ 5. Konami Digital Entertainment, Inc. specializes in the planning, production, and distribution of online games, computer and video games, amusement machines, toys, card games, contents for mobile phone, music/video, software, books, and magazines for arcades (i.e., "Dance Dance Revolution SuperNOVA") and personal/home use (i.e., "Hellboy The Science of Evil", released June 24, 2008). *See id. See also*, www.konami-digital-entertainment.com.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

6

Ramondetta was employed by KGI, a Nevada corporation and employer, not Konami Digital Entertainment, Inc., or Konami Corporation in Japan. As such, the existence of a California subsidiary and a Japanese parent, or where these entities derive revenue, is *irrelevant* to the inquiry of Ramondetta's and KGI's residency, place of incorporation and place of business under RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188. What is relevant is that Ramondetta applied for and accepted a position with a Nevada corporation, to work in Las Vegas, Nevada, and that, during his brief tenure of employment, he traveled to Las Vegas, Nevada to work. *See* Doc. # 62, p. 5, lns. 4-7.

Analyzing the relevant and salient facts under the RESTATEMENT, coupled with the fact that KGI is a Nevada employer and Nevada is where Ramondetta worked, this Court must apply Nevada law in deciding to enforce the arbitration provision in the offer letter, and to Ramondetta's claims.

    **C.**    **Ramondetta's Public Policy Arguments Are Inapplicable**

While maligning Nevada's labor laws and its legal community, Ramondetta asserts that forum selection clauses and "[c]hoices of law should favor the state whose interests would be 'more impaired' if the states (sic) law was not applied". *See* Opp., p. 29 - 33. The cases Ramondetta cites in support of this public policy argument analyze whether the law of the state identified in the *choice of law and forum selection clauses* in contracts should be applied. The offer letter in dispute here does not have a choice of law clause (hence the need to analyze the correct choice of law under RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188), or a forum selection clause. This public policy argument is inapplicable, and should be disregarded.

    **D.**    **The Arbitration Provision in the Offer Letter is Enforceable**

Regarding the arbitration provision in the offer letter, the thrust of Ramondetta's argument is that the offer letter is a contract of adhesion and the arbitration provision is unconscionable because it does not comport with the minimum requirements of *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal. 4th 83, 6 P.3d 669. As discussed above, Nevada law, not

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

7

California law, should be applied to determine the enforceability of the arbitration provision in the offer letter. Under Nevada law, the arbitration clause in the offer letter is enforceable. Even if California law did apply, Ramondetta cannot rely on the arbitration analysis in *Armendariz* because he is pursuing garden variety breach of contract claims, not claims for violation of the Fair Employment and Housing Act, or other similar statutory scheme, or for wrongful termination in violation of public policy, to which the *Armendariz* requirements have been limited. *See discussion* III, D, 4, *infra*.

### 1. Nevada Favors Arbitration and Enforces Arbitration Agreements Unless The Terms Are Unconscionable

Nevada law "strongly favors the enforcement of arbitration and has similar mechanisms to ensure that arbitration agreements are enforced." *Lyman v. Mor Furniture for Less, Inc.*, 2007 U.S. Dist. LEXIS 58187, * (Aug. 7, 2007) citing *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 104 Nev. 615, 764 P.2d 478 (1988), and N.R.S. § 38.221. In *Lyman*, the court discussed the enforceability of an arbitration provision in an employment agreement pursuant to which, the plaintiff-employee would be required to arbitrate her sexual harassment and discrimination claims.

