HOWARD E. COLE
California Bar No. 91707
SUZANNE L. MARTIN
California Bar No. 210613
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
(702) 949-8398 (fax)

Attorneys for the Defendant

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOU RAMONDETTA,<br><br>                              Plaintiff,<br><br>     vs.<br><br>KONAMI, et al., Konami,<br><br>                              Defendant. | Case No. C08-01002 EDL<br><br>**Declaration of Suzanne L. Martin *in support of* Konami's Reply in support of Motion to Compel Arbitration and Dismiss, Motion to Determine Applicable Law**<br><br>Hearing Date: August 19, 2008<br>Hearing Time: 9:30 a.m.<br><br>[*filed concurrently with:* Reply in support of Motion to Compel Arbitration and Dismiss, Motion to Determine Applicable Law; Declaration of Steve Sutherland; and Master Certificate of Service] |

I, Suzanne L. Martin, declare as follows:

1.     The following facts are within my personal knowledge and, if called to testify, I could testify competently to them.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

DECLARATION OF SUZANNE L. MARTIN
1

C08-01002 EDL
430795.1

2.     I am counsel for Defendant Konami Gaming, Inc. ("KGI") in this matter and am filing this declaration in support of KGI's Reply in support of Motion to Compel Arbitration and Dismiss, Motion to Determine Applicable Law.  ("KGI's Motion").

3.     I have personally reviewed the correspondence from KGI to Plaintiff Lou Ramondetta ("Ramondetta") regarding his offer of employment, including the formal offer letters KGI sent to Ramondetta in March 2006 offering him the position of Vice President, Sales and Marketing.  I have also reviewed the March 3, 2006, formal offer letter Ramondetta attached to his Opposition, with his notes on it.  I do not recognize this version of the March 3, 2006, nor does Howard E. Cole, a partner with our office, counsel for KGI generally and on this matter. Neither one of us have seen the version of the March 3, 2006, formal offer letter with Ramondetta's notes before Ramondetta produced it as an exhibit to his Opposition.

4.     I have reviewed and am familiar with the documents related to Ramondetta's post-termination efforts to pursue arbitration and recoup the business expenses and severance he claims he is owed.  I also work directly with Mr. Cole on this matter in representing KGI. Shortly after KGI terminated Ramondetta in June 2006 Mr. Cole communicated with Ramondetta about arbitration, both verbally, via e-mail and in writing.   Mr. Cole provided Ramondetta with information about how, and with what agencies he could pursue his claims in arbitration.  Nevertheless, Ramondetta waited approximately one year before he filed a demand for arbitration through the American Arbitration Association.   A true and correct copy of Ramondetta's Arbitration Demand is attached hereto as Ex. 1.

5.     After Ramondetta filed his arbitration demand, AAA contacted KGI and requested that it respond to Ramondetta's demand by July 24, 2007.  Mr. Cole responded to AAA on behalf of KGI with a letter dated July 24, 2007.  A copy of this letter is attached to Ramondetta's Opposition as Ex. 6, but it is incomplete because it is missing page 4.  A true, correct, and complete copy of Mr. Cole's July 24, 2007, correspondence to AAA is attached hereto as Ex. 2.

DECLARATION OF SUZANNE L. MARTIN
2

6.    As stated in the Reply, KGI considers itself equally bound to pursue any claims it may have in arbitration and will proceed with arbitration through AAA, FMCS, and Nevada's Court Annexed Arbitration Program.    All of these private arbitration associations offer neutral arbitrators, permit equal discovery, require a written arbitration award, and review of the arbitrator's decision.    Although Nevada's Court Annexed Arbitration Rules indicate limit the arbitrator to an award of no more than $50,000, this is a procedural limit imposed on cases that are automatically subject to Court Annexed Arbitration by operation of Nevada's Rules of Civil Procedure.    Parties may voluntarily submit to arbitration through the Court Annexed Arbitration Program and may stipulate to waive certain rules, and I have personally done so in the past. Attached as Ex. 3 are true and correct copies of the AAA Employment Arbitration Rules, FMCS's Policies and Procedures, and Nevada's Court Annexed Arbitration Rules.

7.    KGI's Reply cites to *Lyman v. Mor Furniture for Less, Inc.*, 2007 U.S. Dist. LEXIS 58187 (D. Nev. Aug. 7, 2007), which is not officially published.    Therefore, in compliance with Cir. Rule 36-3(d), a true and correct copy of *Lyman* is attached hereto as Exhibit 4.

I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, that the foregoing is true and correct based upon my personal knowledge.

Executed on this 5th day of August, 2008.

_____
Suzanne L. Martin

Lewis and Roca LLP
993 Howard Hughes Parkway
Suit 600
Las Vegas, Nevada 89169

DECLARATION OF SUZANNE L. MARTIN
3

C08-01002 EDL
430795.1

# EXHIBIT 1

# AMERICAN ARBITRATION ASSOCIATION
## EMPLOYMENT ARBITRATION RULES
### DEMAND FOR ARBITRATION
#### (FOR USE ONLY IN CALIFORNIA)

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-877-528-0879, if you have any questions regarding the waiver of administrative fees.

*MEDIATION is a nonbinding process. The mediator assists the parties in working out a solution that is acceptable to them. If you would like the AAA to contact the other parties to determine whether they wish to mediate this matter, please check this box. ☐ There is no additional administrative fee for this service.*

| TO: Name Konami | Name of Representative (if known) Satoshi Sakamoto | Name of Firm (if applicable) |
|---|---|---|
| Address 585 Trade Center Dr | Representative's Address | |
| City Las Vegas  State NV  Zip Code 89119 | City  State  Zip Code | |
| Phone No. 866-544-7568  Fax No. 702-952-1596 | Phone No.  Fax No. | |

The named claimant, a party to an arbitration agreement or program which provides for arbitration under the Employment Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

**THE NATURE OF THE DISPUTE**

Claim over unpaid Travel Expenses, Severence Agreement and termination

**THE CLAIM OR RELIEF SOUGHT** (the amount, if any)

$69,000

**DOES THIS DISPUTE ARISE OUT OF AN EMPLOYMENT RELATIONSHIP?**    Yes ☒    No ☐

**WHAT WAS/IS THE EMPLOYEE'S ANNUAL WAGE RANGE?** Note: this question is required by California law.

☐ Less than $100,000    ☒ $100,000 - $250,000    ☐ Over $250,000

Claimant    ☒ Employee    ☐ Employer
Respondent    ☐ Employee    ☒ Employer

**HEARING LOCALE REQUESTED**

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association at its San Francisco office, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within ten days after notice from the AAA.

| Signature (may be signed by a representative) | Title | Date 6/9/07 |
|---|---|---|
| Name of Claimant Lou Ramondetta | Name of Representative | Name of Firm (if applicable) |
| Address (to be used in connection with this case) 2335 Stewart Ave | Representative's Address | |
| City Walnut Creek  State CA  Zip Code 94596 | City  State  Zip Code | |
| Phone No. 408-799-9269  Fax No. 925-945-1655 | Phone No.  Fax No. | |

TO BEGIN PROCEEDINGS, PLEASE SEND TWO COPIES OF THIS DEMAND AND **THE ARBITRATION AGREEMENT**, WITH THE FILING FEE AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL DEMAND TO THE RESPONDENT.

Form E2-01/03

# EXHIBIT 2



**LEWIS AND ROCA**
LLP
L A W Y E R S

Howard E. Cole
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

Direct Dial: (702) 949-8315
Direct Fax: (702) 949-8379
HCole@LRLaw.com
Admitted in: Nevada and California

Our File Number: 44973-00004

July 24, 2007

**<u>Via Facsimile and U.S. Mail</u>**

Michele Jackson
Intake Department
American Arbitration Association
6795 North Palm Avenue, 2nd Floor
Fresno, CA 93704

> **Re:** *Lucien Ramondetta v. Konami Gaming, Inc.*
> *AAA Case No.: 74 460 00962 07*

Dear Ms. Jackson:

This Firm represents Konami Gaming, Inc. ("KGI") with regard to the above-referenced matter and KGI has requested that I respond on its behalf. This letter will also serve to acknowledge receipt of your correspondence, dated July 17, 2007, sent via facsimile.

A copy of the Demand For Arbitration under the American Arbitration Association ("AAA") Employment Arbitration Rules (*For Use Only In California*) was previously received via facsimile from Mr. Ramondetta on or about July 10, 2007.

*Although the reasons will be detailed with specificity herein, Konami Gaming, Inc. ("KGI") does <u>not</u> consent to the AAA acting as the administering agency pursuant to the terms and applicable law detailed in the Demand For Arbitration.* <u>KGI cannot consent to the AAA serving as the administering agency for several compelling reasons including, without limitation, the underlying dispute is governed by Nevada law because the employment at issue was based in Nevada, California law referenced in the Demand For Arbitration does not apply to the instant dispute, and the proper venue for any arbitration is exclusively in Clark County, Nevada.</u> In accordance with applicable federal and Nevada case precedent, mandatory arbitration arises from the Offer Letter agreed upon and executed by the parties. A redacted copy of Mr. Ramondetta's Offer Letter is attached hereto for your review and consideration.

Please note the last paragraph on Page 1 of the Offer Letter. The offer of employment was not only contingent upon Mr. Ramondetta's relocation from California to Nevada; the financial details of the relocation were expressly detailed. Please also note the prospective duties of employment detailed on Page 2 of the Offer Letter, including: "…Immediate roles and responsibilities will include Konami Game Sales, Product Management, and Sales Administration. Upon successful demonstration to executive management that the game sales



group is performing per plan, your role will expand to taking on responsibility of the Konami Systems Sales group…" Given that the sales and marketing staff, product development group, and Systems Sales group, and his direct supervisor Mr. Sutherland were all located at the headquarters of KGI in Las Vegas, Nevada, it is both illogical and absurd for Mr. Ramondetta to apparently claim that California law governs this dispute as specified in the Demand for Arbitration. For him to do so, KGI maintains a good faith belief that Mr. Ramondetta must have made false statements and/or withheld material information in filing the Demand For Arbitration *For Use Only In California.*. It must be emphasized that KGI did not maintain or operate any offices in California at the time of his tenure of employment.

Mr. Ramondetta commenced employment with KGI on or about April 10, 2006. For the first couple of weeks of employment, Mr. Ramondetta traveled to gaming trade shows in Canada, Mississippi and participated in sales activities in states outside of Nevada and California. Thereafter, the services furnished by Mr. Ramondetta were entirely in Las Vegas, Nevada or at other trade shows and other sales related activities outside of California.

In or about early June, 2006, while again in travel status, Mr. Ramondetta had a telephone  conversation with a senior executive of KGI stating that he and his wife had decided against a permanent relocation to Nevada at that time. Frustrated by his continued delays and then refusal to relocate to Las Vegas, KGI reminded him of the express condition of employment that required him to be at the headquarters of KGI on a full-time, five day a week basis. Mr. Ramondetta had been commuting from California on Sunday nights or early Monday mornings to work at KGI in Las Vegas from Monday through Friday, inclusive, then flying back to California after close of the workday on Fridays. Although the company had given him the opportunity to commute on a *short-term* basis from California pursuant to Mr. Ramondetta's assertions that he was arranging for sale of his home, KGI would not countenance further delays of months or years for Mr. Ramondetta to commit to and complete the relocation.

Mr. Ramondetta thereafter attempted to *renegotiate* the terms of his employment to increase the amount of his reimbursement for travel from California to work in Nevada from Monday through Friday while reducing the "relocation" reimbursement. Considering this a subterfuge in his continued attempts to further delay a full-time relocation to Nevada, KGI did not agree to any such renegotiation, instead insisting that the terms of the offer letter dealing with relocation and attendant expenses continued in force and effect.

Given his refusal to permanently relocate together with other valid and compelling reasons justifying the discharge from employment including without limitation an informational report expressing concern by a gaming compliance investigator from the province of Ontario, Canada, KGI severed its employment relationship with Mr. Ramondetta. Given the highly regulated gaming industry in which KGI must comply with stringent compliance regulations, the



information imparted to KGI was of sufficient concern to constitute a material factor in the discharge of Mr. Ramondetta.

Should Mr. Ramondetta decide to pursue the arbitration asserting his specious claims for business expenses, severance pay and "termination," the proper jurisdiction for him to file is in the State of Nevada; the situs of his KGI employment, not the State of California. In or about July, 2006, Mr. Ramondetta filed a claim for unemployment benefits with the Employment Development Department ("EDD") of the State of California. At that time, KGI responded to the EDD that Mr. Ramondetta had never been an employee of KGI in the State of California. KGI was not informed about the disposition of that matter, except to state that at the time KGI did not have any state identification numbers or EDD accounts given that it was not an employer in the State of California during the relevant times of his tenure of employment. In addition, Mr. Ramondetta has recently filed a Claim with the Labor Commissioner of the State of California alleging nonpayment of business expenses totaling $5,000.00. KGI has analogously responded to the Labor Commissioner referencing the fact that the employment at issue occurred in Nevada.

It must be emphasized that the portion of the current dispute regarding "expenses" arises solely in the context of lodging and food expenses in Las Vegas, Nevada. Mr. Ramondetta had committed to relocate to Las Vegas, Nevada as a condition subsequent with his acceptance of employment by KGI. KGI advised Mr. Ramondetta that those expenses for lodging, food, et al. in Las Vegas would *not* be subject to reimbursement. KGI scrupulously reviewed all of Mr. Ramondetta's expense reports at the time of his discharge from employment. All legitimate business and travel expenses were tendered to Mr. Ramondetta at that time. It remains the position of KGI that Mr. Ramondetta was treated the same as every other Las Vegas employee; that is, the lodging, food and drink expenses of local employees is not a function of their business life but of their personal life. Mr. Ramondetta was not reimbursed for his living expenses in Las Vegas just as other Las Vegas employees were not reimbursed for theirs. The simple fact is that Mr. Ramondetta was treated as if he lived in Las Vegas as he had promised as a condition of initial employment. The $50,000 sign-on bonus (a bonus that Mr. Ramondetta has been permitted to keep despite only three months of employment tenure) together with the significant relocation incentive contained in his offer letter furnishes clear evidence that a Las Vegas domicile was the intent of the parties…an intent that Mr. Ramondetta failed and later refused to satisfy.