The court began by restating the general rule that agreements to arbitration are enforceable and irrevocable, unless the agreement is both procedurally and substantively unconscionable. *Id.*, 2007 U.S. Dist. LEXIS at * 7, citing N.R.S. § 38.219. *See also, D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554, 96 P.3d 1159, 1162 (2004) (citations omitted). A contract clause may be procedurally unconscionable when a party lacks a meaningful opportunity to negotiate the terms because of unequal bargaining power, as in an adhesion contract, or because the clause and its consequences are buried in the prolix of a form agreement, are in small print, or are confusing or misleading such that a reasonable person would not understand the consequences of the contract. *See id.*, 2007 U.S. Dist. LEXIS at * 8, citing *Horton,* 120 Nev. at 554, 96 P.3d at 1162 (citations omitted). *See also, Horton,* 120 Nev. at 554, 96 P.3d at 1162.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

8

CV-C-08-01002 EDL
430483.1

One-sidedness of the contract terms is a tell-tale sign of substantive unconscionability. *See id.*, 2007 U.S. Dist. LEXIS at * 11, citing *Horton,* 120 Nev. at 554, 96 P.3d at 1162 (citations omitted).

The plaintiff-employee in *Lyman* argued that the arbitration provision in her employment contract was procedurally unconscionable because it did not state that by agreeing to arbitration, she waived her right to a jury trial. 2007 U.S. Dist. LEXIS at * 8. The court disagreed, finding that although the arbitration clause was silent about a jury waiver, it informed the plaintiff-employee that all disputes relating to her employment would be subject to arbitration and thus, her claims would be resolved in a forum other than a judicial proceeding. *Id.*, at * 9. Further, the arbitration clause was not hidden or in small print in an effort to downplay its significance, but appeared on the last page of the employment agreement just above the plaintiff-employee's signature. *Id*.

Plaintiff-employee in *Lyman* also argued that the arbitration provision's failure to specify arbitration costs favored the defendant employer over the plaintiff, and demonstrated substantively unconscionable one-sidedness. *Id.*, * 11, 12. The court quickly dismissed this argument noting that, "silence as to arbitration costs does not render an arbitration agreement invalid." *Id.*, at * 12, citing *Horton* 120 Nev. at 558, 96 P.3d at 1165.

### 2. The Offer Letter Ramondetta Negotiated, and Re-Negotiated, Was Anything But An Unconscionable, Adhesion Contract

The arbitration clause in the offer letter was not a procedurally unconscionable contract of adhesion foisted upon Ramondetta by a party with much greater bargaining power, without the opportunity to negotiate its terms. Preliminarily, KGI sought Ramondetta out, not the other way around. KGI hired Korn Ferry to locate a candidate for the Vice President, Sales and Marketing position. *See* Sutherland Decl., ¶ 6. Korn Ferry contacted Ramondetta regarding his interest in the position, and identified him to KGI as candidate. *See* Opp., p. 27.

Ramondetta intimates that KGI surprised him by including the arbitration provision in the second offer letter, dated March 3, and thereafter, refused to negotiate the arbitration provision.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

9

CV-C-08-01002 EDL
430483.1

1  *See* Opp., 6. Importantly, the February 27 "offer letter" Ramondetta identifies as the first offer
2  letter, which admittedly makes no mention of arbitration, states "Once we agree to final terms, I
3  will forward *a formal job offer letter for the position*." *See* Ex. 1 to Opp. (emphasis added). Such
4  language indicates that the terms of the offer were subject to discussion by equally situated
5  bargaining powers; the negotiations that followed substantiate this fact. This language also put
6  Ramondetta on notice that the February 27 letter did not contain all of the terms and conditions of
7  his employment, including whether KGI would request that he arbitrate any disputes.

8      KGI sent a formal job offer letter to Ramondetta on March 3 that detailed the terms of his
9  employment and contained the arbitration clause. *See* Ex. 2 to Opp. Upon receipt, Ramondetta
10 made notes to change certain terms of the offer, including: providing him access to the club
11 memberships KGI maintained for executive level employees at Southern Highlands Golf Course
12 and the Foundation Room; increasing his moving costs to cover the cost of moving two cars, not
13 one; an increase in his general fund for remodeling his new home in Nevada from $7,500 to
14 $10,000; reimbursement of the relocation expenses only upon his voluntarily termination of
15 employment. *See* Ex. 2 to Opp. *All* of these changes were incorporated into a revised formal offer
16 letter dated March 16. *See* Ex. 12 to Opp. Ramondetta continued to negotiate the terms of his
17 employment after he received the March 16 letter, and *successfully negotiated additional changes*,
18 including a larger sign-on bonus, from $30,000 to $50,000, payable immediately, rather than in
19 30-days, and a later start date. *See id*.