The Demand For Arbitration completed by Mr. Ramondetta is "For Use Only In California" according to its express designation. To reiterate, Mr. Ramondetta was never an employee of KGI in California. The position statement transmitted to the Employment Development Department of the State of California on July 31, 2006 in response to the Claimant's application for unemployment benefits stated, in pertinent part:

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

July 24, 2007
Page 4

"It is the position of KGI that Mr. Ramondetta has either made such false statements or withheld material information in filing for unemployment benefits with the EDD of the State of California. During his brief tenure of employment with KGI, Mr. Ramondetta was at all relevant times an employee of KGI, located in Las Vegas, Nevada. Mr. Ramondetta was never an employee of KGI in the State of California."

Mr. Ramondetta also submitted a Claim with the Labor Commissioner of the State of California for unpaid business expenses. KGI submitted its response to the Labor Commissioner on July 19, 2007 stating, in pertinent part:

"The offer of employment was not only contingent upon Mr. Ramondetta's relocation from California to Nevada; the financial details of the relocation were expressly delineated.

Please also note the prospective duties of employment detailed on Page 2 of the Offer Letter, including: "...Immediate roles and responsibilities will include Konami Game Sales, Product Management, and Sales Administration. Upon successful demonstration to executive management that the game sales group is performing per plan, your role will expand to taking on responsibility of the Konami Systems Sales group..."

Given his refusal to permanently relocate together with other valid and compelling reasons justifying the discharge from employment including without limitation an informational report expressing concern by a gaming compliance investigator from the province of Ontario, Canada, KGI severed its employment relationship with Mr. Ramondetta. Given the highly regulated gaming industry in which KGI must comply with stringent compliance regulations, the information imparted to KGI was of sufficient concern to constitute a material factor in the discharge of Mr. Ramondetta.

Should Mr. Ramondetta decide to pursue his specious claims for reimbursement of claimed business expenses, et al, the proper jurisdiction for him to file is in the State of Nevada; the situs of his KGI employment, not the State of California. The Offer Letter, dated March 16, 2006, to Mr. Ramondetta clearly specified that all disputes between the parties shall be resolved by binding arbitration. KGI is ready and willing to participate in an arbitration. However, as evidenced by the aforementioned responsive position statements, that arbitration must be conducted in the State of Nevada and governed by applicable Nevada law. If Mr. Ramondetta filed his Demand For Arbitration with a third party arbitration service in Las Vegas, Nevada, KGI would reconsider the instant response. Alternatively, if Mr. Ramondetta requested arbitration according to the court-annexed arbitration procedures of the Eighth Judicial District of the State of Nevada, KGI would voluntarily comply with its obligations.



Mr. Ramondetta has historically pursued a course of venue shopping with his filing for unemployment benefits in California, his Claim filed with the Labor Commissioner in California, and now the Demand For Arbitration under California law "For Use Only In California." KGI will continue to resist Mr. Ramondetta's unswerving efforts to engage in such forum shopping and reiterates its willingness to participate in the arbitration process in the State of Nevada.

Please contact the undersigned if you have any questions regarding the foregoing.

Respectfully,

*Howard E. Cole/lks*

Howard E. Cole

HEC/lks
Enclosure

77821 1

**EXHIBIT 3**



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Employment Arbitration Rules and Mediation PROCEDURES
Amended and Effective July 1, 2006
To view the summary of changes, click here.

Table of Contents

Introduction
Role of the American Arbitration Association
Legal Basis of Employment ADR
The Fairness Issue: The Due Process Protocol
AAA's Employment ADR Rules
AAA's Policy on Employment ADR
Notification
Costs of Employment Arbitration
Designing an ADR Program
Alternative Dispute Resolution Options
Types of Disputes Covered

Employment Arbitration Rules and Mediation Procedures
1. Applicable Rules of Arbitration
2. Notification
3. AAA as Administrator of the Arbitration
4. Initiation of Arbitration
5. Changes of Claim
6. Jurisdiction
7. Administrative and Mediation Conferences
8. Arbitration Management Conference
9. Discovery
10. Fixing of Locale
11. Date, Time, and Place of Hearing
12. Number, Qualifications, and Appointment of Neutral Arbitrators
13. Party Appointed Arbitrators
14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
15. Disclosure
16. Disqualification of Arbitrator
17. Communication with Arbitrator
18. Vacancies
19. Representation
20. Stenographic Record
21. Interpreters
22. Attendance at Hearings
23. Confidentiality
24. Postponements
25. Oaths

26. Majority Decision
27. Dispositive Motions
28. Order of Proceedings
29. Arbitration in the Absence of a Party or Representative
30. Evidence
31. Inspection
32. Interim Measures
33. Closing of Hearing
34. Reopening of Hearing
35. Waiver of Oral Hearing
36. Waiver of Objection/Lack of Compliance with These Rules
37. Extensions of Time
38. Serving of Notice
39. The Award
40. Modification of Award
41. Release of Documents for Judicial Proceedings
42. Applications to Court
43. Administrative Fees
44. Neutral Arbitrator's Compensation
45. Expenses
46. Deposits
47. Suspension for Non-Payment
48. Interpretation and Application of Rules


Costs of Arbitration (including AAA Administrative Fees)
For Disputes Arising Out of Employer-Promulgated Plans
Filing Fees
Hearing Fees
Postponement/Cancellation Fees
Hearing Room Rental
Abeyance Fees
Expenses


For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts


Filing Fees and Case Service Fees
Refund Schedule
Hearing Room Rental
Abeyance Fee
Expenses


For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules")


Optional Rules for Emergency Measures of Protection
O-1. Applicability
O-2. Appointment of Emergency Arbitrator
O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security

O-7. Special Master
O-8. Costs

Employment Mediation Procedures
1. Agreement of Parties
2. Initiation of Mediation
3. Request for Mediation
4. Appointment of Mediator
5. Qualifications of Mediator
6. Vacancies
7. Representation
8. Date, Time, and Place of Mediation
9. Identification of Matters in Dispute
10. Authority of Mediator
11. Privacy
12. Confidentiality
13. No Stenographic Record
14. Termination of Mediation
15. Exclusion of Liability
16. Interpretation and Application of Rules
17. Expenses
Mediation Fee Schedule

Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age, and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association as a resource in developing prompt and effective employment procedures for employment-related disputes. These rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections, and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA.

In addition, the AAA provides education and training, specialized publications, and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures,* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient and cost-effective procedures for out-of-court settlement of workplace disputes.

Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination -- in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In Gilmer v. Interstate/Johnson Lane, 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the Gilmer Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act. The specific issue left open by Gilmer was decided 10 years later by the United States Supreme Court in Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While Circuit City involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA.

The Fairness Issue: The Due Process Protocol

*The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The *Due Process Protocol,* which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The Due Process Protocol encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation

Service, the National Academy of Arbitrators, and the National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol.*

It has been incorporated into the *Report of the United States Secretary of Labor's Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

AAA's Employment ADR Rules

On June 1, 1996, the Association issued *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures* ). The rules reflected the guidelines outlined in the Due Process Protocol and were based upon the AAA's *California Employment Dispute Resolution Rules,* which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enabled parties to have complaints heard by an impartial person of their joint selection, with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules included procedures which ensure due process in both the mediation and arbitration of employment disputes. After a year of use, the rules were amended to address technical issues.

AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol.* If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol,* the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it shall, at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 725 South Figueroa Street, Suite 2400, Los Angeles, CA 90017; FAX: 213.622.6199.

Costs of Employment Arbitration

These Rules contain two separate and distinct arbitration costs sections; one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. When the arbitration is filed, the AAA makes an initial administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract. This determination is made by reviewing the

documentation provided to the AAA by the parties, including, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration section in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. The American Arbitration Association has considerable experience in administering and assisting in the design of employment ADR plans, which gives it an informed perspective on how to effectively design ADR systems, as well as the problems to avoid. Its guidance to those designing employment ADR systems is summarized as follows:

»The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom.

»A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review, and internal mediation.

»The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

»Programs which use arbitration as a final step may employ:

- pre-dispute, voluntary final and binding arbitration;
- pre-dispute, mandatory nonbinding arbitration;
- pre-dispute, mandatory final and binding arbitration; or
- post-dispute, voluntary final and binding arbitration.

»Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures.*

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide,* which is available from the AAA's website, www.adr.org.

Alternative Dispute Resolution Options

Open Door Policy

Employees are encouraged to meet with their immediate manager or supervisor to discuss problems

arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

Ombuds

A neutral third party (either from within or outside the company) is designated to confidentially investigate and propose settlement of employment complaints brought by employees.

Peer Review

A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

Internal Mediation

A process for resolving disputes in which a neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a nonbinding process in which the parties discuss their disputes with an impartial person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties.

Fact-Finding

The investigation of a complaint by an impartial third person (or team) who examines the complaint and the facts and issues a nonbinding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, composed of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

Arbitration

Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be the final step in a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step.

They include:

»Pre-Dispute, Voluntary Final and Binding Arbitration

- The parties agree in advance, on a voluntary basis, to use arbitration to resolve disputes and they are bound by the outcome.

»Pre-Dispute, Mandatory Nonbinding Arbitration

- The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

»Pre-Dispute, Mandatory Final and Binding Arbitration

- The parties must arbitrate unresolved disputes and they are bound by the outcome.

»Post-Dispute, Voluntary Final and Binding Arbitration

- The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

Types of Disputes Covered

The dispute resolution procedures contained in this booklet were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements or independent contractor agreements.

Employment Arbitration

Rules and Mediation Procedures

1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court. These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

* *The National Rules for the Resolution of Employment Disputes* have been re-named the *Employment Arbitration Rules and Mediation Procedures.* Any arbitration agreements providing for arbitration under its *National Rules for the Resolution of Employment Disputes* shall be administered pursuant to these *Employment Arbitration Rules and Mediation Procedures.*

2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

   i.  notify the Association of its intention to do so and,
   ii.  provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such

of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

## 4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

   a. The parties may submit a joint request for arbitration.
   b. In the absence of a joint request for arbitration:
      i. The initiating party (hereinafter "Claimant[s]") shall:
         1. File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.
         2. Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").
         3. Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.
      ii. The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.
      iii. The Respondent(s):
         1. May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.
         2. Simultaneously shall send a copy of any counterclaim to the Claimant.
         3. Shall include with its filing the applicable filing fee provided for by these rules.
      iv. The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.
   c. The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

   a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
   b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.
   c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to

consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no administrative fee for initiating a mediation under AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation

  i. the issues to be arbitrated;
  ii. the date, time, place, and estimated duration of the hearing;
  iii. the resolution of outstanding discovery issues and establishment of discovery parameters;
  iv. the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding;
  v. the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;
  vi. the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;
  vii. the value of bifurcating the arbitration into a liability phase and damages phase;
  viii. the need for a stenographic record;
  ix. whether the parties will summarize their arguments orally or in writing;
  x. the form of the award;
  xi. any other issues relating to the subject or conduct of the arbitration;
  xii. the allocation of attorney's fees and costs;
  xiii. the specification of undisclosed claims;
  xiv. the extent to which documentary evidence may be submitted at the hearing;
  xv. the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;
  xvi. any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer-promulgated plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

## 9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

## 10. Fixing of Locale (the city, county, state, territory, and/or country of the arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

## 11. Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

## 12. Number, Qualifications, and Appointment of Neutral Arbitrators

a. If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.
b. Qualifications
   i. Neutral arbitrators serving under these rules shall be experienced in the field of employment law.
   ii. Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.
   iii. The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.
   iv. The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.
c. If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:
   i. Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.
   ii. If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, to number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.
   iii. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

## 13. Party Appointed Arbitrators

a. If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.
b. Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.
c. If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.
d. If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

a. If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.
b. If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.
c. If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

## 15. Disclosure

a. Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.
b. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.
c. In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## 16. Disqualification of Arbitrator

a. Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:
   i. partiality or lack of independence,
   ii. inability or refusal to perform his or her duties with diligence and in good faith, and
   iii. any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.
b. Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## 17. Communication with Arbitrator

a. No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate ex parte with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.
b. Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

## 18. Vacancies

a. If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.
b. In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.
c. In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

## 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently. The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for

transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

## 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

## 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within

the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

## 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

## 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

## 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

## 38. Serving of Notice

   a. Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.
   b. The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.
   c. Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## 39. The Award

   a. The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.
   b. An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.
   c. The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.
   d. The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.
   e. If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.
   f. The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.
   g. The arbitrator's award shall be final and binding.

## 40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

## 41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

42. Applications to Court

a.  No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.
b.  Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.
c.  Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.
d.  Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration Section (see pages 45-53).

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at www.adr.org)

44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform

the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

Costs of Arbitration (including AAA Administrative Fees)

This Costs of Arbitration section contains two separate and distinct sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract.

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

For Disputes Arising Out of Employer-Promulgated Plans*:

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

*Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 877.528.0880 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)

(i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $150, is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $900 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $150, is

payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A nonrefundable fee in the amount of $1,775 is payable in full by the employer, unless the plan provides that the employer pay more.

There shall be no filing fee charged for a counterclaim.

(ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

(iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

(iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

(v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Commercial Fee Schedule, below, will apply to disputes arising out of individually-negotiable employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator

compensation is based on the most recent biography sent to the parties prior to appointment. Unless the parties agree otherwise, arbitrator compensation, and expenses as defined in section (v) below, shall be borne equally by the parties and are subject to reallocation by the arbitrator in the award.

(i) Filing Fees and Case Service Fees

An initial filing fee is payable in full by the filing party when a claim, counterclaim, or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

*\*\* This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.Fee Schedule for Claims in Excess of $10 MillionThe following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.*

Fee Schedulefor Claims in Excess of $10 Million

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing

date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee.

(ii) Refund Schedule

The AAA offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

»100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

»50% of the filing fee, in any case with filing fees in excess of $500, will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing. Where the filing fee is $500, the refund will be $200.

»25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: The date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

(iii) Hearing Room Rental

The fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the AAA for availability and rates.

(iv) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(v) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"):

The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules.

Optional Rules for Emergency Measures of Protection

O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

O-4. Interim Award If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed

incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration section.

Employment Mediation Procedures

1. Agreement of Parties

Whenever, by provision in an employment dispute resolution program, or by separate submission, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (hereinafter "AAA") or under these procedures, they shall be deemed to have made these procedures, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

2. Initiation of Mediation

Any party to an employment dispute may initiate mediation by filing with the AAA a submission to mediation or a written request for mediation pursuant to these procedures, together with the applicable administrative fee.

3. Request for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the AAA and one copy with every other party to the dispute.

4. Appointment of Mediator

Upon receipt of a request for mediation, the AAA shall send simultaneously to each party to the dispute an identical list of five (unless the AAA decides that a different number is appropriate) names of qualified mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement. If the parties are unable to agree upon an mediator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of a mediator to serve. If the parties fail to agree on any of the persons named, or if acceptable mediators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to appoint a qualified mediator to serve.