20     In the March 3 version of the offer letter, Ramondetta included a notation by the arbitration
21 clause, "give up my legal rights", indicating that he understood the alternative remedial nature of
22 arbitration. *See* Ex. 2 to Opp. Unlike the other notes indicating changes must be made, the notes
23 next to the arbitration clause do not indicate a refusal to arbitrate, or that Ramondetta sought to
24 make changes to the arbitration provision. *See id*. This is because Ramondetta did not attempt to
25 negotiate the arbitration clause. Ramondetta claims he faxed the March 3 offer letter to Sutherland
26 for discussion and that when he broached arbitration, Sutherland explained that arbitration was

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

10

1  "non negotiable." Opp. p. 6. Ramondetta did not attach any documentation to support this
2  assertion, not even a fax cover page. The only indicia that the March 3 formal offer letter was
3  faxed at all, is the fax line that appears at the top of each page, with the date, time, phone number
4  and the name "Steve Sutherland". *See* Exs. 1, 2 and 12 to Opp. These markings are consistent
5  with the facsimiles coming *from* Sutherland's private facsimile machine at that time and each
6  document faxed *from* Sutherland's office to Ramondetta bears similar markings. *See* Sutherland
7  Decl. ¶¶ 10, 11; see Exs. 1, 2 and 12 to Opp.

8     Sutherland has <u>never</u> seen this version of the March 3 offer letter and has no recollection of
9  arbitration being the subject of negotiation with Ramondetta. Sutherland Decl., ¶ 12. This version
10 of the offer letter also does not appear in any KGI files regarding Ramondetta. *See id*. In fact, this
11 is the very first time that KGI (and counsel) have ever seen this version of the March 3 offer letter
12 with Ramondetta's notes. *Id*. *See also*, Declaration of Suzanne L. Martin, ¶ 3 ("Martin Decl.").

13    Regardless, the offer letter was not a contract of adhesion because it was possible to, and
14 Ramondetta did, negotiate the terms of the offer letter, at least with regard to his compensation and
15 certain perks. Nor are the other elements of procedural unconscionability present. Youngblood,
16 Director, Human Resources, and a non-lawyer, drafted the March 3 and March 16 offer letters and
17 the arbitration language. *See* Sutherland Decl., ¶ 11. She drafted the arbitration provision in plain,
18 understandable language and placed it on the third page of the offer letter in the same font that the
19 rest of the offer letter was set forth. *See id.*; Exs. 2, 12 to Opp. Ramondetta's notation on the
20 March 3 version of the offer letter, "giving up legal rights", evidences his understanding of the
21 consequences of agreeing to arbitration. *See* Ex. 2 to Opp. Even more so than in *Lyman*, there are
22 no grounds to deem Ramondetta's offer letter or the arbitration clause procedurally
23 unconscionable.

24 / / /

25 / / /

26 / / /

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89169

27
28  REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE
                                        APPLICABLE LAW

                                                                                CV-C-08-01002 EDL
                                                                                430483.1

### 3. Silence Does Not Sound the Substantively Unconscionable Death Knell For the Arbitration Provision

Ramondetta argues that the arbitration provision is substantively unconscionable because it obligates only him to arbitrate his claims and is silent on the issue of which party bears the costs of arbitration. *See* Opp., pp. 22-23. *Lyman* explains that:

> Substantive unconscionability is present when the terms of a contract favor one party over the other. *Horton*, 120 Nev. at 554, 96 P.3d at 1162; *quoting, Ting v. AT&T*, 319 F. 3d 1126, 1149 (9th Cir. 2003). But, an arbitration agreement's failure to present significant arbitration costs does not alone render the agreement unenforceable. *Horton*, 120 Nev. at 558, 96 P. 3d at 1165; *quoting Green Tree Financial Corp. – Ala v. Randolph*, 531 U.S. 79, 90, 121 S. Ct. 513 [] (2001).