If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that

designation or method shall be followed.

5. Qualifications of Mediator

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the AAA shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the AAA will appoint another mediator. The AAA is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise.

7. Representation

Any party may be represented by a person of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

8. Date, Time, and Place of Mediation

The mediator shall fix the date, time, and place of each mediation session. The mediation shall be held at the appropriate regional office of the AAA, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

9. Identification of Matters in Dispute

At least 10 days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth its position with regard to the issues that need to be resolved. At the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented. The mediator may require any party to supplement such information.

10. Authority of Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice.

Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

11. Privacy

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by a mediator while serving in that capacity shall be confidential. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding:

a.  views expressed or suggestions made by another party with respect to a possible settlement of the dispute;
b.  admissions made by another party in the course of the mediation proceedings;
c.  proposals made or views expressed by the mediator; or
d.  the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

13. No Stenographic Record

There shall be no stenographic record of the mediation process.

14. Termination of Mediation

The mediation shall be terminated:

a.  by the execution of a settlement agreement by the parties;
b.  by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or
c.  by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

15. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation.

Neither the AAA nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these procedures.

16. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and

representatives of the AAA, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

Mediation Fee Schedule

The nonrefundable case set-up fee is $325

per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the AAA shall estimate anticipated total expenses. Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the AAA shall render an accounting and return any unexpendable balance to the parties.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

Search ⊗

Checkout ⊗

ABOUT US          DISPUTE RESOLUTION SERVICES          FILE A CASE          AAA UNIVERSITY          NEUTRALS

CONTACT US

PRINT VERSION

## Summary of Changes Employment Arbitration Rules and Mediation PROCEDURES
(formerly the National Rules for the Resolution of Employment Disputes)
Amended and Effective July 1, 2006

Over the past two years, the American Arbitration Association (AAA) undertook an extensive review of the National Rules for the Resolution of Employment Disputes. This was the first comprehensive review of these rules since their inception in 1996. Optional Rules for Emergency Measures of Protection have been added to these rules. Also, the Administrative Fee Schedule has been renamed the Costs of Arbitration (including AAA Administrative Fees) section. Finally, the rules have been renamed "Employment Arbitration Rules and Mediation Procedures." Below is a summary of the significant changes made to the rules.

Cost of Employment Arbitration

Section was added to provide guidance to users of how the AAA differentiates between employer-promulgated plans and individually negotiated contracts and agreements. Such a determination impacts the various costs and fees associated with a case.

Types of Disputes Covered

Section updated to clarify that these rules do not apply to disputes arising out of independent contractor agreements.

R-1. Applicable Rules of Arbitration

Language was added to require the party seeking a stay of arbitration to provide documentation that judicial intervention had been sought.

R-3. AAA as Administrator of the Arbitration

Rule was amended to allow the AAA to assign the administration of the arbitration to any of its offices.

R-4. Initiation of Arbitration

Subsection (b)(i)(1) rule was modified to provide that a demand for arbitration may be filed within the time limit established by the applicable statute of limitations. Subsections (b)(ii) and (b)(iv) now indicate that if the parties do not file an answering statement to a claim or counterclaim, the claim or counterclaim is deemed denied. Also, the failure to file the answering statement shall not delay the arbitration. Finally, the timeframe in which to file responses to the Demand, a counter claim, and a response to the counterclaim is now 15 days after the date of the AAA's letter acknowledging receipt of the filings.

R-5. Changes of Claim

If a change of claim is filed before the appointment of the arbitrator, the other party shall have 15 days from the date of transmittal to file an answer.

R-6. Jurisdiction

This is a new rule. The arbitrator may rule on his or her own jurisdiction including the existence, scope or validity of the arbitration agreement. The arbitrator may also determine the existence or validity of the contract which contains the arbitration agreement. A

determination that the contract is null and void does not itself invalidate the arbitration agreement. Finally, any objection to the jurisdiction of the arbitrator or the arbitrability of the claim or counterclaim must be made within the 15 day time period to file the answering statement.

R-7. Administrative and Mediation Conferences

Rule now provides that parties should provide written confirmation when agreeing to use the mediator as an arbitrator.

R-8. Arbitration Management Conference

The rule was revised to provide the Conference will be held via telephone conference unless the parties agree otherwise. Additional matters to be considered during the Conference have been added to the rule, including: the specification of undisclosed claims; the extent to which documentary evidence may be submitted at the hearing; the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by other means; and any disputes over the AAA's determination regarding whether the dispute arose from an individually negotiated employment agreement or an employer promulgated plan.

R-9. Discovery

A provision was added to the rule to clarify that parties do not need to notify the AAA of discovery communications unless a dispute arises. If disputes do arise, the AAA should be notified so that such dispute may be presented to the arbitrator for a determination.

R-10. Fixing of Locale (the city, county, state, territory and/or country of the arbitration)

The title of the rule was changed to clarify the difference between the "locale" of the hearing and the "location" of the hearing. The rule now allows the AAA to make an initial determination on the locale if the parties disagree, subject to the arbitrator making a final determination.

R-11. Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The title of the rule was changed to clarify the difference between the "locale" of the hearing and the "location" of the hearing. The rule requires parties to respond to requests for hearing dates in a timely matter, be cooperative in scheduling, and adhere to the established hearing schedule. The AAA will send notice of hearing at least 10 days prior to the hearing date unless the parties agree otherwise.

R-12. Number, Qualifications, and Appointment of Neutral Arbitrators

In subsection (a), disputes under these rules will be heard by one arbitrator, unless the parties agree otherwise or their arbitration agreement specifies a number of arbitrators. In subsection (b), the "Qualifications" section, previously contained in Rule 11 of the prior version of the Employment Arbitration Rules, was moved into this rule. Also, this subsection applies to "neutral" arbitrators. Finally, under subsection (c), the AAA now will initially provide parties with a list of names chosen from the Employment Dispute Resolution Roster shortly after it receives the Demand.

R-13. Party-Appointed Arbitrators

This new rule describes the process of appointing party appointed arbitrators. This rule also requires party-appointed arbitrators to meet impartiality and independence standards (delineated in R-16), unless the parties specifically agree otherwise.

R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

This new rule addresses the appointment of a chairperson by party-appointed arbitrators or the parties. The language comports with R-13 explained previously.

R-15. Disclosure

This new rule was previously a section of Rule 11 of the previous version of the Rules. The rule has been revised and expanded to (1) require all arbitrators to disclose circumstances likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence; (2) clarify that the disclosure obligation remains in effect throughout the arbitration; (3) confirm the AAA will forward any such disclosures to

the parties, and if appropriate to the arbitrators and others and; (4) explain that disclosures made pursuant to the rules are not to be construed as an indication that the arbitrator considers the disclosed circumstances likely to affect his or her impartiality or independence.

R-16. Disqualification of Arbitrator

This new rule was previously a section in Rule 11 of the previous version of the Rules. Additional language has been added to outline an arbitrator's responsibility to be impartial and independent, as well as grounds for disqualification. The rule also clarifies that if the parties agree in writing, that arbitrators directly appointed by the parties pursuant to R-13 need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence. Also, the AAA may now, "on its own initiative," disqualify an arbitrator.

R-17. Communication with Arbitrator

This new rule was previously a section in Rule 22 of the previous version of the Rules. The rule clarifies acceptable and unacceptable ex parte communication with arbitrators or candidates for arbitrator.

R-18. Vacancies

Language was added to provide that in the event a substitute arbitrator is appointed, the panel of arbitrators shall determine whether it is necessary to repeat all or part of any prior hearings.

R-25. Oaths

Oaths taken by the arbitrators will be provided to the parties prior to the first hearing.

R-27. Dispositive Motions

This new rule provides that under certain circumstances, the arbitrator may allow parties to file dispositive motions.

R-28. Order of Proceedings

A section allowing arbitrators to direct the order of proof, bifurcate proceedings and direct parties to focus on issues that could dispose of all or part of the case was moved from Rule 24 of the previous version of the Rules. Language was added to encourage the arbitrator to consider alternative means of presentation of evidence through a variety of technological means.

R-30. Evidence

Rule was clarified that "presence" for the presentation of evidence does not mandate that people must be physically present in the same location. Rule also provides for the process of submission of post-hearing evidence or documents.

R-31. Inspection

The investigation section of the prior version of this rule was removed. Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration.

R-32. Interim Measures

Clarifies that an arbitrator may grant any remedy or relief that would be available had the matter been heard in court. Also, provides that any request for interim measures made to a judicial authority is not incompatible with the agreement to arbitrate or deemed a waiver of the right to arbitrate.

R-34. Reopening of Hearing

Good cause must be shown to reopen a hearing.

R-35. Waiver of Oral Hearing

If procedures for the waiver of an oral hearing cannot be agreed to by the parties, the arbitrator shall specify a fair procedure.

R-36. Waiver of Objection/Lack of Compliance with These Rules

Rule provides that an objection may also be made in a transcribed record as well as in writing.

R-38. Serving of Notice

Clarifies how information, papers, notices, etc. shall be served by the parties, the arbitrator, and the AAA.

R-39. The Award

In subsection (a), three additional days are provided to render the award if briefs are filed or documents submitted after the hearing. Subsection (d) provides that the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, including attorney's fees and costs. The arbitrator may also assess arbitration fees in favor of a party subject to the limitations contained in the Costs of Arbitration section (see description below).

R-42. Applications to Court

Subsection (d) has been revised to clarify that parties have consented to relieve the AAA and arbitrators from any liability for any act or omission in connection with the arbitration under the rules.

R-43. Administrative Fees

AAA fees shall be paid in accordance with the Costs of Arbitration Section. Also, a footnote required by California law describing the availability of a waiver of arbitration fee costs for California consumer cases has been moved to the Employer-Promulgated Plan fee section.

R-44. Neutral Arbitrator's Compensation

The section was amended to provide that arbitrator compensation will be borne in accordance with the Costs of Arbitration section.

R-45. Expenses

The rule now provides that expenses will be borne in accordance with the Costs of Arbitration section.

R-47. Suspension for Non-Payment

This new rule provides the circumstances in which the AAA or the arbitrator may suspend the arbitration due to non-payment of arbitrator compensation or administrative charges.

Costs of Arbitration (including AAA Administrative Fees)

This section replaces the Administrative Fee Schedule section contained in the previous version of these Rules. This section breaks down all costs and fees associated with the arbitration and provides for how such costs and fees are to be borne by the parties. There are two separate and distinct costs sections, one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. As an introductory matter, the AAA makes an initial determination as to whether a dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract. If there are disputes about such determination, the issue can be raised to the arbitrator for a final decision.

For Disputes Arising Out of Employer-Promulgated Plans:

Employers shall pay arbitrator's compensation unless the employee agrees, post dispute, to voluntarily pay a portion of the arbitrator's compensation. In subsection (i), Filing Fees, the non-refundable filing fee for employees is capped at $150. For cases before a single arbitrator, the non-refundable filing fee for employers is $900. There is no filing fee charged for a counter claim. In subsection (v), Abeyance Fee, cases held in abeyance for a year are accessed a $300 annual abeyance fee. If the fee is not paid, the case will be administratively closed by the AAA. In section (vi), Expenses, all expenses of the arbitrator and the AAA shall be borne by the employer.

Finally, a footnote addressing fee waivers available to California consumers has been added to this section.

For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

Unless the parties agree otherwise, arbitrator compensation shall be borne equally by the parties and is subject to reallocation by the arbitrator in the award. In subsection (i) was renamed Filing Fees and Case Service Fees. In subsection (iv), Abeyance Fee, cases held in abeyance for a year are accessed a $300 annual abeyance fee. If the fee is not paid, the case will be administratively closed by the AAA. Finally, in section (v), Expenses, all expenses of the arbitrator and the AAA shall be borne equally by the parties.

OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION

This entire set of optional rules is new to the Employment Arbitration Rules. This provides a mechanism for parties either through their agreements, or post dispute, to have an expedited process to deal with time sensitive issues, prior to the actual arbitration taking place.

Employment Mediation Procedures

This section was renamed as a set of procedures.

M-4. Appointment if the Mediator

This procedure was revised to indicate the AAA will provide parties with lists of mediators from which to choose a mediator.

M-8. Date, Time, and Place of Mediation

Procedure revised to indicate the mediator will set the place of the mediation session.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.



FILE A CASE | CONTACT US |

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

.



**FMCS**                                                    close window ☒

What We Do / Arbitration / Arbitration Policies and Procedures

## Policies and Procedures (Effective December 27, 2005)

### Subpart A – Arbitration Policy: Administration of Roster

- 1404.1    Scope and authority
- 1404.2    Policy
- 1404.3    Administrative Responsibilities

### Subpart B – Roster of Arbitrators, Admissions and Retention

- 1404.4    Roster and Status of Members
- 1404.5    Listing on the Roster, Criteria for Listing and Removal, Procedure for Removal
- 1404.6    Inactive Status
- 1404.7    Listing Fee

### Subpart C – Procedures for Arbitration Services

- 1404.8    Freedom of Choice
- 1404.9    Procedures for Requesting Arbitration Lists and Panels
- 1404.10   Arbitrability
- 1404.11   Nomination of Arbitrators.
- 1404.12   Selection by Parties and Appointments of Arbitrators
- 1404.13   Conduct of Hearings
- 1404.14   Decision and Award
- 1404.15   Fees and Charges of Arbitrators
- 1404.16   Reports and Biographical Sketches

### Subpart D – Expedited Arbitration

- 1404.17   Policy
- 1404.18   Procedures for Requesting Expedited Panels
- 1404.19   Expedited Arbitration Process
- 1404.20   Proper Use of Expedited Arbitration

### Appendix – Schedule of Fees

Authority: 29 U.S.C. 172 and 29 U.S.C. 173 et seq.

### Subpart A -- Arbitration Policy: Administration of Roster

#### 1404.1 Scope and Authority

This chapter is issued by the Federal Mediation and Conciliation Service (FMCS) under Title II of the Labor Management Relations Act of 1947 (Pub L. 80-101) as amended. It applies to all arbitrators listed on the FMCS Roster of Arbitrators, to all applicants for listing on the Roster, and to all persons or parties seeking to obtain from FMCS either names or panels of names of arbitrators listed on the Roster in connection with disputes which are to be submitted to arbitration or fact-finding.

#### 1404.2 Policy

The labor policy of the United States promotes and encourages the use of voluntary arbitration to resolve disputes over the interpretation or application of collective bargaining agreements. Voluntary arbitration and fact-finding are important features of constructive employment relations as alternatives to economic strife.