U.S. Dist. LEXIS at * 11. Nothing contained in the arbitration provision favors KGI over Ramondetta, or excuses KGI from arbitrating any claims it may have against Ramondetta. *See* Exs. 2, 12 to Opp. Although the arbitration clause does not expressly obligate both Ramondetta and KGI to arbitration, KGI's obligation to arbitrate any claims it may have against Ramondetta in arbitration has always been a forgone conclusion.

Within days of his June 14, 2006, termination, Ramondetta invoked his right to arbitration and notified KGI that he intended to pursue various breach of contract claims against it. *See* Ex. 5 to Opp. Since that time, in verbal and written communications between KGI's counsel, Ramondetta, and third party agencies, including the American Arbitration Association ("AAA"), KGI has confirmed its intent to pursue any counterclaims it may have against Ramondetta in arbitration. For example, in an e-mail from Howard Cole ("Cole"), counsel for KGI, to Ramondetta on June 16, 2006 – <u>just two days after Ramondetta's termination</u> – entitled, "List of Arbitrators", Cole writes:

> To reiterate the position of KGI, in the event that you pursue arbitration over the severance pay issue, it would be the intention of KGI to counterclaim for reimbursement of the sign-on bonus of $50,000 based upon material misrepresentations and/or omissions made by you during the applicant/hiring/compliance process.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

12

CV-C-08-01002 EDL
430483.1

Ex. 5 to Opp. Cole also identified two arbitration agencies and provided the contact information for potential arbitrators in both Nevada and California. *See id.*

Ramondetta waited a year before finally filing a demand for arbitration. *See* Ex. 6 to Opp.; *see also,* Martin Decl., Ex. 1 (Ramondetta AAA Arbitration Demand). In Cole's July 24, 2007, letter to the AAA responding to Ramondetta's arbitration demand, Cole reiterated KGI's understanding that the arbitration provision in the offer letter *bound both parties to arbitration* and restated KGI's commitment to arbitrate any claims it may have against Ramondetta in the appropriate arbitral forum:

> **The Offer Letter, dated March 16, 2006, to Mr. Ramondetta clearly specified that all disputes <u>between the parties</u> shall be resolved by binding arbitration. KGI is ready and willing to participate in an arbitration.** However, as evidenced by the aforementioned responsive position statements, that arbitration must be conducted in the State of Nevada and governed by applicable Nevada law. If Mr. Ramondetta filed his Demand For Arbitration with a third party arbitration service in Las Vegas, Nevada, KGI would reconsider the instant response. Alternatively, if Mr. Ramondetta requested arbitration according to the court-annexed arbitration procedures of the Eighth Judicial District of the State of Nevada, KGI would voluntarily comply with its obligations.

<u>Ramondetta omitted page 4 of Cole's July 24, 2007, letter to AAA in which this language appears from the copy of the letter he attached as Ex. 6 to the Opposition</u>. A complete, true and correct copy of the letter is attached to the Martin Declaration as Exhibit 2 (emphasis added). KGI's insistence that arbitration proceed in Nevada under Nevada law notwithstanding, **the ONLY REASON Ramondetta was not successful in pursuing arbitration in California through AAA in July 2007 is because he failed to satisfy the filing requirements.** *See* Ex. 7A to Opp. (August 15, 2007, letter from AAA to Ramondetta).

On the issues of arbitration costs, as a matter of law, that the arbitration provision in the offer letter is silent on the matter of arbitration costs does not invalidate the arbitration provision. *See Lyman, supra,* 2007 U.S. Dist. LEXIS at *11.