## 1404.3 Administrative Responsibilities

(a) Director. The Director of FMCS has responsibility for all aspects of FMCS arbitration activities and is the final agency authority on all questions concerning the Roster and FMCS arbitration procedures.

(b) Office of Arbitration Services. The Office of Arbitration Services (OAS) maintains a Roster of Arbitrators (the Roster); administers Subpart C of this part (Procedures for Arbitration Services); assists, promotes, and cooperates in the establishment of programs for training and developing new arbitrators; and provides names or panels of names of listed arbitrators to parties requesting them.

(c) Arbitrator Review Board. The Arbitrator Review Board (Board) shall consist of a chairperson and members appointed by the Director who shall serve at the Director's pleasure.

(1) Duties of the Board. The Board shall:

(i) Review the qualifications of all applicants for listing on the Roster, interpreting and applying the criteria set forth in Section 1404.5;

(ii) Review the status of all persons whose continued eligibility for listing on the Roster has been questioned under subsection 1404.5;

(iii) Recommend to the Director the acceptance or rejection of applicants for listing on the Roster, or the withdrawal of listing on the Roster for any of the reasons set forth in this part;

(iv) At the request of the Director of FMCS, or upon its own volition, review arbitration policies and procedures, including all regulations and written guidance regarding the use of the FMCS arbitrators, and make recommendations regarding such policies and procedures to the Director; and

(v) Review the qualifications of all persons who request a review in anticipation of attending the FMCS-sponsored labor arbitrator training course, interpreting and applying the criteria set forth in Section 1404.5.

## Subpart B -- Roster of Arbitrators: Admission and Retention

## 1404.4    Roster and Status of Members

(a) The Roster. FMCS shall maintain a Roster of labor arbitrators consisting of persons who meet the criteria for listing contained in 1404.5 and who remain in good standing.

(b) Adherence of Standards and Requirements. Persons listed on the Roster shall comply with FMCS rules and regulations pertaining to arbitration and with such guidelines and procedures as may be issued by the OAS pursuant to Subpart C of this Part. Arbitrators shall conform to the ethical standards and procedures set forth in the Code of Professional Responsibility for Arbitrators of Labor Management Disputes, as approved by the National Academy of Arbitrators, Federal Mediation and Conciliation Service, and the American Arbitration Association (Code).

(c) *Status of Arbitrators.* Persons who are listed on the Roster and are selected or appointed to hear arbitration matters or to serve as factfinders do not become employees of the Federal Government by virtue of their selection or appointment. Following selection or appointment, the arbitrator's relationship is solely with the parties to the dispute, except that arbitrators are subject to certain reporting requirements and to standards of conduct as set forth in this Part.

(d) *Role of FMCS.* FMCS has no power to:

(i) Compel parties to appear before an arbitrator;

(ii) Enforce an agreement to arbitrate;

(iii) Compel parties to arbitrate any issue;

(iv) Influence, alter, or set aside decisions of arbitrators on the Roster;

(v) Compel, deny, or modify payment of compensation to an arbitrator.

(e) Nominations and Panels. On request of the parties to an agreement to arbitrate or engage in fact-finding, or where arbitration or fact-finding may be provided for by statute, OAS will provide names or panels of names for a fee. Procedures for obtaining these services are outlined in Subpart C of this Part. Neither the submission of a nomination or panel nor the appointment of an arbitrator constitutes a determination by FMCS that an agreement to arbitrate or enter fact-finding proceedings exists; nor does such action constitute a ruling that the matter in controversy is arbitrable under any agreement.

(f) *Rights of Persons Listed on the Roster.* No person shall have any right to be listed or to remain listed on the Roster. FMCS retains its authority and responsibility to assure that the needs of the parties using its services are served. To accomplish this purpose, FMCS may establish procedures for the preparation of panels or the appointment of arbitrators or factfinders which include consideration of such factors as background and experience, availability, acceptability, geographical location, and the expressed preferences of the parties. FMCS may also establish procedures for the removal from the Roster of those arbitrators who fail to adhere to provisions contained in this Part.

**1404.5  Listing on the Roster, Criteria for Listing and Removal, Procedure for Removal**

Persons seeking to be listed on the Roster must complete and submit an application form that may be obtained from OAS. Upon receipt of an executed application, OAS will review the application, assure that it is complete, make such inquiries as are necessary, and submit the application to the Board. The Board will review the completed application under the criteria in paragraphs (a), (b), and (c) of this Section, and will forward to the FMCS Director its recommendation as to whether or not the applicant meets the criteria for listing on the Roster. The Director shall make all final decisions as to whether an applicant may be listed on the Roster. Each applicant shall be notified in writing of the Director's decision and the reasons therefore.

(a)      Applicants will be listed on the Roster upon a determination that he or she:

(1)  Is experienced, competent and acceptable in decision-making roles in the resolution of labor relations disputes; or

(2) Has extensive and recent experience in relevant positions in collective bargaining; and

(3) Is capable of conducting an orderly hearing, can analyze testimony and exhibits and can prepare clear and concise findings and awards within reasonable time limits.

(4) For applicants who are governmental employees, the following criteria shall also apply:

Federal Employees: These applicants must provide the OAS with written permission from their employer to work as an arbitrator. Federal employees will not be assigned to panels involving the Federal Government or its contracts.

Governmental Employees other than Federal: These applicants must provide the OAS with written permission from their employer to work as an arbitrator as well as a statement of the jurisdiction(s) in which the applicant is not permitted to perform this work.

FMCS may identify certain positions relating to collective bargaining that will substitute for the General Criteria. FMCS may also identify periodic educational requirements for remaining on the Roster.

(b) Proof of Qualification. The qualifications listed in (a) above are preferably demonstrated by the submission of five recent arbitration awards prepared by the applicant while serving as an impartial arbitrator of record chosen by the parties to labor relations disputes arising under collective bargaining agreements, or the successful completion of the FMCS labor arbitrator training course within the five years immediately preceding the date of application plus two awards as described above, and the submission of information demonstrating extensive and recent experience in collective bargaining, including at least the position or title held, duties or responsibilities, the name and location of the company or organization, and the dates of employment.

(c) Advocacy. Any person who at the time of application is an advocate as defined in paragraph (c)(1) of this Section, must agree to cease such activity before being recommended for listing on the Roster by the Board. Except in the case of persons listed on the Roster as advocates before November 17, 1976, any person who did not divulge his or her advocacy at the time of listing or who becomes an advocate while listed on the Roster and who did not request to be placed on inactive status pursuant to Section 1404.6 prior to becoming an advocate, shall be recommended for removal by the Board after the fact of advocacy is revealed.

(1) Definition of Advocacy. An advocate is a person who represents employers, labor organizations, or individuals as an employee, attorney, or consultant, in matters of labor relations or employment relations, including but not limited to the subjects of union representation and recognition matters, collective bargaining, arbitration, unfair labor practices, equal employment opportunity, and other areas generally recognized as constituting labor or employment relations. The definition includes representatives of employers or employees in individual cases or controversies involving worker's compensation, occupational health or safety, minimum wage, or other labor standards matters.

(2) This definition of advocate also includes a person who is directly or indirectly associated with an advocate in a business or professional relationship as, for example, partners or employees of a law firm. Individuals engaged only in joint education or training or other non-adversarial activities will not be deemed as advocates.

(d) Listing on Roster, Removal. Listing on the Roster shall be by decision of the Director of FMCS based upon the recommendations of the Board or upon the Director's own initiative. The Board may recommend for removal, and the Director may remove, any person listed on the Roster, for violation of this Part and/or the Code. The reasons for removal include whenever a member of the Roster:

(1) No longer meets the criteria for admission;

(2) Has become an advocate as defined in paragraph (c) of this section;

(3) Has been repeatedly or flagrantly delinquent in submitting awards;

(4) Has refused to make reasonable and periodic reports in a timely manner to FMCS, as required in Subpart C of this Part, concerning activities pertaining to arbitration;

(5) Has been the subject of a complaint by parties who use FMCS services and the Board, after appropriate inquiry, concludes that cause for removal has been shown;

(6) Is determined to be unacceptable to the parties who use FMCS arbitration services. Such a determination of unacceptability may be based on FMCS records which show the number of times the arbitrator's name has been proposed to the parties and the number of times he or she has been selected. Such cases will be reviewed for extenuating circumstances, such as length of time on the Roster or prior history;

(7) Has been in an inactive status pursuant to Section 1404.6 for longer than two years and has not paid the annual listing fee.

(e) Procedure for Removal. Prior to any recommendation by the Board to remove an arbitrator from the Roster, the Board shall conduct an inquiry into the facts of any such recommended removal. When the Board recommends removal of an arbitrator, it shall send the arbitrator a written notice. This notice shall inform the arbitrator of the Board's recommendation and the basis for it, and that he or she has 60 days from the date of such notice to submit a written response or information showing why the arbitrator should not be removed. When the Director removes an arbitrator from the Roster, he or she shall inform the arbitrator of this in writing, stating the effective date of the removal and the length of time of the removal if it is not indefinite. An arbitrator so removed may seek reinstatement to the Roster by making written application to the Director no earlier than two years after the effective date of his or her removal.

(f) Suspension. The director of OAS may suspend for a period not to exceed 180 days any person listed on the Roster who has violated any of the criteria in paragraph (d) of this section. Arbitrators shall be promptly notified of a suspension. The arbitrator may appeal a suspension to the Board, which shall make a recommendation to the Director of FMCS. The decision of the Director of FMCS shall constitute the final action of the agency.

**1404.6   Inactive Status**

A member of the Roster who continues to meet the criteria for listing on the Roster may request that he or she be put in an inactive status on a temporary basis because of ill health, vacation, schedule, or other reasons. If the inactive status lasts longer than two (2) years and the arbitrator has not paid the annual listing fee, the arbitrator will then be removed from the Roster.

**1404.7      Listing Fee**

All arbitrators will be required to pay an annual fee for listing on the Roster
as set forth in the Appendix to this Part.

**Subpart C -- Procedures for Arbitration Services**

**1404.8      Freedom of Choice**

Nothing contained in this Part should be construed to limit the rights of
parties who use FMCS arbitration services to jointly select any arbitrator or
arbitration procedure acceptable to them. Once a request is made to OAS,
all parties are subject to the procedures contained in this Part.

**1404.9    Procedures for Requesting Arbitration Lists and Panels**

(a) The Office of Arbitration Services (OAS) has been delegated the
responsibility for administering all requests for arbitration services.
Requests should be addressed to the Federal Mediation and Conciliation
Service, Office of Arbitration Services, 2100 K Street, N.W., Washington,
DC 20427.

(b) The OAS will refer a panel of arbitrators to the parties upon request.
The parties are encouraged to make joint requests. In the event, however,
that the request is made by only one party, the OAS will submit a panel of
arbitrators. However, the issuance of a panel -- pursuant to either joint or
unilateral request -- is nothing more than a response to a request. It does
not signify the adoption of any position by the FMCS regarding the
arbitrability of any dispute or the terms of the parties' contract.

(c) As an alternative to a request for a panel of names, OAS will, upon
written request, submit a list of all arbitrators and their biographical
sketches from a designated geographical area. The parties may then
select and deal directly with an arbitrator of their choice, with no further
involvement of FMCS with the parties or the arbitrator. The parties may
also request FMCS to make a direct appointment of their selection. In
such a situation, a case number will be assigned.

(d) The OAS reserves the right to decline to submit a panel or make
appointments of arbitrators, if the request submitted is overly burdensome
or otherwise impracticable. The OAS, in such circumstances, may refer
the parties to an FMCS mediator to help in the design of an alternative
solution. The OAS may also decline to service any requests from parties
for non-payment of arbitrator fees or other behavior which constrains the
spirit or operation of the arbitration process.

(e) The parties are required to use the Request for Arbitration Panel (Form
R-43), which has been prepared by the OAS and is available upon request
to the Federal Mediation and Conciliation Service, Office of Arbitration
Services, Washington, DC 20427, or by calling (202) 606-5111. Form R-
43 is also available on the FMCS internet web site, www.fmcs.gov.
Requests that do not contain all required information requested on Form R-
43 in typewritten form or legible handwriting may be rejected.

(f) Parties may submit requests for any standard geographical arbitration
panels electronically by accessing the agency's internet web site,
www.fmcs.gov, and receive panels via e-mail, fax or mail. Panel requests
that contain certain special requirements may not be processed via the
agency's internet system. Parties must provide all required information and
must pay the cost of such panels using methods of payment that are
accepted by the agency.

(g) Requests made by only one party, for a service other than the

furnishing of a standard list or panel of seven (7) arbitrators, will not be honored unless authorized by the applicable collective bargaining agreement or certified in writing that both parties agree. This includes unilateral requests for a second or third panel or for a direct appointment of an arbitrator.

(h) The OAS will charge a fee for all requests for lists, panels, and other major services. Payments for these services must be received with the request for services before the service is delivered and may be paid by either labor or management or both. A schedule of fees is listed in the Appendix to this part.

## 1404.10  Arbitrability

The OAS will not decide the merits of a claim by either party that a dispute is not subject to arbitration.

## 1404.11 Nominations of Arbitrators

(a)  The parties may also request a randomly selected panel containing the names of seven (7) arbitrators accompanied by a biographical sketch for each member of the panel. This sketch states the background, qualifications, experience, and all fees as furnished to the OAS by the arbitrator. Requests for a panel of seven (7) arbitrators, whether joint or unilateral, will be honored. Requests for a panel of other than seven (7) names, for a direct appointment of an arbitrator, for special qualifications or other service will not be honored unless jointly submitted or authorized by the applicable collective bargaining agreement. Alternatively, the parties may request a list and biographical sketches of some or all arbitrators in one or more designated geographical areas. If the parties can agree on the selection of an arbitrator, they may appoint their own arbitrator directly without any further case tracking by FMCS. No case number will be assigned.

(b) All panels submitted to the parties by the OAS, and all letters issued by the OAS making a direct appointment, will have an assigned FMCS case number. All future communications between the parties and the OAS should refer to this case number.

(c) The OAS will provide a randomly selected panel of arbitrators located in geographical areas in proximity of the hearing site. The parties may request special qualifications of arbitrators experienced in certain issues or industries or that possess certain backgrounds. The OAS has no obligation to put an individual on any given panel or on a minimum number of panels in any fixed period. In general:

(1) The geographic location of arbitrators placed on panels is governed by the site of the dispute as stated on the request received by the OAS.

(2) If at any time both parties request that a name or names be included, or omitted, from a panel, such name or names will be included, or omitted, unless the number of names is excessive. These inclusions/exclusions may not discriminate against anyone because of age, race, gender, national origin, disability, or religion.