/ / /

/ / /

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

13

### 4.   Neither Ambiguity, nor *Armendariz* Defeat the Arbitration Provision

Finally, Ramondetta argues that the arbitration provision in the offer letter must be deemed unconscionable because in failing to detail the arbitration procedures, namely, how and where to initiate arbitration, it was intentionally vague and ambiguous. Further, the arbitration clause does not comport with the *Armendariz* requirements because it did not provide for a neutral arbitrator, equal discovery, a written award, or outline available remedies. *See* Opp., pps. 19, 24 – 26.

Ramondetta's vague and ambiguous argument is supported by inapplicable California case law that analyzes the vagueness and ambiguity surrounding an employer's obligation to arbitrate its claims under an arbitration agreement. *See* Opp., pp. 24 – 25. As discussed in Section II, B, 3, *supra*, although the arbitration language did not expressly bind KGI to arbitration, KGI considered itself equally bound to arbitrate its claims against Ramondetta, and has repeatedly confirmed its commitment to mutual, binding arbitration with Ramondetta. Any vagaries about the arbitration process were removed by Cole, who provided Ramondetta with ample information about where and with whom he could file his arbitration demand two days after he was terminated. *See* Martin Decl., Ex. 2.

Even if California law did apply, Ramondetta's *Armendariz* arguments are unavailing. The holding in *Armendariz* is limited to the enforcement of arbitration agreements as between an employer and employee when the employee seeks to redress violations under the Fair Employment and Housing Act, or for wrongful termination in violation of public policy. *See Giuliano v. Inland Empire Personnel, Inc*. (2007) 149 Cal. App. 4th 1276, 1289-91, 58 Cal. Rptr. 3d 5, 20-21, 26-27 (affirming *Armendariz's* limitations to FEHA and public policy claims and compelling former executive employee's claims for unpaid bonuses and severance to arbitration pursuant to an arbitration clause in a personalized employment agreement), relying on *Boghos v. Certain Underwriters at Lloyd's of London, et al.* (2005) 36 Cal. 4th 495, 506-07, 115 P.3d 68, 74-76 (discussing *Armendariz* and *Little v. Auto Stiegler, Inc.* (2003) 29 Cal. 4th 1064, 130 Cal.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

14

CV-C-08-01002 EDL
430483.1

Rptr. 2d 892, and refusing to extend the *Armendariz* requirements to arbitration of contract and tort claims under a disability insurance policy). *See also, Parker v. McCaw, et al.*, (2005) 125 Cal. App. 4th 1494, 1507, 24 Cal. Rptr. 3d 55, 64 (rejecting executive employee's attempt to invalidate arbitration clause in an employment agreement by application of *Armendariz* requirements).

Even if *Armendariz* applied to the resolution of Ramondetta's breach of contract claims, if the parties proceeded with arbitration through AAA, FMCS, or Nevada's Court Annexed Arbitration Program, the claims would be adjudicated by a neutral arbitrator, each side would have the opportunity to conduct equal discovery, there would not no limits on damages other than those already imposed under applicable law, and a written arbitration award subject to judicial review or appeal would issue, thereby preserving both parties' respective rights in a true alternative setting to public adjudication in a court of law. *See* Martin Decl., Ex. 3 (AAA Employment Arbitration Rules; JAMS Employment Arbitration Rules; Nevada's Court Annexed Arbitration Rules). *See Lyman, supra,* U.S. Dist. LEXIS at *12-13 (arbitration under JAMS' rules and cost scheme thereunder leaves parties in better economic position then if they litigated in court).

### III. CONCLUSION

For the reasons set forth in the Motion to Dismiss and Compel Arbitration, and to Determine Applicable Law, and this Reply, KGI respectfully requests that this Court GRANT its motion, dismiss this case in favor of arbitration, and order that in arbitration, Nevada law be applied to the resolution of Ramondetta's claims.

DATED this 5th day of August, 2008.

Respectfully submitted,

LEWIS AND ROCA LLP

By: /s/ Suzanne L. Martin
SUZANNE L. MARTIN
California Bar No. 210613
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
Attorneys for Defendant

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS; MOTION TO DETERMINE APPLICABLE LAW

CV-C-08-01002 EDL
430483.1

15