(d) If the parties do not agree on an arbitrator from the first panel, the OAS will furnish second and third panels to the parties upon joint request, or upon a unilateral request if authorized by the applicable collective bargaining agreement, and payment of additional fees. Requests for second or third panels should be accompanied by a brief explanation as to why the previous panel(s) was inadequate. In addition, if parties are unable to agree on a selection after having received three panels, the OAS will make a direct appointment upon joint request.

**1404.12   Selection by Parties and Appointments of Arbitrators**

(a) After receiving a panel of names, the parties must notify the OAS of their selection of an arbitrator or of the decision not to proceed with arbitration.  Upon notification of the selection of an arbitrator, the OAS will make a formal appointment of the arbitrator.  The arbitrator, upon notification of appointment, shall communicate with the parties within 14 days to arrange for preliminary matters, such as the date and place of hearing. Should an arbitrator be notified directly by the parties that he or she has been selected, the arbitrator must promptly notify the OAS of the selection and his or her willingness to serve.  If the parties settle a case prior to the hearing, the parties must inform the arbitrator as well as the OAS.  Consistent failure to follow these procedures may lead to a denial of future OAS service.

(b) If the parties request a list of names and biographical sketches rather than a panel, they may choose to appoint and contact an arbitrator directly.  In this situation, neither the parties nor the arbitrator is required to furnish any additional information to FMCS and no case number will be assigned.

(c)  Where the parties' collective bargaining agreement is silent on the manner of selecting arbitrators, the parties may wish to consider any jointly determined or one of the following methods for selection of an arbitrator from a panel:

(1) Each party alternately strikes a name from the submitted panel until one remains, or

(2) Each party advises the OAS of its order of preference by numbering each name on the panel and submitting the numbered lists in writing to the OAS.  The name that has the lowest combined number will be appointed.

(3) In those situations where the parties separately notify the OAS of their preferred selections, once the OAS receives the preferred selection from one party, it will notify the other party that it has fourteen (14) days in which to submit its selections.  If that party fails to respond within the deadline, the first party's choice will be honored if permitted under the parties' collective bargaining agreement.  If, within 14 days, a second panel is requested and is allowed by the collective bargaining agreement, the requesting party must pay a fee for the second panel.

(d) The OAS will make a direct appointment of an arbitrator only upon joint request unless authorized by the applicable collective bargaining agreement.

(e)  The issuance of a panel of names or a direct appointment in no way signifies a determination of arbitrability or an interpretation of the terms and conditions of the collective bargaining agreement.  The resolution of such disputes rests solely with the parties.

**1404.13   Conduct of Hearings**

All proceedings conducted by the arbitrators shall be in conformity with the contractual obligations of the parties.  The arbitrator shall comply with 1404.4(b).  The conduct of the arbitration proceeding is under the arbitrator's jurisdiction and control, and the arbitrator's decision shall be based upon the evidence and testimony presented at the hearing or otherwise incorporated in the record of the proceeding.  The arbitrator may, unless prohibited by law, proceed in the absence of any party who, after due notice, fails to be present or to obtain a postponement.  An award rendered in an ex parte proceeding of this nature must be based upon

evidence presented to the arbitrator.

**1404.14   Decision and Award**

(a) Arbitrators shall make awards no later than 60 days from the date of the closing of the record as determined by the arbitrator, unless otherwise agreed upon by the parties or specified by the collective bargaining agreement or law.  However, failure to meet the 60-day deadline will not invalidate the process or award.  A failure to render timely awards reflects upon the performance of an arbitrator and may lead to removal from the Roster.

(b) The parties should inform the OAS whenever a decision is unduly delayed.  The arbitrator shall notify the OAS if and when the arbitrator (1) cannot schedule, hear, and render decisions promptly, or (2) learns a dispute has been settled by the parties prior to the decision.

(c) Within 15 days after an award has been submitted to the parties, the arbitrator shall submit an Arbitrator's Report and Fee Statement (Form R-19) to OAS showing a breakdown of the fee and expense charges for use in the event the OAS decides to review conformance with the basis for the arbitrator's fees and expenses as stated in the biographical sketch.

(d) While FMCS encourages the publication of arbitration awards, arbitrators should not publicize if objected to by one of the parties.

**1404.15   Fees and Charges of Arbitrators**

(a) Fees to Parties.  Prior to appointment, the parties should be aware of all significant aspects of the bases for an arbitrator's fees and expenses. Each arbitrator's biographical sketch shall include a statement of the bases for the arbitrator's fees and expenses, which shall conform to this Part and the Code.  The parties and the arbitrator shall be bound by the arbitrator's statement of the bases for fees and expenses in the biographical sketch unless they mutually agree otherwise in writing.  Arbitrators listed on the Roster may change the bases for their fees and expenses if they provide them in writing to OAS at least 30 days in advance.

(b) Dual Addresses.  Arbitrators with dual business addresses must bill the parties for expenses from the lesser expensive business address to the hearing site.

(c) Additional Administrative Fee.  In cases involving unusual amounts of time and expense relative to the pre-hearing and post-hearing administration of a particular case, the arbitrator may charge an administrative fee.  This fee shall be disclosed to the parties as soon as it is foreseeable by the arbitrator.

(d) Fee Disputes.  The OAS requests that it be notified of an arbitrator's deviation from this Part.  While the OAS does not resolve individual fee disputes, repeated complaints concerning the fees charged by an arbitrator will be brought to the attention of the Board for consideration.  Similarly, complaints by arbitrators concerning non-payment of fees by the parties may lead to the denial of services or other actions by the OAS.

**1404.16   Reports and Biographical Sketches**

(a) Arbitrators listed on the Roster shall execute and return all documents, forms and reports required by the OAS.  They shall also keep the OAS informed of changes of address, telephone number, availability, and of any business or other connection or relationship which involves labor-management relations or which creates or gives the appearance of advocacy as defined in Section 1404.5 (c) (1).

(b) The OAS will provide parties with biographical sketches for each arbitrator on the Roster from information supplied by the arbitrator in conformance with this Section and Section 1404.15. The OAS reserves the right to decide and approve the format and content of biographical sketches.

**Subpart D -- Expedited Arbitration**

**1404.17  Policy**

In an effort to reduce the time and expense of some grievance arbitrations, FMCS offers expedited procedures that may be appropriate in certain non-precedential cases or those that do not involve complex or unique issues. Expedited arbitration is intended to be a mutually agreed-upon process whereby arbitrator appointments, hearings and awards are acted upon quickly by the parties, FMCS, and the arbitrators. Mandating short deadlines and eliminating requirements for transcripts, briefs and lengthy opinions streamlines the process.

**1404.18   Procedures for Requesting Expedited Panels**

(a) With the exception of the specific changes noted in this Subpart, all FMCS rules and regulations governing its arbitration services shall apply to expedited arbitration.

(b)  Upon receipt of a joint Request for Arbitration Panel (Form R-43) indicating that both parties desire expedited arbitration, the OAS will refer a panel of arbitrators.

(c) A panel of arbitrators submitted by the OAS in expedited cases shall be valid for up to 30 days.  Only one panel will be submitted per case.  If the parties are unable to mutually agree upon an arbitrator or if prioritized selections are not received from both parties within 30 days, the OAS will make a direct appointment of an arbitrator not on the original panel.

(d) If the parties mutually select an arbitrator but the arbitrator is not available, the parties may select a second name from the same panel or the OAS will make a direct appointment of another arbitrator not listed on the original panel.

**1404.19   Expedited Arbitration Process**

(a) Once notified of the expedited case appointment by the OAS, the arbitrator must contact the parties within seven (7) calendar days.

(b) The parties and the arbitrator must attempt to schedule a hearing within thirty (30) days of the appointment date.

(c) Absent mutual agreement, all hearings will be concluded within one day.  No transcripts of the proceedings will be made and the filing of post-hearing briefs will not be allowed.

(d) All awards must be completed within seven (7) working days after the hearing.  These awards are expected to be brief, concise, and not require extensive written opinion or research time.

**1404.20   Proper Use of Expedited Arbitration**

(a) FMCS reserves the right to cease honoring requests for expedited arbitration if a pattern of misuse of this process becomes apparent.  The parties' frequent delaying of the process or referral of inappropriate cases

may indicate misuse.

(b) Arbitrators who exhibit a pattern of unavailability for appointments or who are repeatedly unable to schedule hearings or render awards within established deadlines will, after written warning, be considered ineligible for appointment for this service.

**Appendix Schedule of Fees**

Annual listing fee for all arbitrators: $100 for the first address: $50 for the second address

Request for panel of arbitrators processed by FMCS staff; $50

Request for panel or arbitrators processed on-line: $30.00

Direct appointment of an arbitrator when a panel is not used: $20 per appointment

List and biographical sketches in a specific area; $25 per request plus $.25 per page



# Court Annexed Arbitration Program

### Steps to join Arbitrator program

(1)   Applicant must meet the qualifications as defined in Nevada Arbitration Rule 7. (attached)

(2)   Applicant must complete and submit to the Supreme Court of Nevada Clerk's Office located at 201 South Carson Street, Carson City, Nevada 89701 an Arbitrator Application. (attached)

(3)   Applicant must complete the mandatory Arbitrator Training Course presented by the State Bar of Nevada.
<u>Next Class dates:</u> (*Note: Classes offered in December of odd numbered years only.)

The next Arbitrator Training Class is scheduled for:

Reno: Wednesday, December 5, 2007 – Northern Nevada Bar Center
Las Vegas: Tuesday, December 4, 2007 – Mandalay Bay

Sate Bar of Nevada
600 E Charleston Blvd
Las Vegas, NV  89104
TEL (702) 382-2200  FAX (702) 385-2878

# RULES GOVERNING ALTERNATIVE DISPUTE RESOLUTION

## A.    GENERAL PROVISIONS

**Rule 1.**                **Definitions.  As used in these rules:**

(A)    "Arbitration" means a process whereby a neutral third person, called an arbitrator, considers the facts and arguments presented by the parties and renders a decision, which may be binding or nonbinding as provided in these rules.

(B)    "Mediation" means a process whereby a neutral third person, called a mediator, acts to encourage and facilitate the resolution of a dispute between two or more parties.  It is an informal and nonadversarial process with the objective of helping the disputing parties reach a mutually acceptable and voluntary agreement.  In mediation, decision-making authority rests with the parties.  The role of the mediator includes, but is not limited to, assisting the parties in identifying issues, fostering joint problem solving, and exploring settlement alternatives.

(C)    "Settlement conference" is a process whereby, with the approval of the district judge to whom the case is assigned, a district court judge not assigned to the particular case, senior judge, special master, referee or other neutral third person, conducts, in the presence of the parties and their attorneys and person or persons with authority to resolve the matter, a conference for the purpose of facilitating settlement of the case.

**Rule 2.**                **Forms of court annexed alternative dispute resolution.**

(A)    For certain civil cases commenced in judicial districts that include a county whose population is 100,000 or more, there shall be made available the following forms of court annexed alternative dispute resolution:

(1)    Arbitration, pursuant to Subpart B of these rules;
(2)    Mediation, pursuant to Subpart C of these rules;
(3)    Settlement conference, as provided herein; and
(4)    Such other alternative dispute resolution mechanisms contemplated by NRS 38.250 as may from time to time be promulgated.

(B)    Judicial districts having a lesser population may adopt local rules implementing all or part of these forms of alternative dispute resolution.

(C)    Each district may appoint an alternative dispute resolution commissioner to serve at the pleasure of the court.  The alternative dispute resolution commissioner (hereafter the commissioner) may be an arbitration commissioner, discovery commissioner, short trial commissioner, other special master, or any qualified and licensed Nevada attorney appointed by the court.  The appointment shall be made in accordance with local rules.  The commissioner so appointed shall have the responsibilities and powers conferred by these Alternative Dispute Resolution Rules and any local rules.

2

## B.    NEVADA ARBITRATION RULES

**Rule 1.        The court annexed arbitration program.**

The Court Annexed Arbitration Program (the program) is a mandatory, non-binding arbitration program, as hereinafter described, for certain civil cases commenced in judicial districts that include a county whose population is 100,000 or more.  Judicial districts having a lesser population may adopt local rules implementing all or part of the program.

**Rule 2.        Intent of program and application of rules.**

(A)    The purpose of the program is to provide a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters.

(B)    These rules shall apply to all arbitration proceedings commenced in the program.

(C)    These arbitration rules are not intended, nor should they be construed, to address every issue which may arise during the arbitration process.  The intent of these rules is to give considerable discretion to the arbitrator, the commissioner and the district judge.  Arbitration hearings are intended to be informal, expeditious and consistent with the purposes and intent of these rules.

(D)    These rules may be known and cited as the Nevada Arbitration Rules, or abbreviated N.A.R.

**Rule 3.        Matters subject to arbitration.**

(A)    All civil cases commenced in the district courts that have a probable jury award value not in excess of $50,000 per plaintiff, exclusive of interest and costs, and regardless of comparative liability, are subject to the program, except class actions, appeals from courts of limited jurisdiction, probate actions, divorce and other domestic relations actions, actions seeking judicial review of administrative decisions, actions concerning title to real estate, actions for declaratory relief, actions governed by the provisions of NRS 41A.003 to 41A.069, inclusive, actions presenting significant issues of public policy, actions in which the parties have agreed in writing to submit the controversy to arbitration or other alternative dispute resolution method prior to the accrual of the cause of action, actions seeking equitable or extraordinary relief, actions that present unusual circumstances that constitute good cause for removal from the program, actions in which any of the parties is incarcerated and actions utilizing mediation pursuant to Subpart C of these rules.

(B)    Any civil case, regardless of the monetary value, the amount in controversy, or the relief sought, may be submitted to the program upon the agreement of all parties and the approval of the district judge to whom the case is assigned.

3

(C)    While a case is in the program, the parties may, with the approval of the district judge to whom the case is assigned, stipulate, or the court may order that a settlement conference, mediation proceeding, or other appropriate settlement technique be conducted by another district judge, a senior judge, or a special master. The settlement procedure conducted pursuant to this subdivision will extend by no more than 30 days the timetable set forth in these rules for resolving cases in the program.

(D)    Parties to cases submitted or ordered to the program may agree at any time to be bound by an arbitration ruling or award. If the parties agree to be bound by the decision of the arbitrator, the procedures set forth in these rules governing trials de novo will not apply to the case. The parties may, however, either confirm, vacate or modify the decision of the arbitrator in the manner authorized by NRS 38.135, 38.145 and 38.155.

(E)    In cases where any party's claim qualifies for exemption, any other party's claim, though suitable for arbitration, may be included with the exempt claims in the district court action for the convenience of the litigants, if the party with the claim qualified for arbitration so requests.

**Rule 4.    Relationship to district court jurisdiction and rules.**

(A)    Cases filed in the district court shall remain under the jurisdiction of that court for all phases of the proceedings, including arbitration.

(B)    The district court having jurisdiction over a case has the authority to act on or interpret these rules.

(C)    Before a case is submitted or ordered to the program, and after a request for trial de novo is filed, and except as hereinafter stated, all applicable rules of the district court, the Nevada Short Trial Rules, and the Nevada Rules of Civil Procedure apply. After a case is submitted or ordered to the program, and before a request for trial de novo is filed, or until the case is removed from the program, these rules apply. Except as stated elsewhere herein, once a case is accepted or remanded into the program, the requirements of N.R.C.P. 16.1 do not apply.

(D)    The calculation of time and the requirements of service of pleadings and documents under these rules are the same as under the Nevada Rules of Civil Procedure. The commissioner or the commissioner's designee shall serve all rulings of the commissioner on any matter as defined in N.R.C.P. 5(b); additionally, in the Eighth Judicial District, service may also be made by the commissioner's designee placing the ruling or other communication in the attorney's folder in the clerk's office. Whenever a party is required or permitted to do an act within a prescribed period after service of a ruling by mail or by placement in the attorney's folder, 3 days shall be added to the prescribed period.

4

(E)     During the pendency of arbitration proceedings conducted pursuant to these rules, no motion may be filed in the district court by any party, except motions that are dispositive of the action, or any portion thereof, motions to amend, consolidate, withdraw, intervene, or motions made pursuant to Rule 3(C), requesting a settlement conference, mediation proceeding or other appropriate settlement technique. Any of the foregoing motions must be filed no later than 45 days prior to the arbitration hearing, or said motion may be foreclosed by the judge and/or sanctions may be imposed. A copy of all motions and orders resulting therefrom shall be served upon the arbitrator.

(F)     Once a case is submitted or ordered to the program all parties subsequently joined in the action shall be parties to the arbitration unless dismissed by the district judge to whom the case is assigned.

(G)     Except as otherwise provided in these rules, all disputed issues arising under these rules must be resolved in the manner set forth in Rule 8(B).

## Rule 5.          Exemptions from arbitration.

(A)     A party claiming an exemption from the program pursuant to Rule 3(A) on grounds other than the amount in controversy, the presentation of significant issues of public policy, or the presentation of unusual circumstances that constitute good cause for removal from the program will not be required to file a request for exemption if the initial pleading specifically designates the category of claimed exemption in the caption. Otherwise, if a party believes that a case should not be in the program, that party must file with the commissioner a request to exempt the case from the program and serve the request on any party who has appeared in the action. The request for exemption must be filed within 20 days after the filing of an answer by the first answering defendant, and the party requesting the exemption must certify that his or her case is included in one of the categories of exempt cases listed in Rule 3. The request for exemption must also include a summary of facts which supports the party's contentions. For good cause shown, an appropriate case may be removed from the program upon the filing of an untimely request for exemption; however, such filing may subject the requesting party to sanctions by the commissioner.

(B)     Any opposition to a request for exemption from arbitration must be filed with the commissioner and served upon all appearing parties within 5 days of service of the request for exemption.

(C)     The parties may file a joint request for exemption.

(D)     Where requests for exemptions from arbitration are filed, the commissioner shall review the contentions, facts and evidence available and determine whether an exemption is warranted. The commissioner may require that a party submit additional facts supporting the party's contentions. Any objection(s) to the commissioner's decision must be filed with the commissioner who shall then notify the district judge to whom the case is assigned. Objections must be filed within 5 days of the date the commissioner's decision is served, with service to all parties.

(E)    The district judge to whom a case is assigned shall make all final determinations regarding the arbitrability of a case and may hold a hearing on the issue of arbitrability, if necessary. The district judge's determination of such an issue is not reviewable.

(F)    The district judge to whom a case is assigned may impose any sanction authorized by N.R.C.P. 11 against any party who without good cause or justification attempts to remove a case from the program.

(G)    Any party to any action has standing to seek alternative dispute resolution under these rules.

## Rule 6.    Assignment to arbitrator.

(A)    Parties may stipulate to use a private arbitrator or arbitrators who are not on the panel of arbitrators assigned to the program, or who are on the panel but who have agreed to serve on a private basis. Such stipulations must be made and filed with the commissioner no later than the date set for the return of the arbitration selection list and may require the use of any alternative dispute resolution procedure to resolve the dispute. The stipulation must include an affidavit that is signed and verified by the arbitrator expressing his or her willingness to comply with the timetables set forth in these rules. Failure to file a timely stipulation shall not preclude the use of a private arbitrator, but may subject the dilatory parties to sanctions by the commissioner.

(B)    Any and all fees or expenses related to the use of a private arbitrator, or the use of any other alternative dispute resolution procedure, shall be borne by the parties.

(C)    Unless a request for exemption is filed, the commissioner shall serve the two adverse appearing parties with identical lists of 5 arbitrators selected at random from the panel of arbitrators assigned to the program.

    (1)    Thereafter, the parties shall, within 10 days, file with the commissioner either a private arbitrator stipulation and affidavit or each party shall file the selection list with no more than two (2) names stricken.

    (2)    If both parties respond, the commissioner shall appoint an arbitrator from among those names not stricken.

    (3)    If only one party responds within the 10-day period, the commissioner shall appoint an arbitrator from among those names not stricken.

    (4)    If neither party responds within the 10-day period, the commissioner will appoint one of the 5 arbitrators.

(5)     If there are more than 2 adverse parties, 2 additional arbitrators per each additional party shall be added to the list with the above method of selection and service to apply. For purposes of this rule, if several parties are represented by one attorney, they shall be considered as one party.

(D)     If a request for exemption is filed and denied, the commissioner shall, within 5 days after the time has expired for filing an objection to the commissioner's denial of the request, or within 5 days after the district judge's decision on such an objection, serve the parties with identical lists of 5 arbitrators as provided in subsection (C) of this rule.

(E)     Where an arbitrator is assigned to a case and additional parties subsequently appear in the action, the additional parties may object to the arbitrator assigned to the case within 10 days of the date of the party's appearance in the action.  Objections must be in writing, state specific grounds, be served on all other appearing parties and filed with the commissioner, who will review the objections and render a decision.  This decision may be appealed to the district judge to whom the case is assigned.  The notice of appeal shall be filed with the commissioner within 10 days of the date of service of the commissioner's decision.  The commissioner shall then notify the district judge of the appeal.

(F)     If the selection process outlined above fails for any reason, including a recusal by the arbitrator, the commissioner shall repeat the process set forth in subdivision (C) of this rule to select an alternate arbitrator.

**Rule 7.        Qualifications of arbitrators.**

(A)     Each commissioner shall create and maintain a panel of arbitrators consisting of attorneys licensed to practice law in Nevada and a separate panel of non-attorney arbitrators.  An application for appointment to the panel of arbitrators is made to the supreme court on a form provided by the clerk of the supreme court.  The supreme court may refer an application to the State Bar of Nevada for review and investigation.  The State Bar may charge applicants for the non-lawyer panel of arbitrators an appropriate fee to cover the expense of its investigation.

Upon referral, the State Bar shall investigate the applicant's qualifications and fitness to serve as an arbitrator, including, but not limited to, verification of the applicant's educational background, employment history, professional licensure and any related disciplinary proceedings, and criminal history.  No later than 90 days from the date of referral, the State Bar shall transmit to the supreme court a certificate concerning the applicant's qualifications and fitness, as follows:

(1)     Whether the applicant meets the minimum experience requirements of this rule;

(2)     Whether the applicant has been subject to disciplinary proceedings involving any license; if so, the nature and result of those proceedings;

(3)     Whether the applicant has a criminal history; if so, the details of that history;

7

(4)     Whether the applicant has ever been named as a defendant in any proceeding involving fraud, misappropriation of funds, misrepresentation or breach of fiduciary duty; if so, the nature and resolution of such proceedings; and

(5)     Whether the State Bar's investigation revealed any other matter pertinent to the applicant's qualifications or fitness; if so, the details of the matter and how it relates to the applicant's potential service as an arbitrator.

(B)     Non-attorney arbitrators must: (i) be listed on the roster of approved arbitrators of the American Arbitration Association or a similar, reputable arbitration service, or (ii) have a Juris Doctorate degree and 8 years of work experience in their area of expertise. Attorney arbitrators must be licensed to practice law in Nevada and shall have practiced law a minimum of 8 years in any jurisdiction.

(C)     Arbitrators shall be required to complete an arbitrator training program in conjunction with their selection to the panel. The program completed must be one offered by the State Bar of Nevada specific to the court annexed arbitration program or, alternatively, a program that is approved for continuing legal education credits in Nevada for the same number of hours as the State Bar's program. The court may also require arbitrators to complete additional training sessions or classes.

(D)     Arbitrators shall be sworn or affirmed to uphold these rules of the program, and the laws of the State of Nevada by any person authorized to administer the official oath under NRS 281.030(3).

(E)     An arbitrator who would be disqualified for any reason that would disqualify a judge under the Nevada Code of Judicial Conduct shall immediately recuse himself/herself or be withdrawn as an arbitrator.

(F)     Any issue concerning the participation or disqualification of a person on the panel of arbitrators shall be referred to the commissioner for a final determination.

### Rule 8.     Authority of arbitrators.

(A)     Arbitrators hear cases admitted to the program and shall render awards in accordance with these rules. The powers of the arbitrators shall include, but not be limited to, the powers:

(1)     To administer oaths or affirmations to witnesses;

(2)     To relax all applicable rules of evidence and procedure to effectuate a speedy and economical resolution of the case without sacrificing a party's right to a full and fair hearing on the merits.

8

(B)    Any challenge to the authority or action of an arbitrator shall be filed with the commissioner and served upon the other parties and the arbitrator within 10 days of the date of the challenged decision or action.    Any opposition to the challenge must be filed with the commissioner and served upon the other parties within 5 days of service of the challenge.    The commissioner shall rule on the issue in due course.    Judicial review of the ruling of the commissioner may be obtained by filing a petition for such review with the commissioner within 10 days of the date of service of the commissioner's ruling.    The commissioner shall then notify the district judge to whom the case is assigned of the petition and may enter an appropriate stay pending review by the district judge.    The district judge to whom the case is assigned shall have the non-reviewable power to uphold, overturn or modify the commissioner's ruling, including the power to stay any proceeding.

**Rule 9.        Stipulations and other documents.**

During the course of arbitration proceedings commenced under these rules, no document other than the motions permitted by Rule 4 may be filed with the district court.    All stipulations, motions and other documents relevant to the arbitration proceeding must be lodged with the arbitrator.

**Rule 10.        Restrictions on communications.**

(A)    Neither counsel nor parties may communicate directly with the arbitrator regarding the merits of the case, except in the presence of, or with reasonable notice to, all of the other parties.

(B)    Unless otherwise agreed in writing by all parties, no offer or demand of settlement made by any party shall be disclosed to the arbitrator prior to the filing of an award.

**Rule 11.        Discovery.**

(A)    Within 30 days after the appointment of the arbitrator, the parties must meet with the arbitrator to confer, exchange documents, identify witnesses known to the parties which would otherwise be required pursuant to N.R.C.P. 16.1, and to formulate a discovery plan, if necessary.    The conference may be held by telephone in the discretion of the arbitrator.    The extent to which discovery is allowed, if at all, is in the discretion of the arbitrator, who must make every effort to ensure that the discovery, if any, is neither costly nor burdensome.    Types of discovery shall be those permitted by the Nevada Rules of Civil Procedure, but may be modified in the discretion of the arbitrator to save time and expense.

(B)    It is the obligation of the plaintiff to notify the arbitrator prior to the conference, if other parties have appeared in the action subsequent to the appointment of the arbitrator.

**Rule 12.        Scheduling of hearings; pre-hearing conferences.**

(A)    Except as otherwise provided by this rule, all arbitrations shall take place and all awards must be filed no later than 6 months from the date of the arbitrator's appointment.    Arbitrators shall set the time and date of the hearing within this period.

(B)     The arbitration hearing date may be advanced or continued by the arbitrator for good cause upon written request from either party. The arbitrator may not grant a request for a continuance of the hearing beyond a period of 9 months from the date of the arbitrator's appointment without written permission from the commissioner. Any such request for permission for an extension beyond the 9-month period must be made in writing to the commissioner by the arbitrator. The commissioner may permit such an extension upon a showing of unusual circumstances. All arbitration hearings must take place within one year of the date on which the arbitrator is appointed.

    (1)     Arbitration hearings which take place in violation of this Rule may subject the parties, their counsel, and/or the arbitrator to sanctions which can include:

        (a)     loss or reduction of the arbitrator's fee;

        (b)     temporary suspension of the arbitrator from the panel:

        (c)     monetary sanctions assessed against the parties or counsel.

    (2)     Additionally, if the arbitration hearing does not take place within one year of the appointment of the arbitrator, the case may be subject to dismissal or entry of default.

(C)     Consolidated actions shall be heard on the date assigned to the latest case involved, to be heard by the earliest appointed arbitrator.

(D)     Arbitrators or the commissioner may, at their discretion, conduct pre-arbitration hearings or conferences. However, the pre-hearing conference required by Rule 11 must be conducted within 30 days from the date a case is assigned to an arbitrator.

(E)     The arbitrator shall give immediate written notification to the commissioner of the arbitration date and any change thereof, any settlement or any change of counsel.

## Rule 13.     Pre-hearing statement.

(A)     At least 10 days prior to the date of the arbitration hearing, each party shall furnish the arbitrator and serve upon all other parties a statement containing a final list of witnesses whom the party intends to call at the arbitration hearing, and a list of exhibits and documentary evidence anticipated to be introduced. The statement shall contain a brief description of the matters about which each witness will be called to testify. Each party shall, simultaneously with the submission of the final list of witnesses described above, make all exhibits and documentary evidence available for inspection and copying by other parties.

(B)     A party failing to comply with this rule, or failing to comply with any discovery order, may not present at the arbitration hearing a witness or exhibit not previously furnished pursuant to this rule, except with the permission of the arbitrator upon a showing of unforeseen and unusual circumstance.

10

(C)     Each party shall furnish to the arbitrator at least 10 days prior to the arbitration hearing copies of any pleadings and other documents contained in the court file which that party deems relevant.

**Rule 14.     Conduct of the hearing.**

(A)     The arbitrator shall have complete discretion over the conduct of the hearing.

(B)     Any party may, at its own expense, cause the arbitration hearing to be reported.

**Rule 15.     Arbitration in the absence of a party.**

An arbitration may proceed in the absence of any party who, after due notice, fails to be present or fails to obtain a continuance.  The arbitrator shall require that the party present submit such evidence as he or she may require for the making of an award, and may offer the absent party an opportunity to appear at a subsequent hearing, if such a hearing is deemed appropriate by the arbitrator.

**Rule 16.     Form and content of award.**

(A)     Awards shall be in writing and signed by the arbitrator.

(B)     The arbitrator shall determine all issues raised by the pleadings in cases that are subject to arbitration under the program, including issues of comparative negligence, if any, damages, if any, and costs.  The maximum award that can be rendered by the arbitrator is $50,000 per plaintiff, exclusive of attorney's fees, interest and costs.

(C)     Findings of fact and conclusions of law, or a written opinion stating the reasons for the arbitrator's decision, may be prepared at the discretion of the arbitrator.

(D)     The offer of judgment provisions of N.R.C.P. 68 and NRS Chapter 17 apply to matters in the program.

(E)     Attorney's fees awarded by the arbitrator may not exceed $3,000, unless the compensation of an attorney is governed by an agreement between the parties allowing a greater award.

(F)     After an award is made the arbitrator shall return all exhibits to the parties who offered them during the hearing.

**Rule 17.    Filing of award.**

(A)    Within 7 days after the conclusion of the arbitration hearing, or 30 days after the receipt of the final authorized memoranda of counsel, the arbitrator shall file the award with the commissioner, and also serve copies of the award on the attorneys of record, and on any unrepresented parties.  Application must be made by the arbitrator to the commissioner for an extension of these time periods.

(B)    Applications for attorney's fees, costs and/or interest pursuant to any statute or rule must be filed with the arbitrator and served on the other parties within 5 days after service of the award on the applicant; failure to make timely application shall act as a jurisdictional waiver of any right to fees, costs or interest.  Responses to such applications must be filed with the arbitrator and served on the other parties within 5 days after service of the application on the responding party.   Rulings on applications under this subsection must be filed with the commissioner by the arbitrator and served on all parties within 5 days after the deadline for responses to such applications.

(1)    Applications for relief under this subsection do not toll the time periods specified in Rules 18 or 19.

(2)    Decisions on applications for relief under this rule do not constitute amended awards and shall not be designated as such by the arbitrator.

(3)    Any grant of fees, costs, and/or interest shall be included in any judgment on the arbitration award submitted by a prevailing party pursuant to Rule 19.

(C)    No amended award shall be filed by the arbitrator, but for good cause the arbitrator may file with the commissioner and serve on the parties a request to amend the award, as long as such request is filed within 20 days from the date of service of the original award.

(1)    If the commissioner decides an amended award is warranted, the commissioner will issue, file and serve such amended award.

(2)    Upon the issuance of an amended arbitration award, the time for requesting a trial de novo pursuant to Rule 18 or notifying a prevailing party to enter judgment pursuant to Rule 19 will begin anew upon service on the parties.  Any request for a trial de novo filed before an amended arbitration award is issued shall be rendered ineffective by the amended award.

(D)    This rule does not authorize the use of an amended award to change the arbitrator's decision on the merits.

(E)    Failure of the arbitrator to timely file the award or timely rule on an application for fees, costs and/or interest may subject the arbitrator to a forfeiture (waiver) of part or all of the arbitrator's fees.  Repeated failure shall lead to the arbitrator's removal from the panel.

**Rule 18.**      **Request for trial de novo.**

(A)      Within 30 days after the arbitration award is served upon the parties, any party may file with the clerk of the court and serve on the other parties and the commissioner a written request for trial de novo of the action. Any party requesting a trial de novo must certify that all arbitrator fees and costs for such party have been paid or shall be paid within 30 days, or that an objection is pending and any balance of fees or costs shall be paid in accordance with subsection (C) of this rule.

(B)      The 30-day filing requirement is jurisdictional; an untimely request for trial de novo shall not be considered by the district court.

(C)      Any party who has failed to pay the arbitrator's bill in accordance with this rule shall be deemed to have waived the right to a trial de novo; if a timely objection to the arbitrator's bill has been filed with the commissioner pursuant to Nevada Arbitration Rules 23 and/or 24, a party shall have 10 days from the date of service of the commissioner's decision in which to pay any remaining balance owing on said bill. No such objection shall toll the 30-day filing requirement of subsection (B) of this rule.

(D)      Any party to the action is entitled to the benefit of a timely filed request for trial de novo. Subject to Rule 22, the case shall proceed in the district court as to all parties in the action unless otherwise stipulated by all appearing parties in the arbitration. In judicial districts that are required to provide a short trial program under the Nevada Short Trial Rules, the trial de novo shall proceed in accordance with the Nevada Short Trial Rules, unless a party timely filed a demand for removal from the short trial program as provided in N.S.T.R. 5.

(E)      After the filing and service of the written request for trial de novo, the case shall be set for trial upon compliance with applicable court rules. In judicial districts that are required to provide a short trial program under the Nevada Short Trial Rules, the case shall be set for trial as provided in those rules, unless a party timely filed a demand for removal from the short trial program as provided in N.S.T.R. 5.

13

(F)    If the district court strikes, denies, or dismisses a request for trial de novo for any reason, the court shall explain its reasons in writing and shall enter a final judgment in accordance with the arbitration award.  A judgment entered pursuant to this rule shall have the same force and effect as a final judgment of the court in a civil action, and may be appealed in the same manner. Review on appeal, however, is limited to the order striking, denying, or dismissing the trial de novo request and/or written interlocutory order disposing of a portion of the action.

(G)    A motion to strike a request for trial de novo may not be filed more than 30 days after service of the request for trial de novo.

**Rule 19.    Judgment on award.**

(A)    Upon notification to the prevailing party by the commissioner that no party has filed a written request for trial de novo within 30 days after service of the award on the parties, the prevailing party shall submit to the commissioner a form of final judgment in accordance with the arbitration award, including any grant of fees, costs and/or interest, which judgment shall then be submitted for signature to the district judge to whom the case was assigned; the judgment must then be filed with the clerk.

(B)    A judgment entered pursuant to this rule shall have the same force and effect as a final judgment of the court in a civil action, but may not be appealed.  Except that an appeal may be taken from the judgment if the district court entered a written interlocutory order disposing of a portion of the action.  Review on appeal, however, is limited to the interlocutory order and no issues determined by the arbitration will be considered.

(C)    Although clerical mistakes in judgments and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party, no other amendment of or relief from a judgment entered pursuant to this rule shall be allowed.

**Rule 20.    Procedures at trial de novo.**

(A)    Evidence.  If a trial de novo is requested, the arbitration award shall be admitted as evidence in the trial de novo, and all discovery obtained during the course of the arbitration proceedings shall be admissible in the trial de novo, subject to all applicable rules of civil procedure and evidence.

(B)    Attorney fees; costs; interest.

   (1)    The prevailing party at the trial de novo is entitled to all recoverable fees, costs, and interest pursuant to statute or N.R.C.P. 68.

   (2)    Exclusive of any award of fees and costs under subsection (1), a party is entitled to a separate award of attorney's fees and costs as set forth in (a) and (b) below.

(a)     Awards of $20,000 or less.  Where the arbitration award is $20,000 or less, and the party requesting the trial de novo fails to obtain a judgment that exceeds the arbitration award by at least 20 percent of the award, the non-requesting party is entitled to its attorney's fees and costs associated with the proceedings following the request for trial de novo.  Conversely, if the requesting party fails to obtain judgment that reduces by at least 20 percent the amount for which that party is liable under the arbitration award, the non-requesting party is entitled to its attorney's fees and costs associated with the proceedings following the request for trial de novo.

(b)     Awards over $20,000.  Where the arbitration award is more than $20,000, and the party requesting the trial de novo fails to obtain a judgment that exceeds the arbitration award by at least 10 percent of the award, the non-requesting party is entitled to its attorney's fees and costs associated with the proceedings following the request for trial de novo.  Conversely, if the requesting party fails to obtain a judgment that reduces by at least 10 percent the amount for which that party is liable under the arbitration award, the non-requesting party is entitled to its attorney's fees and costs associated with the proceedings following the request for trial de novo.

(3)     In comparing the arbitration award and the judgment, the court shall not include costs, attorney's fees, and interest with respect to the amount of the award or judgment. If multiple parties are involved in the action, the court shall consider each party's respective award and judgment in making its comparison between the award and judgment.

## Rule 21.     Scheduling of trial de novo.

(A)     In judicial districts required to provide a short trial program under the Nevada Short Trial Rules, a trial de novo shall be processed as provided in those rules, unless a party timely filed a demand for removal from the short trial program as provided in N.S.T.R. 5.  Cases that are removed from the short trial program will not be given preference on the trial calendar of the district court simply because those cases were subject to arbitration proceedings pursuant to these rules.  Trials de novo in cases removed from the short trial program will be processed in the ordinary course of the district court's business.

(B)     In judicial districts that do not provide a short trial program, cases requiring a trial de novo will not be given preference on the trial calendar of the district court simply because those cases were subject to arbitration proceedings pursuant to these rules.  Trials de novo will be processed in the ordinary course of the district court's business.

15

**Rule 22.     Sanctions.**

(A)     The failure of a party or an attorney to either prosecute or defend a case in good faith during the arbitration proceedings shall constitute a waiver of the right to a trial de novo.

(B)     If, during the proceedings in the trial de novo, the district court determines that a party or attorney engaged in conduct designed to obstruct, delay or otherwise adversely affect the arbitration proceedings, it may impose, in its discretion, any sanction authorized by N.R.C.P. 11 or N.R.C.P. 37.

**Rule 23.     Costs.**

(A)     The arbitrator is entitled to recover the costs, not to exceed $250, that the arbitrator reasonably incurs in processing and deciding an action.  Costs recoverable by the arbitrator are limited to:

> 1.     Reasonable costs for telecopies;
> 2.     Reasonable costs for photocopies;
> 3.     Reasonable costs for long distance telephone calls;
> 4.     Reasonable costs for postage;
> 5.     Reasonable costs for travel and lodging; and
> 6.     Reasonable costs for secretarial services.

(B)     To recover such costs, the arbitrator must submit to the parties an itemized bill of costs within 15 days of the date that the arbitrator serves the award in an action; within 15 days of notice of removal of the case from the program by resolution or exemption; or within 15 days of notice of change of arbitrator, whichever date is earliest.

(C)     Costs must be borne equally by the parties to the arbitration, and must be paid to the arbitrator within 10 days of the date that the arbitrator serves the bill reflecting the arbitrator's costs.  If any party fails to pay that party's portion of the arbitrator's costs within the time prescribed in this subsection, the district court shall, after giving appropriate notice and opportunity to be heard, enter a judgment and a writ of execution against the delinquent party for the amount owed by that party to the arbitrator, plus any costs and attorney's fees incurred by the arbitrator in collection of the costs.  If one of the parties to the arbitration is an indigent person who was exempted pursuant to NRS 12.015 from paying a filing fee, the arbitrator may not collect costs from any party to the arbitration.

(D)     All disputes regarding the propriety of an item of costs must be filed with the commissioner within 5 days of the date that the arbitrator serves the bill reflecting the arbitrator's costs, and resolved by the commissioner.

(E)     For purposes of this rule, if several parties are represented by one attorney, they shall be considered as one party.

**Rule 24.**     **Fees for arbitrators.**

(A)     Arbitrators appointed to hear cases pursuant to these rules are entitled to be compensated at the rate of $100 per hour to a maximum of $1,000 per case unless otherwise authorized by the commissioner for good cause shown. If required by the arbitrator, each party to the arbitration shall submit, within 30 days of request by the arbitrator, a sum of up to $250 as an advance toward the arbitrator's fees and costs. If a party fails to pay the required advance, the party may be subject to sanctions, including an award dismissing the complaint or entry of the non-complying party's default.

(B)     To recover any fee, the arbitrator must submit to the parties an itemized bill reflecting the time spent on a case within 15 days of the date that the arbitrator serves an award in an action; within 15 days of notice of removal of the case from the program by resolution or exemption; or within 15 days of notice of change of arbitrator, whichever date is earliest. If the parties have paid an advance toward the arbitrator's fees and costs, the arbitrator shall indicate this advance on the itemized bill and shall return to the parties any portion of the advance that is over the amount on the itemized bill.

(C)     The fee of the arbitrator must be paid equally by the parties to the arbitration, and must be paid to the arbitrator within 10 days of the date that the arbitrator serves the bill reflecting the fee. If any party fails to pay that party's portion of the arbitrator's fees within the time prescribed in this subdivision, the district court shall, after giving appropriate notice and opportunity to be heard, enter a judgment and a writ of execution against the delinquent party for the amount owed by the party to the arbitrator, plus any costs and attorney's fees incurred by the arbitrator in the collection of the fee. If one of the parties to the arbitration is an indigent person who was exempted pursuant to NRS 12.015 from paying a filing fee, the arbitrator may not collect a fee from any party to the arbitration.

(D)     All disputes regarding the fee of the arbitrator must be filed with the commissioner within 5 days of the date that the arbitrator serves the bill reflecting the arbitrator's fee, and resolved by the commissioner.

(E)     For purposes of this rule, if several parties are represented by one attorney, they shall be considered one party.

Nevada Arbitration Rules effective July 1, 1992
Amended Rules effective December 24, 1997
Rules 20 & 24 Amended April 27, 2000
Rule 7 Amended June 18, 2001
Rule 24 Amended October 25, 2001 (Effective 60 days from Order Date)
Rule 7 Amended July 26, 2002 (Effective 60 days from Order Date)
Rule 20 Amended April 28, 2003 (Effective 60 days from Order Date)
**Amended Rules effective January 1, 2005 (Complaint # A497499 and higher)**
Rules 18 & 21 Amended March 25, 2005 (Effective immediately as to Complaints filed on or after January 1, 2005)
Assembly Bill 468 (Effective May 18, 2005 raised from $40,000 to $50,000 per Plaintiff)[A504175]

17

.

# EXHIBIT 4

LEXSEE 2007 US DIST. LEXIS 58187



Analysis
As of: Aug 05, 2008

**JODIE LYMAN, an individual, Plaintiff, vs. MOR FURNITURE FOR LESS, INC.,
a foreign corporation, Defendant.**

**3:06-CV-0666-ECR (RAM)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**

*2007 U.S. Dist. LEXIS 58187*

**August 7, 2007, Decided
August 7, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion granted by, Objection overruled by *Lyman v. Mor Furniture for Less, Inc., 2008 U.S. Dist. LEXIS 17262 (D. Nev., Feb. 28, 2008)*

**COUNSEL:** [*1] For JODIE LYMAN, Plaintiff: Jeffrey A Dickerson, LEAD ATTORNEY, Jeffrey A. Dickerson, Reno, NV.

For MOR FURNITURE FOR LESS, Defendant: Daniel E Gardenswartz, LEAD ATTORNEY, Solomon Ward Seidenwurm & Smith, LLP, San Diego, CA; Leslie Bryan Hart, LEAD ATTORNEY, Lionel Sawyer & Collins, Reno, NV.

**JUDGES:** Robert A. McQuaid, Jr., UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** Robert A. McQuaid, Jr.

**OPINION**

**ORDER**

Before the court is Defendant's Motion to Compel Arbitration (Doc. # 8). Plaintiff opposed the Motion and Defendant replied (Doc. Nos. 9 & 10). For the reasons set forth below, Defendant's Motion to Compel Arbitration should be granted.

**BACKGROUND**

Plaintiff Jodie Lyman ("Plaintiff") accepted employment with the Defendant Mor Furniture For Less, Inc. ("Defendant") in May of 2000. (Doc. # 8, Exh. B).

At that time Plaintiff signed an employment contract titled, Agreement Regarding Defendant's Employment Practices, Policies, and Procedures ("contract"). (*Id.*). The contract contained a provision requiring both parties to submit to binding arbitration in the event of any employment dispute between them ("arbitration agreement"). (*Id.*). The arbitration agreement contained an exception clause for affairs precluded from arbitration [*2] as a matter of law and affairs set forth in separate written agreements. (*Id.*). Most importantly, the arbitration agreement clearly states that it is administered by the JAMS' Rules for the Resolution of Employment Disputes, ("JAMS' rules"). (*See* Doc. # 8, Exh. 1).

Plaintiff alleges that during her employ at Defendant she was subjected to gender discrimination and sexual harassment by Defendant's managerial agents. (Doc. # 1). She also alleges that her attempts to expose the discrimination and harassment by Defendant's agents further created a hostile work environment and was the reason for her constructive discharge. [1] (Doc. # 1). Rather than pursuing arbitration and before initiating court proceedings, Plaintiff submitted her dispute to the EEOC. (Docs. # 9 & 10). Defendant filed a response to the EEOC and the EEOC declined to pursue Plaintiff's claim by issuing to her its standard "right to sue" letter. (Doc. # 10).

---

    1 Plaintiff did not specify what measures she
    took to expose the discrimination she experienced.

On December 4, 2006, after receiving the EEOC right to sue letter, Plaintiff filed her complaint in this

court. (Doc. # 1). Defendant moved to stay the proceedings and compel [*3] binding arbitration pursuant to the arbitration agreement. (Doc. # 8). Plaintiff opposed the motion, alleging that Defendant waived its right to enforce arbitration because it participated with the EEOC rather than insisting that the EEOC submit to arbitration. (Doc. # 9). In doing so, Plaintiff argues that Defendant admitted to her Title VII claim being an exception within the exception clause of the arbitration agreement. [2] (Doc. # 9). In addition to waiver, Plaintiff argues procedural and substantive unconscionability because the arbitration agreement fails to indicate mandatory arbitration fees and acts as a waiver to a jury trial right. (Doc. # 9). In support of its motion, Defendant argues that its participation with the EEOC was entirely separate from the arbitration agreement, as the EEOC is not a party to its employment contract with Plaintiff. [3] (Doc. # 10). It also argued and gave support for its position that the arbitration agreement is not unconscionable neither procedurally nor substantially. (Id.)

    2  Plaintiff offered no authority to support her position of waiver. (See generally, Doc. # 9).

    3  Defendant did not argue that it was required to participate with the EEOC, but [*4] it is likely the case being that the EEOC is a Nevada agency.

## DISCUSSION

### A. Standard of Review

The Federal Arbitration Act (FAA), allows a Defendant to petition the court for an order compelling arbitration. *9 U.S.C. § 4 et. seq.* It provides that arbitration agreements involving interstate commerce are valid, irrevocable and enforceable except those upon certain grounds that are revocable in law or in equity. *9 U.S.C. § 2.* This includes agreements to arbitrate employment disputes. *Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).* Under the FAA, the federal courts are to "rigorously" enforce arbitration agreements. *Shearson/American Express Inc. v. McMahon, 482 U. S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987); see also Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir. 1996)* (held that the FAA "created a rule of contract construction favoring arbitration").

Like the FAA, Nevada law strongly favors the enforcement of arbitration and has similar procedural mechanisms to ensure that arbitration agreements are enforced. *See, Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas, 104 Nev. 615, 764 P. 2d 478 (1988); See also, N.R.S. 38.221.* Under Nevada's version of the Uniform Arbitration Act (*Chapter 38.219 of title 3 of the Nevada Revised Statutes*), [*5] agreements to arbitrate controversies between parties are enforceable and generally irrevocable. *N.R.S. S 38.219(1) (2006).* The court shall decide whether an arbitration agreement exists or whether a controversy is subject to an arbitration agreement. *N.R.S. § 38.219(2) (2006).* To determine whether an arbitration agreement is valid, a federal court must apply state contract law. *Doctor's Assocs. V. Casarotto, 517 U.S. 681, 686-687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996);* (held that contract defenses, such as unconscionability, may invalidate an arbitration agreement under *section 2 of the FAA and Nevada Revised Statute 38.219*). The Nevada Supreme Court also has made clear that contract construction rules determine the question of whether a dispute is arbitratable. *Kindred v. Second Judicial Dist. Court, 116 Nev. 405, 996 P. 2d 903, 907 (Nev. 2000); quoting Clark Co. Public Employees v. Pearson, 106 Nev. 587, 590, 798 P. 2d 136, 137 (Nev. 1990).*

### B. Waiver

Plaintiff alleges that Defendant waived its right to arbitrate her Title VII complaint when it filed a written response to the EEOC instead of forcing the EEOC to arbitrate. "The FAA does not mention enforcement of [*6] arbitration agreements by public agencies. It ensures the enforcement of private agreements to arbitrate." *EEOC v. Waffle House, Inc. 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002).* (held that an employer could not compel the EEOC to arbitrate if it pursues a case in the public's interest - which is the only instance in which the EEOC will get involved in an employment dispute).

Here, the EEOC rejected Plaintiff's claim when it issued her a right to sue letter. (Doc. # 9). At that point Defendant expected Plaintiff to attend arbitration pursuant to her employment contract with Plaintiff. (*Id.*). But Plaintiff argues that her participation with the EEOC was a requisite for filing this action and therefore justifies her refusing arbitration. (*Id.*). However, she provided no authority to show that participation with the EEOC supersedes an employment agreement to arbitrate. Plaintiff also argues that Defendant's response to the EEOC was an admission that the exception clause of the arbitration agreement applied to Plaintiff's complaint. Again, Plaintiff provided no authority for this position, and under Local Rules of Court 7-2(d) the failure of a party in opposition of a motion to file points and authorities [*7] in response to the motion shall constitute a consent to the motion being granted. LR 7-2 (2006). Finally, Defendant rightfully argues that the EEOC was not a party to the arbitration agreement between Plaintiff and Defendant; and under *Waffle House,* Defendant had no authority to attempt to subject the EEOC to arbitration.

Thus, Plaintiff and Defendant's participation with the EEOC was not a legal exception to their obligation to arbitrate under the FAA and the Nevada Uniform Arbitration Act. In addition, Defendant did not waive its right to arbitrate for failing to submit the EEOC to arbitration.

## C. Unconscionability

Although Nevada Law has established a strong policy in favor of arbitration, it will not enforce an unconscionable arbitration provision. *See N.R.S. 38.219* (2006); *see also Doctor's Assocs. v. Casarotto, 517 U.S. at 687.* Generally, both procedural and substantive unconscionability must be present for a court to hold an arbitration clause unconscionable. *D.R. Horton, Inc. v. Green, 120 Nev. 549, 554, 96 P. 3d 1159, 1162 (2004); quoting Burch v. Second Judicial Dist. Court of Nev., 118 Nev. 438, 443, 49 P. 3d 647, 650 (2002).* But, less substantive unconscionability need be    [*8] shown in cases involving great procedural unconscionability. *Id.*

### 1. Procedural Unconscionability

A provision is procedurally unconscionable when its' consequences are inconspicuous. *Id.* This usually involves small print and confusing or misleading terms that prevent a reasonable person from completely understanding the consequences of the contract. *Horton, 120 Nev. at 554, 96 P. 3d at 1162; quoting American Airlines, Inc. v. Wolens, 513 U.S. 219, 249, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995)* (O'Connor, J. concurring).

Plaintiff argues that the arbitration agreement here is procedurally unconscionable because it does not specify that it acts as a waiver of Plaintiff's right to a jury trial. (Doc. # 9). Plaintiff relies on the holding from *Horton,* but fails to recognize its rationale.

In *Horton, 120 Nev. at 556, 96 P. 3d at 1164,* the court found that a new homeowners contract was procedurally unconscionable because its' arbitration provision was hidden in smaller than normal print on the back page of the contract while the signature line was on the front page. *Id. at 556, Id. at 1164.* In addition, that defendant's sales agent downplayed the significance of the arbitration agreement to the plaintiffs, stating that its terms    [*9] were simply standard language. *Id.* Though that arbitration agreement did fail to indicate that the plaintiffs had given up their right to a jury trial, the court found it more important that the arbitration agreement acted as a waiver to construction defect rights under Nevada Law, such as the right to recover attorney's fees for such litigation. *Id.*

Though the arbitration provision of the contract at issue does not state that it acts as a jury waiver, it docs specifically state that all disputes relating to Plaintiff's employment will be settled by arbitration administered

by the JAMS' rules for the resolution of employment disputes. While not specifically advising Plaintiff she is waiving her right to jury trial, it clearly informs her that her dispute will be resolved in a forum other than a judicial proceeding. Furthermore and unlike *Horton,* the arbitration clause here is clearly conspicuous. It is in bolded letters and appears directly above Plaintiff's signature. (*See* Doc. # 8 Exh.1). The full text of the arbitration agreement follows, with the same capitalization and bold font as the original:

> **ARBITRATION: Except as may be otherwise required by law or as set forth in a separate    [*10] written agreement, any controversy or claim arising out of or relating to my employment with Mor or any agents of Mor shall be settled by arbitration administered by the JAMS' rules for the resolution of employment disputes in the city and state where the undersigned employee is employed, and judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof.**

Here, the jury waiver issue is the only similarity to *Horton.* Because the jury waiver was not the determining factor in the *Horton* court's decision to invalidate the arbitration agreement, the decision cannot be used as precedent to invalidate the arbitration agreement as Plaintiff suggests should be done here. *Id. at 554, Id. at 1163.*

Defendant however, relies on *Kindred, 116 Nev. 405, 996 P. 2d 903,* to support its position that the arbitration agreement must be enforced. In *Kindred,* the court was called upon to decide whether Title VII and FMLA claims were subject to arbitration. In that case the Nevada Supreme Court upheld an arbitration provision that did not advise the employee that she was waiving her right to a jury trial. We conclude that the failure to advise of waiver of right    [*11] to jury trial does not overcome the strong presumption in favor of arbitration.

Essentially, the analysis could end here since the court may only invalidate an arbitration agreement based on both procedural and substantive unconscionability. But in an effort to be thorough, the court will look at the issue of substantive unconscionability.

### 2. Substantive Unconscionability

Substantive unconscionability is present when the terms of a contract favor one party over the other. *Horton, 120 Nev. at 554, 96 P. 3d at 1162; quoting, Ting v.*

*AT&T, 319 F. 3d 1126, 1149 (9th Cir. 2003)*. But, an arbitration agreement's failure to present significant arbitration costs docs not alone render the agreement unenforceable. *Horton, 120 Nev. at 558, 96 P. 3d at 1165*; *quoting Green Tree Financial Corp.- Ala v. Randolph, 531 U.S. 79, 90, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2001).*

Plaintiff argues that the arbitration agreement is substantively unconscionable because the JAMS' rules cannot be judicially noticed and because the agreement fails to disclose potential arbitration costs. (Doc. # 9, pg. 2). First, it is unclear to the court why Plaintiff in her opposition to the present motion argued that the JAMS' rules could not be judicially noticed. [*12] (*Id.*). Under *Federal Rule of Evidence 201*, the court may take judicial notice of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *F.R.E. 201(b)*. The JAMS' rules are posted on-line at www.jamsadr.com; and although the website is not stated in the arbitration agreement, Plaintiff docs not complain of this being an issue.

Second, Plaintiff argues that the agreement's failure to specify arbitration costs favors Defendant over Plaintiff. However, this argument is lacking in that the very case (*Horton*) on which Plaintiff relies determined that silence as to arbitration costs does not render an arbitration agreement invalid. *Horton, 120 Nev. at 558, 96 P. 3d at 1165.* In addition, the *Horton* court was more concerned with the $ 10,000 penalty those Plaintiffs would have incurred for failing to proceed with arbitration than it was concerned with arbitration fees in general. *Id. at 555, Id. at 1164.* Furthermore, the JAMS' rules referenced in the arbitration agreement here state that the [*13] Plaintiff would be responsible only for an initial $

400.00 case management fee and that any additional costs incurred through arbitration would be covered by the Defendant. (Doc. # 11, Exh. 2, pgs. 5 & 24). The JAMS' rules further state that the employer must cover any extra costs incurred by the Plaintiff for further arbitration. (*Id.*). This cost scheme for arbitration is far less burdensome than that in *Horton,* and overall leaves both Plaintiff and Defendant in a better economic position than they would be if they litigated this case in this court.

Because the cost of arbitration could easily have been recognized by reading the JAMS' rules and indeed favors Plaintiff over Defendant, we find that the arbitration agreement is not substantively unconscionable.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration (Doc. # 8) is **GRANTED.** The parties shall submit this matter to arbitration pursuant to the arbitration provision.

**IT IS FURTHER ORDERED** that this action is **STAYED** pending receipt by the court of the results of the arbitration.

**IT IS FURTHER ORDERED** that a telephonic status conference is scheduled for **Thursday, January 10, 2008, at 1:30 p.m.** for the parties [*14] to advise the court on the progress of the arbitration proceedings. The parties shall, at least two (2) days prior to said hearing, advise the Deputy Clerk of this court (Frank Justiliano, (775) 686-5758) of the telephone number at which they may be reached for the telephonic hearing.

DATED: August 7, 2007.

Robert A. McQuaid, Jr.

UNITED STATES MAGISTRATE JUDGE